CIVIL CASE MANAGEMENT PLAN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Utica Mutual Insurance
Company

VS                                           No. **6:09-CV-0853 DNH/GHL**

Fireman's Fund Insurance
Company

**IT IS HEREBY ORDERED that,** pursuant to Rule 16(b), Federal Rules of Civil Procedure, a telephonic status and scheduling conference will be held telephonically in this case before the Honorable GEORGE H. LOWE, United States Magistrate Judge, on June 13, 2011 at 3:30 pm.

Counsel for the parties have conferred in accordance with Fed. R. Civ. P. 26(f) with respect to all of the agenda items listed below. Although Utica has requested that this litigation remain stayed and, if needed, that Utica be allowed to file a motion seeking a stay, see Dkt. No. 65, this Civil Case Management Plan is being submitted pursuant to the Court's June 2, 2011, Order.

**1) JOINDER OF PARTIES:** Any application to join any person as a party to this action shall be made on or before July 8, 2011 (proposed by Fireman's Fund) or September 2, 2011 (proposed by Utica Mutual).

**2) AMENDMENT OF PLEADINGS:** Any application to amend the pleadings to this action shall be made on or before August 8, 2011 (if Joinder deadline is on July 8, or October 3 if Joinder deadline is September 2, 2011).

**3) DISCOVERY:** All fact discovery in this action shall be completed on or before February 29, 2012. All expert discovery in this action shall be completed on or before April 30, 2012. **(Discovery time table is to be based on the complexity of the action).**

**4) MOTIONS:** All discovery motions related to fact discovery shall be made on or before March 30, 2012. All dispositive motions shall be made on or before June 29, 2012. All discovery motions related to expert discovery shall be made on or before May 31, 2012. **(Non-Dispositive motions including discovery motions may only be brought after the parties have complied with Section IX of General Order #25)**

Form Date - 06/13/2007

**5) PROPOSED DATE FOR THE COMMENCEMENT OF TRIAL:** The action will be ready to proceed to trial on or before September 12, 2012. It is anticipated that the trial will take approximately five days to complete. The parties request that the trial be held in Utica, N.Y. **(The proposed date for the commencement of trial must be within 18 months of the filing date).**

**6) HAVE THE PARTIES FILED A JURY DEMAND:** X (YES)/ \_\_\_\_ (NO). Defendant Fireman's Fund has requested a trial by jury with respect to all claims.

**7) DOES THE COURT HAVE SUBJECT MATTER JURISDICTION? ARE THE PARTIES SUBJECT TO THE COURT'S JURISDICTION? HAVE ALL PARTIES BEEN SERVED?**

The Court has subject matter jurisdiction, the parties are subject to the Court's jurisdiction, and all parties have been served.

**8) WHAT ARE THE FACTUAL AND LEGAL BASES FOR PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES (INCLUDE COUNTERCLAIMS & CROSSCLAIMS, IF APPLICABLE)?**

Plaintiff Utica Mutual contends that Fireman's Fund owes Utica Mutual $35 million, the full limits under the facultative reinsurance certificates, together with interest. Utica Mutual claims that Fireman's Fund has breached its reinsurance agreements with Utica Mutual by wrongfully refusing to pay billings. Fireman's Fund has raised several defenses, including those outlined in the numbered paragraphs below.

    1. Fireman's Fund has alleged as an affirmative defense that Utica Mutual failed to provide notice as required under the certificates. However, Utica Mutual contends that despite its diligent searches and efforts to locate applicable reinsurance agreements, Utica Mutual did not have a copy of the certificates issued by Fireman's Fund. Utica Mutual maintains that when it was made aware of those certificates, it promptly provided notice to Fireman's Fund.

