# CASE APPENDIX



HARTFORD ACCIDENT AND INDEMNITY COMPANY v. ARGONAUT INSURANCE COMPANY

CIV. NO. 3:06CV1813(WWE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2008 U.S. Dist. LEXIS 123465

April 25, 2008, Decided
April 25, 2008, Filed

**COUNSEL:** [*1] For Hartford Accident & Indemnity Co, Plaintiff: Ashwin Janakiram, William M. Sneed, LEAD ATTORNEYS, PRO HAC VICE, Sidley Austin LLP - CH, IL, Chicago, IL; Daniel L. FitzMaurice, Joseph Kevin Scully, LEAD ATTORNEYS, Day Pitney LLP-Htfd-CT, Hartford, CT; Thomas D. Cunningham, LEAD ATTORNEY, Sidley Austin LLP - CH, IL, Chicago, IL.

For Argonaut Ins Co, Defendant: Bruce M. Friedman, LEAD ATTORNEY, PRO HAC VICE, Rubin, Fiorella & Friedman, LLP, New York, NY; Charles F. Corcoran, III, LEAD ATTORNEY, Carmody & Torrance, New Haven, CT; David S. Hardy, LEAD ATTORNEY, Carmody & Torrance - New Haven, New Haven, CT; Jay Bielat, Thomas Southwick, LEAD ATTORNEYS, PRO HAC VICE, Rubin Fiorella & Friedman, LLP-NY, New York, NY; Mark S. Fragner, Michael H. McGuire, LEAD ATTORNEYS, Rubin, Fiorella & Friedman, LLP, New York, NY.

**JUDGES:** HOLLY B. FITZSIMMONS, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** HOLLY B. FITZSIMMONS

**OPINION**

RULING ON ARGONAUT'S MOTION TO COMPEL [Doc. #42] AND HARTFORD'S MOTION TO COMPEL [Doc. #48]

This is an action for breach of contract concerning a reinsurance contract entered into between plaintiff Hartford Accident and Indemnity Company ("Hartford"), and defendant Argonaut Insurance Company ("Argonaut"). The [*2] reinsurance contract at issue is a reinsurance facutative certificate under which Argonaut agreed to indemnify Hartford for payments Hartford made under a primary general liability insurance policy that Hartford issued to Foster Wheeler Corporation n/k/a/ Foster Wheeler L.L.C. ("Foster Wheeler").

Oral argument on Argonaut's Motion to Compel and Hartford's Motion to Compel was heard on January 24, 2008. After careful consideration, the Court DENIES Argonaut's Motion to Compel [Doc. #42] and GRANTS Hartford's Motion to Compel [Doc. #48].

Background

The facultative certificate specifies that Argonaut is obligated to indemnify Hartford for losses and expenses paid by Hartford under its primary $1,000,000 general liability policy issued to Foster Wheeler for the policy period October 1, 1974 through October 1, 1975, bearing policy number ********22E [1], subject to the terms, conditions, and limits of liability set forth in the Facultative Certificate Number **-*702. According to

the terms of Certificate Number **-*702, Hartford retained the first $250,000 of risk under the policy. Argonaut reinsured 50 percent, or $375,000, of the $750,000 above Hartford's $250,000 retention.

1  The policy numbers [*3] have been redacted.

Until 1973, Foster Wheeler was engaged in the engineering and construction of steam-generating equipment for various industrial applications. Foster Wheeler incorporated materials which contained asbestos into its products and supplied these products to customers. On some occasions, Foster Wheeler simply sold the product but, on others, Foster Wheeler also installed or supervised the installation of the equipment. Thousands of personal injury lawsuits ensued naming Foster Wheeler as a defendant, beginning in the late 1970's and continuing to the present day.

The claims asserted in the underlying lawsuits implicate two categories of coverage: 1) "products," meaning that the liability of Foster Wheeler arises out of its sale of asbestos-containing products, and 2) "non-products," meaning that Foster Wheeler's liability arises out of its installation of asbestos-containing products. The distinction in coverage is critical to asbestos losses, because an insurance company's liability for products claims is generally subject to an aggregate limit under the terms of its policy. Thus, if an insurance company issues a policy with an aggregate limit of $1,000,000 for products [*4] claims, and the insured is found liable for eleven separate occurrences stemming from eleven different bodily injury claims for $100,000 each, the policy provides coverage for only $1,000,000, even though the insured is liable for $1,100,000. However, during the time period that these policies were issued to Foster Wheeler, there ordinarily were no aggregate limits for general liability exposures, such as non-products asbestos claims. Therefore, if the insured were found liable in 11 separate non-products cases stemming from 11 separate occurrences for $100,000 each, the insurer must pay $1,100,000 even if the limits of liability of its policies are $1,000,000. Thus, while an insurer's liability for products claims is capped at an aggregate limit, there would be an unlimited number of per occurrence limits available to an insured for non-products claims.