    Utica Mutual also contends that Fireman's Fund was aware of the underlying claims because it, like Utica Mutual, issued insurance policies to Goulds Pumps, Inc. ("Goulds Pumps") that provided coverage for the same claims against Goulds Pumps. Utica Mutual alleges that regardless of the notice provided by Utica Mutual based on Fireman's Fund's role as Utica Mutual's reinsurer, as a direct insurer of Goulds Pumps involved in coverage litigation that also included Utica Mutual, Fireman's Fund was aware of the underlying claims asserted against Goulds Pumps. Given that both Utica Mutual and Fireman's Fund insured Goulds Pumps with respect to the same claims, Utica Mutual contends that it and Fireman's Fund had communicated on numerous occasions about the underlying claims.

    As to the late notice issue, Fireman's Fund contends that Utica Mutual breached the reinsurance certificates' provision requiring that Utica Mutual provide prompt notice of any occurrence or accident which appeared likely to involve the reinsurance. Fireman's Fund maintains that Utica Mutual learned about the claim in 1997, but Fireman's Fund was not notified of the claim until July 2008. Fireman's Fund alleges that it had no actual or constructive notice of the reinsurance claim as a result

of Fireman's Fund's direct insurance of the policyholder Goulds Pumps under separate and distinct policies. Fireman's Fund alleges that in the absence of prompt and timely notice, Fireman's Fund had established no reserves for this claim and did not value this claim in commutations that Fireman's Fund entered into with its own reinsurers. Fireman's Fund alleges that it suffered prejudice and economic injury in the form of lost reinsurance recoveries and lost opportunity to participate in the defense of the policyholder claims against Utica Mutual and potential overstatement of income and thus overpayment of taxes.

2. Fireman's Fund has alleged that the underlying claims paid by Utica Mutual are not within the terms and conditions of the reinsured policies and are not otherwise properly allocated. Utica Mutual contends, however, that its payments for the underlying claims, including allocation, are based on a settlement agreement between Utica Mutual and its policyholder that was consistent with the terms of the policies at issue. Utica Mutual also maintains that the settlement was negotiated and entered into in good faith and that the certificates provide that Fireman's Fund is bound by the settlement by Utica Mutual of the underlying coverage dispute. Accordingly, pursuant to the certificates' terms, Utica Mutual claims that Fireman's Fund is responsible for its portion of Utica Mutual's payments made pursuant to the settlement.

Fireman's Fund claims that Utica Mutual entered into a settlement with its policyholder that stipulated that there were aggregate limits for bodily injury under the primary policies Utica Mutual issued to the policyholder, although there is no evidence of such aggregates in the umbrella policy schedules nor in Utica Mutual's reconstructed primary policy files. According to Fireman's Fund, if in fact, there were such aggregates, then in that event, Utica Mutual misrepresented and/or concealed from Fireman's Fund the existence of such aggregate limits at the time Utica Mutual sought reinsurance from Fireman's Fund. Accordingly, Fireman's Fund alleges that it is entitled to rescission of the reinsurance certificates or damages in the amount of any indemnification Fireman's Fund is required to make to Utica Mutual.

Utica Mutual amended its complaint to add a claim based on Fireman's Fund's breach of the duty of utmost good faith that Fireman's Fund purportedly owes under the reinsurance agreements. This claim is based on Fireman's Fund's allegedly improper handling of Utica Mutual's reinsurance billings. Utica Mutual maintains that even though Fireman's Fund conducted an audit of Utica Mutual's files and was given access to all of the necessary information to pay Utica Mutual's billings, Fireman's Fund continuously refused to honor its obligations under the certificates. According to Utica Mutual, for months, Fireman's Fund simply chose to ignore numerous inquiries - via correspondence and telephone calls - from Utica Mutual. Utica Mutual claims that Fireman's Fund also sought to delay matters further by asking for additional documents that were unnecessary to review the billings.

3. Fireman's Fund has also asserted counterclaims against Utica Mutual seeking to rescind the reinsurance agreements. Fireman's Fund contends that Utica Mutual intentionally or negligently misrepresented or concealed material information when it entered into the reinsurance agreements. Utica Mutual denies that it misrepresented or concealed any material information.