Hartford sold three primary policies to Foster Wheeler, for the periods of October 1, 1972 to October 1, 1973; October 1, 1973 to October 1, 1974; and October 1, 1974 to October 1, 1975. Under the policy for the period 10/1/74 - 10/1/75, Hartford could have been liable for an unlimited number of separate occurrences for non-products [*5] claims because there was no aggregate limit for exposures occurring during the installations by Foster Wheeler.

In November, 2001, Hartford and Foster Wheeler settled the products liability exposure under the three Hartford primary policies for $5,000,000. Hartford allocated its settlement payment to each of the three primary policies in approximately equal shares and billed its reinsurers using the same method. Argonaut was billed and paid $669,299.05 for its share of this loss.

Hartford and Foster Wheeler continued negotiations to resolve the non-products claims against all of Hartford's polices and in 2003, Foster Wheeler retained a consulting firm, LECG Economics ("LECG"). LECG created models for predicting Foster Wheeler's potential indemnity and defense exposures. LECG assigned probabilities to the potential choices of law, the character (i.e. products or non-products) of future claims, and how the policies would be triggered across the policy years at issue. In 2004, Hartford agreed to pay $54,212,394 to Foster Wheeler to buy back all of its primary policies and all of its excess policies.

Standard of Review

*Rule 26(b)(1) of the Federal Rules of Civil Procedure* sets forth the scope [*6] and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Fed.R.Civ.P. 26(b)(1)*. Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See *Daval Steel Prods. V. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)*; *Morse/Diesel, Inc. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988)*. The court may limit discovery, however, if the burden or expense of it would outweigh its likely benefit. See *Fed. R. Civ. P. 26(b)(2)*.

*Rule 34*

2008 U.S. Dist. LEXIS 123465, *6

At oral argument, Defense counsel raised for the first time Hartford's non-compliance with *Rule 34 of the Federal Rules of Civil Procedure*. Argonaut's complaint was based on the fact that there was no log listing the documents contained on CD's that were produced. Argonaut argued that they had to review [*7] 24,000 pages and found approximately 14,000 pages that were not related to the case. 2 *Federal Rule Civil Procedure Rule 34* reads:

Unless the parties otherwise agree, or the court otherwise orders:

> (i) a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request;
> (ii) if a request does not specify the form or forms for producing electronically stored information, a responding party must produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable.

*Fed. R. Civ. P. Rule 34(a)(i) - (ii)*.

Further, the Court notes that Argonaut's Production Request dated June 8, 2007 instructs that, "Hartford shall produce all responsive documents in the order, files and categories in which they are maintained." See Def. Argonaut's First Request for Production of Documents to Pltf., Pg. 4. Non-compliance with *Rule 34* was not previously raised and as such the parties are directed to come to an agreement on how documents will be produced. In absence of an agreement, documents are to be produced as they are kept [*8] in the usual course of business.

> 2   Specifically, counsel referenced a photograph of a giraffe. This photograph was not filed with the Court as an exhibit to the motion. Argonaut's motion was filed with 4 exhibits, numbered 1, 3, 4 and 5, there was no exhibit #2.

Argonaut's Motion to Compel [Doc. #42]

Argonaut seeks to review the terms and conditions of all policies Hartford, First State, or any other insurer issued to Foster Wheeler for the years 1970-1972, 1976-1982 and 1977 to 1982; the two primary policies Hartford issued to Foster Wheeler effective October 1, 1972 - October 1, 1973, and October 1, 1973 - October 1, 1974; and all claims files, underwriting files, desk files, notes, electronic communications and all other document relating to those policies to determine if the 2004 allocation was reasonable, in good faith and consistent with the 2001 allocation.