4. Fireman's Fund also claims that Utica Mutual breached the duty of utmost good faith owed to Fireman's Fund as a reinsurer and that Utica Mutual failed to act in a reasonable and business-like manner with respect to the settlement between it and its policyholder. Also, Fireman's Fund claims that Utica Mutual's payments to its policyholder were made without establishing that the policyholder's claims were properly payable under the umbrella policies

reinsured by Fireman's Fund. Fireman's Fund denies Utica Mutual's claim that Fireman's Fund improperly handled the reinsurance billings.

## 9) WHAT FACTUAL AND LEGAL ISSUES ARE GENUINELY IN DISPUTE?

The parties disagree about their obligations under the reinsurance agreements. Specifically, Utica Mutual contends that it satisfied its duty to provide notice to Fireman's Fund and complied with all other conditions or requirements under the reinsurance agreements. As described above, Utica Mutual contends that it provided notice to Fireman's Fund as soon as it learned of the reinsurance certificates.

In any event, Utica Mutual contends that Fireman's Fund was aware of the underlying claims because it, like Utica Mutual, issued insurance policies that provided coverage for the same claims against Goulds Pumps. Utica Mutual contends that as noted above, Fireman's Fund was a direct insurer of Goulds Pumps and has been involved in coverage litigation that also includes Utica Mutual. Consequently, Utica Mutual contents that due to its role as a direct insurer of Goulds Pumps, Fireman's Fund was aware of the underlying claims asserted against Goulds Pumps regardless of the notice provided by Utica Mutual based on Fireman's Fund providing reinsurance coverage to Utica Mutual. Utica Mutual maintains that given that both Utica Mutual and Fireman's Fund insured Goulds Pumps with respect to the same claims, Utica Mutual and Fireman's Fund had communicated on numerous occasions about the underlying claims.

Utica Mutual further contends that its payments in connection with the underlying claims are based on a settlement agreement that was consistent with the policies at issue. Utica Mutual maintains that the agreement was negotiated and entered into in good faith and that the certificates provide that Fireman's Fund is bound by the settlement by Utica Mutual of the underlying coverage dispute. As a result, Utica Mutual claims that its billings based on its settlement are proper and that Fireman's Fund is obligated to pay the outstanding reinsurance billings.

With respect to Fireman's Fund's counterclaims, Utica Mutual denies that it intentionally or negligently misrepresented or concealed material information.

Fireman's Fund asserts that this case presents several issues, including: Did the primary policies underlying the umbrella policies reinsured by Fireman's Fund include aggregate limits for bodily injury? At the time Utica Mutual purchased reinsurance from Fireman's Fund, did Utica Mutual knowingly or negligently misrepresent the limits of the primary policies with respect to bodily injury liability? Did Utica Mutual breach the prompt notice provision in the reinsurance certificates? Did Fireman's Fund sustain economic injury as a result of Utica Mutual's late notice of this claim? Did Utica Mutual breach its duty of utmost good faith? Did Utica Mutual act in a reasonable and business-like manner in entering into the settlement with its policyholder? Can Utica Mutual establish that the policyholder's claims were properly payable under the umbrella policies reinsured by Fireman's Fund?

## 10) CAN THE ISSUES IN LITIGATION BE NARROWED BY AGREEMENT OR BY MOTIONS? ARE THERE DISPOSITIVE OR PARTIALLY DISPOSITIVE ISSUES APPROPRIATE FOR DECISION ON MOTION?

Utica Mutual believes that the claims at issue, in whole or in part, can be resolved by a motion for summary judgment. At this time, Fireman's Fund is skeptical that the issues can be narrowed or

disposed of by motion. The parties, however, will continue to evaluate whether the disputes in the litigation can be narrowed, including by agreement and motions.

**11) WHAT SPECIFIC RELIEF DO THE PARTIES SEEK? WHAT ARE THE DAMAGES SOUGHT?**

Utica Mutual demands judgment against Fireman's Fund for the $35 million limits under the certificates, together with interest.