Argonaut contends that the 2004 allocation is dramatically inconsistent in that there are substantial differences between the amounts assigned to the primary layers as compared with the amounts assigned to the excess layers. However, Argonaut does not have detailed information regarding the coverage for the policies that covered [*9] periods 10/1/72 - 10/1/73 or 10/1/73 -10/1/74. This lack of knowledge with respect to the excess policies Hartford issued to Foster Wheeler is what Argonaut contends makes it impossible for Argonaut to explain the inconsistencies between the 2001 allocation and the 2004 allocation.

Hartford argues that Argonaut is not entitled to these documents since the policy at issue contains a "follow the fortunes" clause and as such Argonaut is bound by Hartford's settlement. 3 The Court agrees.

> 3   "Follow the fortunes" generally refers to the reinsurer's duty to follow the insured's underwriting fortunes.

At the time of the settlement, the case law on how to determine the number of occurrences was unsettled in both New York and New Jersey; however, the Court of Appeals has since held that "an insurer may engage in all manner of analysis to inform its decision as to whether, and at what amount, to settle, but those analyses are irrelevant to the contractual obligation of the reinsurer to indemnify the reinsured for loss under the reinsurance policy." *North River v. ACE, 361 F.3d 134, 142 (2d Cir. 2004)*. Later, in Travelers v. Gerling, the Second Circuit held that the subject of inconsistency between [*10] the settlement payment and pre-settlement analysis is not a proper subject of inquiry. *Travelers v. Gerling, 419 F.3d 181 (2d Cir. 2005)*. The Travelers court declined "to authorize an inquiry into the propriety of a cedent's method of allocating a settlement if the settlement itself was in good faith, reasonable, and within the terms of the policies." *Id. at 188-189*.

Hartford has provided Argonaut with a 14-page report detailing the analysis conducted in the underlying Foster Wheeler/Hartford settlement. LECG created a model that projected Hartford's liability under various scenarios, with different probability weights assigned to four different scenarios. LECG analyzed the settlement using a 75 products/25 non-products hypothetical and then computed the scenario under both New York and New Jersey law to address the choice of law problem. Both Hartford and Foster Wheeler challenged the proposed models before reaching settlement.

Further, Hartford estimates that it would take more than 12,000 hours to collect and preliminarily review all of the additional information sought by Argonaut's motion. Hartford's counsel represents that after conducting a preliminary search, Hartford companies [*11] have issued over 175 policies to Foster Wheeler entities over a span of 30+ years. [4] Many of these policies are totally unrelated to the single Hartford policy that Argonaut reinsured here. Accordingly, the Court DENIES Argonaut's Motion to Compel [Doc. #42].

> 4  Argonaut is seeking 17 years not 30+ years of policies; however, this argument is presumably based on the fact that Hartford would have to search through all of their policies to find the 12 specific years requested.

Hartford's Motion to Compel [Doc. #48]

Hartford seeks,

> "All documents Defendant has received from any source relating to the underlying insured and/or asbestos claims brought against the underlying insured, but not limited to, any documents Defendant obtained as a direct insurer of the underlying insured..." (Doc. Req. No. 11);

> "The identity of 'persons with knowledge concerning Argonaut's direct insurance coverage of the underlying insured, including without limitation under policy no. 71315001233 during the 1974-1975 policy year.'" (Interrogatory No. 5); and

> "All documents exchanged between defendant (on the one hand) and any retrocessionaire (on the other hand) relating to the underlying insured and/or the subject loss [*12] cession." (Doc. Req. No. 10).

Hartford makes these requests in order to determine Argonaut's insurance with Foster Wheeler, the information Argonaut learned about the Foster Wheeler case, and their communication with reinsurers.

Paragraph 36 of the complaint alleges that "Hartford gave timely notice of, and provided detailed information about the second Foster Wheeler settlement, to Argonaut." Argonaut's amended answer to this paragraph states that Argonaut "denies the allegations contained in paragraph '36' but states that Argonaut is not asserting the untimeliness of the notice as a defense." Thus, Argonaut is still claiming that this is an incomplete information case. [5] Accordingly, Hartford is entitled to explore what Argonaut learned about these claims and when they learned it.

> 5  At oral argument, counsel for Argonaut stated that this is an incomplete information case "as it relates to bad faith and breach of contract, under the terms of the - with the allocation."