Fireman's Fund seeks rescission of the reinsurance certificates. In the alternative, Fireman's Fund requests a judgment relieving it of any liability for Goulds losses or, if Fireman's Fund is required to indemnify Utica Mutual, Fireman's Fund seeks damages in the amount of such indemnification.

**12) DISCOVERY PLAN:**

**A.    Mandatory Disclosures**

The parties exchanged the mandatory disclosures required under Rule 26(a)(I) on December 29, 2009.

**B.    Subjects of Disclosure**

The parties jointly agree that discovery will be needed to address the following subjects:

Utica Mutual will seek discovery regarding all factual disputes raised in Fireman's Fund's Answer and its 14 affirmative defenses. This discovery will include Fireman's Fund's claim that Utica Mutual failed to satisfy its notice obligations under the reinsurance agreements and the alleged prejudice suffered by Fireman's Fund as well as Fireman's Fund's claims that Utica Mutual intentionally or negligently misrepresented or concealed material information when it entered into the reinsurance agreements and any alleged reliance by Fireman's Fund on the misrepresentations or nondisclosures.

Utica Mutual will also seek discovery related to Fireman's Fund's breach of the duty of utmost good faith. Utica Mutual contends that even though Fireman's Fund conducted an audit of Utica Mutual's files and was given access to all of the necessary information to pay Utica Mutual's billings, Fireman's Fund continuously refused to honor its obligations under the certificates. Utica Mutual alleges that for months, Fireman's Fund simply chose to ignore numerous inquiries - via correspondence and telephone calls from Utica Mutual. Fireman's Fund also allegedly sought to delay matters further by asking for additional documents that were unnecessary to review the billings.

Fireman's Fund denies Utica Mutual's contentions and will seek discovery regarding the following: the existence of aggregate limits for bodily injury under the relevant primary policies issued by Utica Mutual; the placement of the reinsurance, including inquiry into all facts at the time that should have been disclosed to Fireman's Fund during the placement process; the basis for the stipulations in the relevant settlement agreement as to aggregate limits; the point at which notice should have been provided to Fireman's Fund in accordance with the notice provisions in the reinsurance certificates; what efforts were undertaken by Utica Mutual to identify its reinsurers; and the extent to which Fireman's Fund suffered economic harm as a result of the alleged late notice of this claim by Utica Mutual.

**C.    Discovery Sequence**

**Describe the parties' understanding regarding the timing of the discovery, and state whether it is anticipated that discovery will be phased to address different issues in stages.**

The parties do not have any specific understanding about the timing of discovery other than the timing being governed by the Case Management Plan, the Federal Rules of Civil Procedure, the local rules, and other applicable orders and rulings from the Court.

**D.     Written Discovery**

**Describe the written discovery demands which the parties contemplate serving under Rules 33, 34 and 36, including when they will be promulgated, the areas to be covered, and whether there is any need for any party to exceed the number of interrogatories permitted under Rule 33.**

The parties contemplate serving discovery demands regarding all areas outlined under paragraph 12.B. The parties have exchanged initial requests for documents and interrogatories. The parties will exchange written responses to those requests on or before July 18, 2011.

The parties believe that they should be allowed to serve up to 35 interrogatories.

Fireman's Fund believes that requests for admission should be limited to 50 requests. Utica Mutual agrees to this limitation.

**E.     Depositions**

**Set forth the parties' expectations regarding depositions, including the approximate number to be taken, their location, a general description of the deponents, and an indication of whether any non-party fact depositions are anticipated.**

Utica Mutual presently anticipates the need for approximately 10 depositions, including non-party fact depositions.

Fireman's Fund presently anticipates the need for approximately 10 to 15 depositions, including non-party fact depositions.

Fireman's Fund believes that the total time for depositions taken by each party should be limited to 150 hours. Utica Mutual does not object to this limitation.