In a letter dated Feb. 1, 2008, counsel for Argonaut notified opposing counsel and the Court that Argonaut insured Foster Wheeler directly from October 1, 1974 - October 1, 1975. [6] To date, this policy has not been produced [*13] by Argonaut. As Argonaut claims this is an incomplete information case and is challenging the handling, settling and allocation of Foster Wheeler claims under Hartford's policy for the exact same date range as Argonaut's policy with the underlying insured, the Court finds the requested information highly relevant and GRANTS Hartford's Motion to Compel [Doc. #48].

> 6  Argonaut originally denied this policy's existence, stating at oral argument, "I'm further informed that Argonaut did not directly insure Foster Wheeler."

The Court notes that there is an existing Stipulated Protective Order "governing the handling of discovery in this action" [Doc. #26]. However, any privileges that Argonaut claims may be asserted.

Conclusion

For the foregoing reasons, defendant's Motion to Compel [Doc. #42] is **DENIED** and plaintiff's Motion to Compel [Doc. #48] is **GRANTED**.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. *28 U.S.C. §636 (b)(1)(A)*; *Fed. R. Civ. P. 6(a)*, *6(e)* and *72(a)*; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed [*14] or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 25th day of April 2008.

/s/ HOLLY B. FITZSIMMONS

UNITED STATES MAGISTRATE JUDGE

Page 1

87 A.D.3d 487, 929 N.Y.S.2d 116, 2011 N.Y. Slip Op. 06324
**(Cite as: 87 A.D.3d 487, 929 N.Y.S.2d 116)**

H

Supreme Court, Appellate Division, First Department, New York.
In re LIQUIDATION OF MIDLAND INSURANCE COMPANY.
Everest Reinsurance Company, Appellant–Respondent,
v.
James J. Wrynn, Superintendent of Insurance of the State of New York, etc., et al., Respondents–Appellants.
Baxter International Inc., Intervenor–Respondent.

Aug. 25, 2011.

**Background:** The Supreme Court, New York County, Thomas J. Hughes, J., placed insurance company in liquidation and entered anti-suit injunction. The Court, Beverly S. Cohen, J., entered claims allowance procedure order. Reinsurer moved to modify anti-suit injunction to permit it to proceed with action for judgment declaring its rights and those of the liquidator under its reinsurance contracts with insurer. The Supreme Court, New York County, Michael D. Stallman, J., denied motion. Reinsurer appealed.

**Holdings:** The Supreme Court, Appellate Division, held that:
(1) liquidation court did not abuse its discretion in denying reinsurer's motion to modify anti-suit injunction;
(2) reinsurer's right to interpose defenses attached only after liquidator had allowed a claim;
(3) court had authority to order reference for hearings before referee on defenses to be interposed by reinsurers;
(4) evidence of settlements entered into by reinsurer as direct insurer in other proceedings was admissible;
(5) reinsurer could interpose defenses as to claims settled by liquidator or claims liquidator was bound by law to approve; and

(6) court properly allowed reinsurers to interpose defenses at claims allowance stage.

Affirmed.

West Headnotes

**[1] Insurance 217 ⇌1385**

217 Insurance
   217VI Financial Impairment
      217VI(B) Proceedings
         217k1385 k. Stays of proceedings. Most Cited Cases

Motion for insurance liquidation court to vacate anti-suit injunction is addressed to sound discretion of court, and one claiming error in exercise that discretion has burden of showing it was abused. McKinney's Insurance Law § 7419(b).

**[2] Insurance 217 ⇌1385**

217 Insurance
   217VI Financial Impairment
      217VI(B) Proceedings
         217k1385 k. Stays of proceedings. Most Cited Cases

Insurance liquidation court did not abuse its discretion in denying reinsurer's motion to modify anti-suit injunction to permit it to proceed with action for judgment declaring its rights and those of the liquidator under its reinsurance contracts with insurer; court found that reinsurer did not establish likelihood of its success in proving that liquidator violated its contractual investigation and interposition rights by refusing to allow reinsurer to participate in the allowance, disallowance and settlement of claims prior to their submission to the court, and further noted that reinsurer would suffer no injury until it was called upon to make payment on claims that liquidator allowed and court had approved. McKinney's Insurance Law § 7419(b).

**[3] Insurance 217 ⇌1385**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

87 A.D.3d 487, 929 N.Y.S.2d 116, 2011 N.Y. Slip Op. 06324
**(Cite as: 87 A.D.3d 487, 929 N.Y.S.2d 116)**

217 Insurance
   217VI Financial Impairment
      217VI(B) Proceedings
         217k1385 k. Stays of proceedings. Most Cited Cases

    Movant's burden on motion to modify anti-suit injunction in insurance liquidation is not proof by preponderance of evidence.