At this stage, the parties have not identified specific deponents or the location for their depositions.

**F.     Experts**

**Set forth the parties' expectations regarding the retention of experts, and identify any particular issues to be addressed by the court concerning the retention and exchange of the information regarding experts, including whether the parties seek a variance from the expert disclosure requirements of the form uniform pretrial scheduling order typically issued by the court (i.e., initial expert disclosure at least ninety days, responsive expert disclosures at least forty-five days, and rebuttal reports due at least thirty days, before the close of discovery).**

The parties anticipate that experts may need to be retained. The parties do not seek a variance from the expert disclosure requirements of the form uniform pretrial scheduling order. Based on the proposed discovery cut-off of April 30, 2012, initial expert disclosures would be due on January 27, 2012,

responsive expert disclosures would be due on March 14, 2012, and rebuttal expert disclosures would be due on March 28, 2012.

### G.  Electronic Discovery

**Set forth the parties' understanding and expectations regarding discovery of electronically stored information. This description should include any agreements reached with respect to the retention of electronically stored information and the manner in which it will be produced, if requested. The parties should also identify any agreements regarding the manner in which electronically stored information subject to claims of privilege or work product protection will be handled, and whether a court order will be requested, either on stipulation or otherwise, to address this issue. If an agreement has been reached on the entry of such an order, provide a brief description of the provisions which will be included in a proposed order.**

Utica Mutual and Fireman's Fund agree that the parties should generally have the option to produce documents in paper or electronic form. For example, if a document is produced in hard copy, there should be no need to search for the electronic version of the same document. However, if certain documents may be difficult to read in hard copy, those documents should be produced electronically. For instance, a party may request that a large spreadsheet be produced in native Excel files, as opposed to a printed copy containing hundreds of pages of data that is more difficult to process. In such a case, the spreadsheet should be produced electronically.

### H.  Protective Orders

**If the parties anticipate requesting a protective order from the court pursuant to Rule 26(c), describe the basis for the request and nature of the proposed protective order.**

There is one Protective Order in place. On March 9, 2010, the Court issued a Stipulated Protective Order Regarding Plaintiff's Motion to Disqualify Chadbourne & Parke LLP.

Utica Mutual anticipates requesting an additional protective order from the Court for the motions practice related to Fireman's Fund challenging Utica's privilege claims and another protective order for Utica's production and use of confidential documents. Among other things, the settlement agreement that Utica Mutual entered into with respect to the underlying coverage litigation contains confidentiality requirements, and consequently, any use of that agreement should be subject to a protective order. In addition, Utica Mutual will likely need to produce documents to Fireman's Fund that are subject to privilege and work product protection in ongoing litigation between Utica Mutual and other parties. The production of any such material should be subject to a protective order.

Fireman's Fund anticipates that an additional protective order from the Court may be necessary to maintain the confidentiality of information concerning commutations entered into with Fireman's Fund's reinsurers, as these commutations relate to Fireman's Fund's late notice defense.

### I.  Anticipated Issues Requiring Court Intervention

**Provide a brief description of any discovery related issues which, the parties reasonably anticipate, may require court intervention.**

Before the Court stayed this action, a dispute was pending concerning Utica Mutual's production of a CD of documents. Utica Mutual claimed that certain documents on the CD were privileged and had been inadvertently produced. This issue was raised with the Court during a status conference, but it was not decided which party would bring the issue to the Court's attention. Fireman's Fund sequestered the CD pending resolution of the privilege claim.

The parties do not agree on the procedure for addressing the CD privilege issue. Fireman's Fund proposes that by June 24, 2011, Utica Mutual file a motion relating to this privilege issue and that Fireman's Fund's opposition be due within 24 days after that filing.