**[4] Insurance 217 ⚷ 1376**

217 Insurance
   217VI Financial Impairment
      217VI(A) In General
         217k1376 k. Reinsurance. Most Cited Cases

    Reinsurer's right to interpose defenses in insurance liquidation attaches only after liquidator has allowed a claim. McKinney's Insurance Law §§ 1308(a)(3), 7432, 7433.

**[5] Insurance 217 ⚷ 2911**

217 Insurance
   217XXIII Duty to Defend
      217k2911 k. In general; nature and source of duty. Most Cited Cases

**Insurance 217 ⚷ 3614**

217 Insurance
   217XXXII Reinsurance
      217k3613 Coverage
         217k3614 k. In general. Most Cited Cases

**Insurance 217 ⚷ 3623**

217 Insurance
   217XXXII Reinsurance
      217k3622 Claims and Settlement Practices
         217k3623 k. In general. Most Cited Cases

    Even where there is reinsurance, primary insurers are solely responsible for investigation and defense of claims.

**[6] Insurance 217 ⚷ 3615**

217 Insurance
   217XXXII Reinsurance
      217k3613 Coverage
         217k3615 k. Following fortunes, form, and settlement. Most Cited Cases

    By operation of "follow the settlements" clause, reinsurer is bound by settlement or compromise of claim agreed to by a cedent unless it can show impropriety in arriving at the settlement, and the reinsured's liability determinations are insulated from reinsurer's challenge unless they are fraudulent, in bad faith, or the payments are clearly beyond scope of original policy or in excess of reinsurer's agreed-to exposure.

**[7] Insurance 217 ⚷ 1389**

217 Insurance
   217VI Financial Impairment
      217VI(B) Proceedings
         217k1389 k. Hearings. Most Cited Cases

    Insurance liquidation court had authority to order reference for hearings before referee on defenses to be interposed by reinsurers. McKinney's CPLR 4001.

**[8] Insurance 217 ⚷ 1387**

217 Insurance
   217VI Financial Impairment
      217VI(B) Proceedings
         217k1387 k. Evidence. Most Cited Cases

    In insurance liquidation, evidence of settlements entered into by reinsurer as direct insurer in other proceedings was relevant to show that it had used the same claims handling methodology it sought to challenge; evidence was not improper evidence of compromise, as it was not offered "as proof of liability for or invalidity of any claim." McKinney's CPLR 4547.

**[9] Insurance 217 ⚷ 1412**

217 Insurance
   217VI Financial Impairment
      217VI(D) Claims

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

217k1412 k. In general. Most Cited Cases

In insurance liquidation, reinsurer could interpose defenses as to claims settled by liquidator or claims that liquidator was bound by law to approve. McKinney's Insurance Law § 1308.

**[10] Insurance 217 €══1412**

217 Insurance
    217VI Financial Impairment
        217VI(D) Claims
            217k1412 k. In general. Most Cited Cases

Insurance liquidation court properly allowed reinsurers to interpose defenses at claims allowance stage. McKinney's Insurance Law § 7433.

**\*\*118** Budd Larner, P.C., New York (Joseph J. Schiavone of counsel), for appellant-respondent.

Simpson Thacher & Bartlett, LLP, New York (Barry R. Ostrager of counsel), for Swiss Reinsurance America Corporation, GE Reinsurance Corporation and Westport Insurance Corporation, and Hogan Lovells U.S. LLP, New York (Sean Thomas Keely of counsel), for Clearwater Insurance Company, Metropolitan Group Property and Casualty Insurance Company, and Allianz S.p.A., respondents-appellants.

David Axinn, New York, for James J. Wrynn, respondent-appellant.

Nixon Peabody LLP, Boston, MA (Joseph C. Tanski, of the bar of the State of Massachusetts, admitted pro hac vice, of counsel), and Nixon Peabody LLP, New York (Barbara A. Lukeman of counsel), for California Insurance Guarantee Association, Connecticut Insurance Guaranty Association, District of Columbia Insurance Guaranty Association, Georgia Insurers Insolvency Pool, Maine Insurance Guaranty Association, Massachusetts Insurers Insolvency Fund, Mississippi Insurance Guaranty Association, New Hampshire Insurance Guaranty Association, Rhode Island Insurers Insolvency Fund, Texas Property & Casualty Insurance Guaranty Association, Vermont Property and Casualty Insurance Guaranty Association, and Virginia Property and Casualty Insurance Guaranty Association, respondents-appellants.