Utica Mutual had proposed, and asks the Court to adopt, the following briefing schedule: within five days after an appropriate Protective Order is entered, Utica Mutual files its motion, Fireman's Fund can file its opposition within two weeks, and Utica Mutual can file its reply within one week after Fireman's Fund files its opposition. Utica Mutual believes that it should be allowed to submit a reply particularly because it contends that, to date, Fireman's Fund has not demonstrated the basis for its position on the privilege dispute. Without a reply, Utica Mutual contends that it will not be afforded an adequate opportunity to address Fireman's Fund's arguments.

Fireman's Fund does not believe that a reply is appropriate and rejects Utica's characterization of Fireman's Fund's position. Fireman's Fund also is concerned that Utica has not proposed a filing date for its motion for a protective order.

Other than the privilege issue set forth above and possible disagreements related to electronic discovery and the need for a protective order described in paragraphs 12.G and 12.H, the parties are not currently aware of any discovery related issue that may require Court intervention.

**13) IS IT POSSIBLE TO REDUCE THE LENGTH OF TRIAL BY STIPULATIONS, USE OF SUMMARIES OR STATEMENTS, OR OTHER EXPEDITED MEANS OF PRESENTING EVIDENCE? IS IT FEASIBLE AND DESIRABLE TO BIFURCATE ISSUES FOR TRIAL?**

The parties do not presently believe that it is possible to reduce the length of trial by stipulations, use of summaries or statements, or other expedited means of presenting evidence, but the parties will work diligently to evaluate such alternatives or arrangements.

The parties do not presently believe that it is feasible or desirable to bifurcate issues for trial.

**14) ARE THERE RELATED CASES PENDING BEFORE THE JUDGES OF THIS COURT?**

There are no related cases pending before the judges of the Court.

**15) IN CLASS ACTIONS, WHEN AND HOW WILL THE CLASS BE CERTIFIED?**

    N/A.

**16) WHAT ARE THE PROSPECTS FOR SETTLEMENT? Please circle below the prospect for settlement:**

1 - - - - - 2 - - - - - 3 - - - - - 4 - - - - - 5 - - - - - 6 - - - - - 7 - - - - - 8 - - - - - 9 - - - - - 10
(VERY UNLIKELY) → → → → → → → → → → → → → → → → → → → → → (LIKELY)

CANNOT BE EVALUATED PRIOR TO  _____ (DATE)

The parties believe that the prospect for settlement is 5. The parties remain open to discuss settlement.

**HOW CAN SETTLEMENT EFFORTS BE ASSISTED?**

At this time, the parties do not believe that settlement efforts can be assisted.

***(Do not indicate any monetary amounts at this time, settlement will be explored by the Magistrate Judge at the time of the initial status conference)***

***COMPLETE QUESTION 17 ONLY IF YOUR FILING ORDER COVER SHEET WAS CHECKED AS AN ADR TRACK CASE. THE PROGRAMS LISTED BELOW ARE COURT-ANNEXED AND NON-BINDING.***

**17) IF YOUR CASE WAS SELECTED AS A QUALIFYING CONTRACT, TORT, OR NON-PRISONER CIVIL RIGHTS ACTION, PLEASE SELECT THE PREFERRED ADR METHOD.**

_____    ARBITRATION

_____X_____    MEDIATION

_____    EARLY NEUTRAL EVALUATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pursuant to Fed. R. Civ. P. 26(f), a telephonic meeting was held on June \_\_\_\_, 2011 and was attended by:

Walter J. Andrews                                              for plaintiff(s)
Syed S. Ahmad_____                        _____
                                                                                    (party name)

Mary Lopatto  for defendant(s)
John Finnegan
<u>Nancy Monarch</u>

                                                                                                                      (party name)

At the Rule 16(b) conference, the Court will issue an order directing the future proceedings in this action. The parties are advised that failure to comply with this order may result in the imposition of sanctions pursuant to Federal Rules of Civil Procedure 16(f).

***Please detach this case management plan form and return the completed form to the clerk for filing at least ten (10) days in advance of the conference date.***

\C. Management Plan Form Date - 06/13/2007