Shapiro, Rodarte & Forman LLP, Santa Monica, CA (Cindy F. Forman of counsel), for Baxter International Inc., respondent.

SWEENY, J.P., MOSKOWITZ, DEGRASSE, FREEDMAN, RICHTER, JJ.

**\*487** Order, Supreme Court, New York County (Michael D. Stallman, J.), entered on or about January 15, 2008, which denied the motions of Everest Reinsurance Company to modify an anti-suit injunction and to vacate an order, same court and Justice, entered on or about November 8, 2006, and modified a claims allowance procedure order, same court (Beverly S. Cohen, J.), entered January 31, 1997, unanimously affirmed, without costs. Order, same court (Michael D. Stallman, J.), entered June 2, 2009, which set forth certain procedures for the allowance of claims against Midland Insurance Company, unanimously affirmed, without costs.

By order entered on or about April 3, 1986, Supreme Court (Thomas J. Hughes, J.) placed Midland Insurance Company in liquidation and permanently enjoined the commencement and prosecution of all actions against it (*see* Insurance Law § 7419 [b] ). Everest Reinsurance Company entered into excess of loss reinsurance treaties and facultative reinsurance certificates with Midland for policy periods in the 1970s and 1980s (collectively, the reinsurance **\*\*119** contracts).[FN1] Claiming that its contractual rights were not being honored, Everest moved the court for an **\*488** order modifying the injunction so as to permit an action by Everest for a judgment declaring its rights as well as those of the liquidator under the reinsurance contracts. Everest sought leave to sue for a judgment declaring that the liquidator breached the reinsurance contracts by failing to provide Everest with (a) proper information regarding claims, (b) an opportunity to parti-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

87 A.D.3d 487, 929 N.Y.S.2d 116, 2011 N.Y. Slip Op. 06324
**(Cite as: 87 A.D.3d 487, 929 N.Y.S.2d 116)**

cipate in settlement negotiations with Midland policyholders and (c) an opportunity to participate in the claim allowance process. The relief Everest would have wanted to seek in its action was a declaration that it was not required to provide reinsurance for claims affected by the foregoing alleged breaches and a further declaration that Everest has the right to interpose defenses in the liquidator's settlement negotiations and claims allowance processes. On this appeal, Everest argues that the court committed error in denying its motion to modify the injunction.

> FN1. "A reinsurance contract is one by which a reinsurer agrees to indemnify a primary insurer for losses it pays to its policyholders" ( *Matter of Midland Ins. Co.,* 79 N.Y.2d 253, 258, 582 N.Y.S.2d 58, 590 N.E.2d 1186 [1992] ). In exchange for the agreement to indemnify, the primary insurer "cedes" part of the premiums for its policies and the losses on those policies to the reinsurer (*id.*). A facultative insurance agreement is one issued to cover a particular risk while treaty reinsurance is obtained in advance of actual coverage and may apply to any risk the primary insurer covers ( *id.*).

[1] Insurance Law § 7419(b) vests a liquidation court with broad authority to issue injunctions as it deems necessary to prevent interference with the liquidator or the proceeding, or the waste of the insurer's assets. Accordingly, a court has the unquestioned authority to vacate an anti-suit injunction in the interest of justice (*see Matter of Bean,* 207 App.Div. 276, 280, 201 N.Y.S. 827 [1923], *affd.* 238 N.Y. 618, 144 N.E. 916 [1924] ). A motion for such relief is addressed to the sound discretion of the court (*see Rosemont Enters. v. Irving,* 49 A.D.2d 445, 448, 375 N.Y.S.2d 864 [1975] ). One claiming error in the exercise of a court's discretion has the burden of showing an abuse of such discretionary power (*id.*). Everest correctly cites *Matter of Bean v. Stoddard*, 207 App.Div. 276, 201 N.Y.S. 827 [1923], *affd.* 238 N.Y. 618, 144 N.E. 916 [1924] for the proposition that in a liquidation proceeding a court may vacate an injunction in the interest of justice. "The phrase 'interest of justice' implies conditions 'which assist, or are in aid of or in the furtherance of, justice [and] bring about the type of justice which results when the law is correctly applied and administered' after consideration of the interests of both the litigants and society" ( *Hafkin v. N. Shore Univ. Hosp.,* 279 A.D.2d 86, 90, 718 N.Y.S.2d 379 [2000], *affd.* 97 N.Y.2d 95, 736 N.Y.S.2d 291, 761 N.E.2d 1018 [2001][citations omitted] ).

[2][3] In making its determination, the court found that Everest did not establish a likelihood of its success in proving that the liquidator violated its contractual investigation and interposition rights by refusing to allow Everest to participate in the allowance, disallowance and settlement of claims prior to their submission to the court. The court further noted that Everest will suffer no injury until it is called upon to make payment on **\*489** claims that the liquidator allows and the court has approved. The court also recognized the public interest in the single management of a liquidation that Insurance Law § 7419(b) is intended to protect. Hence, we conclude that the court gave due consideration to the interest of justice in denying**\*\*120** Everest's motion for an order vacating the anti-suit injunction. Although the court misstated Everest's burden on the motion to be proof by a preponderance of the evidence, we also find no abuse of discretion on the basis of the foregoing factors considered by the court.FN2

> FN2. Here the court relied on *Icy Splash Food & Beverage, Inc. v. Henckel*, 14 A.D.3d 595, 789 N.Y.S.2d 505 [2005], a case that is distinguishable because it involves the standard of proof on a trial as opposed to a motion.

[4] We reject Everest's argument that the court erroneously held that Everest's right to interpose defenses attaches only after the liquidator has al-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

lowed a claim. Under Insurance Law § 1308(a)(3), a reinsurance agreement may provide that where a claim is pending during an insurer's insolvency proceeding the reinsurer "may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defenses which it deems available to the ceding company, its liquidator, receiver or statutory successor." Moreover, Insurance Law § 7432 and § 7433 provide for the processing of claims by the liquidator while § 7434(a)(1) contemplates the payment of claims upon the recommendation of the liquidator under the direction of the court. Hence, claims are adjudicated after they have been filed with the court.

[5][6] Everest's claim of a right to interpose defenses at the commencement of a liquidation proceeding is also at odds with the very nature of reinsurance. Even where there is reinsurance, primary insurers are solely responsible for the investigation and defense of claims (see *Unigard Sec. Ins. Co. v. North Riv. Ins. Co.,* 79 N.Y.2d 576, 583, 584 N.Y.S.2d 290, 594 N.E.2d 571 [1992] ). "The reinsurer does not assume liability for losses paid ...; its only obligation is to indemnify the primary insurer" ( *Matter of Midland Ins. Co.,* 79 N.Y.2d at 258, 582 N.Y.S.2d 58, 590 N.E.2d 1186). The reinsurance contracts involved here contain typical "follow the settlements" or "follow the fortunes" provisions which leave reinsurers little room to dispute the primary insurers' claims handling (*Unigard* at 583, 584 N.Y.S.2d 290, 594 N.E.2d 571). By operation of a "follow the settlements" clause, a reinsurer is bound by the settlement or compromise of a claim agreed to by a cedent unless it can show impropriety in arriving at the settlement (*Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.,* 3 N.Y.3d 577, 583 n. 3, 789 N.Y.S.2d 461, 822 N.E.2d 768 [2004] ). The reinsured's liability determinations are insulated from the reinsurer's challenge " 'unless they are fraudulent, in bad faith, **\*490** or the payments are clearly beyond the scope of the original policy or in excess of [the reinsurer's] agreed-to exposure' " ( *Allstate Ins. Co. v. Am. Home Assur. Co.,* 43 A.D.3d 113, 121, 837 N.Y.S.2d 138 [2007], quoting *North Riv. Ins. Co. v. Ace Am. Reins. Co.,* 361 F.3d 134, 140 [2d Cir.2004], lv. denied 10 N.Y.3d 711, 860 N.Y.S.2d 483, 890 N.E.2d 246 [2008] [internal quotation marks and citation omitted] ). We are, therefore, not persuaded by Everest's argument that a reinsurer's right to investigate claims and interpose defenses attaches with the commencement of a liquidation proceeding and even before the liquidator has decided to allow a claim.

[7] We also reject Everest's claim that the court lacked the authority to order a reference for hearings before a referee on defenses to be interposed by the reinsurers. Since 1994, objections to the liquidator's recommendations for the denial of policyholders' claims in this proceeding have been referred to a referee to hear and report (see **121 *Matter of Midland Ins. Co.,* 71 A.D.3d 221, 223, 893 N.Y.S.2d 31 [2010], revd. on other grounds 16 N.Y.3d 536, 923 N.Y.S.2d 396, 947 N.E.2d 1174 [2011] ). The court's January 15, 2008 order provides for "a process in which [the reinsurers'] defenses can be adjudicated as part of the judicial approval process, involving a hearing before a referee equivalent to that provided where an objection is filed to the liquidator's disallowance of a claim." Accordingly, the court set up a mechanism for a referee to hear and report to the court on the reinsurers' defenses. CPLR 4001 enables a court to "appoint a referee to determine an issue, perform an act, or inquire and report in any case where this power was heretofore exercised and as may be hereafter authorized by law." The statute carries over the appointment powers exercised by courts "traditionally" or under prior law (Siegel, Practice Commentaries [McKinney's Cons. Laws of N.Y., Book 7B, CPLR C4001:1] ). CPLR 4001 became effective in 1962 (L. 1962, ch. 308). Courts exercised the power to appoint referees to hear and report in liquidation proceedings prior to that time ( see e.g. *Matter of Natl. Sur. Co.,* 286 N.Y. 216, 36 N.E.2d 119 [1941] ) and since (see e.g. *Matter of Union Indem. Ins. Co.,* 67 A.D.3d 469, 893 N.Y.S.2d 513 [2009], lv. denied 14 N.Y.3d 859,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

901 N.Y.S.2d 140, 927 N.E.2d 561 [2010]; *Matter of Midland Ins. Co.,* 269 A.D.2d 50, 709 N.Y.S.2d 24 [2000] ). We, therefore, find the court's appointment of a referee to hear and report with respect to the reinsurers' defenses to be within the proper exercise of the court's powers pursuant to CPLR 4001. Also, contrary to the arguments of Everest and the other reinsurers, their rights to issue subpoenas and conduct discovery have not been foreclosed. Such matters are within the discretion of a referee to hear and report (*see* CPLR 4201).

[8] The court properly denied Everest's motion for an order ***491** precluding the liquidator and Midland's policyholders from introducing evidence of settlements entered into by Everest as a direct insurer in other proceedings. The proffered evidence is relevant inasmuch as it is offered to refute Everest's claims by showing that Everest, as a direct insurer in other proceedings, utilized the claims handling methodology it seeks to challenge as a reinsurer in this proceeding. Everest's reliance on CPLR 4547 is misplaced because the disputed evidence is not offered "as proof of liability for or invalidity of any claim" (*id.*). Moreover, the statute does not limit the admissibility of evidence offered for another purpose (*id.*).

[9] The guaranty associations that have appeared in this proceeding assert that the court's order is erroneous to the extent that it allows a reinsurer to interpose defenses as to claims settled by the liquidator or claims the liquidator is bound by law to approve. The guaranty associations essentially argue that article 74 of the Insurance Law, which governs liquidation, trumps Insurance Law § 1308, which applies to reinsurance. We reject the guaranty associations' argument on the ground that liquidation cannot place a liquidator in a position different from that in which the insolvent insurer would have found itself but for the liquidation (*see Matter of Midland Ins. Co.,* 79 N.Y.2d at 264–265, 582 N.Y.S.2d 58, 590 N.E.2d 1186).[FN3]

guaranty associations' assertion that the liquidator is bound by the settlements of the associations' claims. We note that the issue was not addressed by the court below and the liquidator states in its brief that it was first raised by the guaranty associations on a motion for leave to reargue.

****122** [10] We reject the liquidator's argument that the claims procedures set forth in the June 2, 2009 order are inefficient insofar as they allow the reinsurers to interpose defenses at the claims allowance stage. On the contrary, the court's procedure provides a useful mechanism for the disposition of the reinsurers' defenses during liquidation or in a subsequent action brought by the liquidator. We have considered the parties' remaining contentions and find them unavailing.

N.Y.A.D. 1 Dept.,2011.
In re Liquidation of Midland Ins. Co.
87 A.D.3d 487, 929 N.Y.S.2d 116, 2011 N.Y. Slip Op. 06324

END OF DOCUMENT

> FN3. The appendices before this Court are insufficient to enable us to pass on the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.