UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                    :
UTICA MUTUAL INSURANCE COMPANY,    :
                    :
    Plaintiff,               :
                    :   No. 6:09-CV-0853 (DNH/TWD)
v.                    :
                    :   **ORAL ARGUMENT REQUESTED**
FIREMAN'S FUND INSURANCE COMPANY,   :
                    :   **REDACTED**
    Defendant.           :
                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFF UTICA MUTUAL INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT ON FFIC'S BAD FAITH NOTICE CLAIM**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................ iv

I.      INTRODUCTION ............................................................................1

II.     BACKGROUND ..............................................................................1

III.    LEGAL STANDARD........................................................................2

IV.     ARGUMENT ...................................................................................3

       A.      FFIC's Contention Fails Because New York Law Requires, Without Exception, Reinsurers To Show Prejudice Resulting From Alleged Late Notice ...............................................................................3

           1.      The Second Circuit in *Unigard* Asks The New York Court Of Appeals Whether Reinsurers Must Show Prejudice Resulting From Late Notice ...............................................................4

           2.      The New York Court Of Appeals Responds Affirmatively, Requiring Reinsurers To Show Prejudice Resulting From Late Notice, And Makes No Exception ...............................................4

           3.      The Second Circuit In *Christiania* Evaluates A Reinsurer's Claim That A Cedent Violated Its Good Faith Duty By Intentionally Not Providing Notice...............................................5

           4.      The Second Circuit Rules In *Unigard* ......................................8

           5.      Decisions Stating That The Second Circuit's *Unigard* Decision Represents New York Law Are Wrong...................................10

       B.      FFIC's Contention Fails Because It Cannot Show Utica Acted In Bad Faith In Providing Notice To FFIC.........................................11

           1.      FFIC Cannot Show That Utica Acted With "Intent To Deceive"...............................................12

           2.      FFIC Cannot Show That Utica Lacked "Routine Practices And Controls To Ensure Notification To Reinsurers" Or That The Alleged Lack Of Such Procedures Caused Utica To Provide Late Notice To FFIC ...............................................12

                i.      FFIC Cannot Show That Utica Lacked Routine Practices To Ensure Notification To Reinsurers ...............................................12

## TABLE OF CONTENTS (Cont')

**Page**

ii.    FFIC Cannot Show That Any Alleged Lack Of Practices
Caused Utica To Provide Late Notice To FFIC.............................15

V.    CONCLUSION.........................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Arrowood Indem. Co. v. Assurecare Corp.*,
No. 11-cv-5206, 2012 WL 4340699 (N.D. Ill. Sept. 19, 2012)................................16

*Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*,
979 F.2d 268 (2d Cir. 1992).................................................................... passim

*Fortress Re, Inc. v. Central Nat'l Ins. Co.*,
766 F.2d 163 163, 165-66 (4th Cir. 1985) ..............................................................7

*Hartford Accident & Indemnity Co. v. Michigan Mut. Ins. Co.*,
93 A.D.2d 337 (N.Y. App. Div. 1983) ...............................................................7, 8

*New Hampshire Ins. Co. v. Clearwater Ins. Co.*,
No. 653547/2011, 2013 NY Slip Op 32812[U] (N.Y. Sup. Ct. Nov. 1, 2013)............... passim

*New Shows, S.A. de C.V. v. Don King Prods., Inc.*,
No. 95-cv-8851, 1999 WL 553780 (S.D.N.Y. July 29, 1999) *aff'd*, 210 F.3d 355 (2d
Cir. 2000) .....................................................................................................6

*New York v. U.S. Army Corps of Engineers*,
896 F. Supp. 2d 180 (E.D.N.Y. 2012) .............................................................6, 7

*Salahuddin v. Goord*,
467 F.3d 263 (2d Cir. 2006)................................................................................2

*St. Paul Fire & Marine Ins. Co. v. U.S. Fid. & Guar. Co.*,
375 N.E.2d 733 (N.Y. 1978)...............................................................................7

*Unigard Sec. Ins. Co. v. N. River Ins. Co.*,
4 F.3d 1049 (2d Cir. 1993)...............................................................8, 9, 11, 12

*Unigard Sec. Ins. Co. v. N. River Ins. Co.*,
594 N.E.2d 571 (N.Y. 1992)..................................................................... passim

*Unigard Sec. Ins. Co. v. N. River Ins. Co.*,
949 F.2d 630 (2d Cir. 1991)................................................................................4

*United States v. Gotti*,
413 F. Supp. 2d 287 (S.D.N.Y. 2005) *aff'd*, 166 F. *App'x* 517 (2d Cir. 2006) .........................7

## <u>TABLE OF AUTHORITIES (Cont')</u>

<u>**Page(s)**</u>

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ..................................................................................................2

F. R. of Civ. P. 56 ....................................................................................................2

## I.     INTRODUCTION

This is a reinsurance dispute in which a reinsurer, Fireman's Fund Insurance Company ("FFIC"), alleges that a cedent, Utica Mutual Insurance Company, provided late notice to FFIC. The New York Court of Appeals has held that reinsurers must establish prejudice resulting from cedents' alleged late notice. *See Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 594 N.E.2d 571, 584 (N.Y. 1992) (holding that "the reinsurer must demonstrate how [late notice] was prejudicial"). FFIC, however, has contended that it can avoid establishing prejudice if it shows that Utica acted in bad faith with respect to providing notice to FFIC. That contention is contrary to New York law because there is no exception to the requirement that reinsurers establish prejudice resulting from late notice. In addition, even if the Court applies a bad faith exception to the prejudice requirement, FFIC cannot meet its burden to establish that Utica acted in bad faith in providing notice to FFIC. The Court should therefore grant partial summary judgment to Utica on FFIC's assertion.

## II.     BACKGROUND

In response to Utica's first amended complaint, FFIC filed an answer raising various affirmative defenses. (*See* Doc. No. 33.) One of those defenses alleged that Utica's notice to FFIC was late. (*Id.* ¶ 55.) In that defense, FFIC only alleged that Utica breached the notice provisions in the FFIC Certificates. (*Id.* ¶ 55 (as an affirmative defense, alleging that Utica's claims were barred "by Utica's preceding breach of the Certificates' provision requiring that Utica provide prompt notice of any occurrence or accident which appeared likely to involve the reinsurance").) FFIC did not allege that Utica failed to implement adequate policies about notifying reinsurers or acted in bad faith in any way related to the late notice. (*See id.* ¶ 59 (alleging that Utica breached the duty of utmost good faith in one context only – "by failing to act in a reasonable and businesslike manner in settling the Goulds' asbestos claims and by

1

materially alerting the terms of coverage under Utica's policies").) Years later, in an apparent

effort to avoid New York's requirement that FFIC establish prejudice, FFIC asserted that Utica

acted in bad faith with respect to providing notice to FFIC.  (*See* Doc. No. 142 (FFIC's August

2012 Motion to Compel).)

Yet FFIC's assertion has no basis. Shortly after learning about FFIC's reinsurance, Utica

wrote to FFIC in July 2008.[1] (Statement of Material Facts ¶ 2.) FFIC's contention that Utica

acted in bad faith in providing notice to FFIC simply lacks any support whatsoever.

 In any event, as shown below, FFIC's belated assertion that Utica acted in bad faith with

respect to providing notice to FFIC is based on an incorrect view of New York law. New York

law requires that reinsurers establish prejudice resulting from late notice, whether the notice was

negligently late, intentionally late, or even late because of bad faith. And, even if the Court

applies a bad faith exception to the notice requirement, the undisputed facts establish that FFIC is

unable to fulfill its burden to show that Utica acted in bad faith in providing notice to FFIC.

Accordingly, the Court should grant partial summary judgment to Utica on FFIC's contention

that Utica acted in bad faith with respect to providing notice to FFIC.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if

"there is no genuine dispute as to any material fact and the movant is entitle to judgment as a

matter of law." Fed. R. Civ. P. 56(a). After the moving party meets its burden of showing that no

issue of material fact exists, the burden shifts to the nonmoving party to show genuine disputes

of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). As shown below,

---

[1] FFIC may have received notice before July 2008 but that is not material to Utica's motion.

there are no issues of material fact relevant to this motion and Utica is entitled to judgment as a matter of law. The Court should therefore grant Utica's motion.

## IV.    ARGUMENT

As shown below in Section A, the Court should grant partial summary judgment to Utica on FFIC's assertion that Utica acted in bad faith with respect to providing notice to FFIC because that assertion is contrary to New York law, which requires reinsurers to establish prejudice resulting from cedents' alleged late notice. *See Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 594 N.E.2d 571, 584 (N.Y. 1992) (holding that "the reinsurer must demonstrate how [late notice] was prejudicial"); *New Hampshire Ins. Co. v. Clearwater Ins. Co.*, No. 653547/2011, 2013 NY Slip Op 32812[U], at *4-5 (N.Y. Sup. Ct. Nov. 1, 2013) (recognizing that alleged bad faith exception to prejudice requirement in Second Circuit decisions was not based on New York law in the reinsurance context and noting that exception had not been applied by any New York state court). And, as shown below in Section B, even if the Court applies a bad faith exception to the prejudice requirement, the Court should still grant partial summary judgment to Utica because the undisputed facts demonstrate that FFIC cannot meet its burden to show that Utica acted in bad faith in providing notice to FFIC.

### A.    FFIC's Contention Fails Because New York Law Requires, Without Exception, Reinsurers To Show Prejudice Resulting From Alleged Late Notice

The New York Court of Appeals has held, without exception, that "the reinsurer must demonstrate how [late notice] was prejudicial." *See Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 594 N.E.2d 571, 584 (N.Y. 1992). Applied here, FFIC must show that Utica's alleged late notice was prejudicial. New York law does not allow FFIC to sidestep that showing by asserting that Utica acted in bad faith with respect to providing notice to FFIC.

3

To support its contrary position, FFIC has relied upon statements in a series of Second Circuit decisions issued in the early 1990s. But, as detailed below, those statements do not accurately reflect the New York Court of Appeals' holding in *Unigard* that "the reinsurer must demonstrate how [late notice] was prejudicial." 594 N.E.2d at 584; *see also New Hampshire Ins. Co. v. Clearwater Ins. Co.*, No. 653547/2011, 2013 NY Slip Op 32812[U] (N.Y. Sup. Ct. Nov. 1, 2013) (recognizing that alleged bad faith exception to prejudice requirement in Second Circuit decisions was not based on New York law in the reinsurance context and had not been applied by New York state courts).

   1. <u>The Second Circuit in *Unigard* Asks The New York Court Of Appeals Whether Reinsurers Must Show Prejudice Resulting From Late Notice</u>

In *Unigard Security Insurance Co. v. North River Insurance Co.*, Unigard (the reinsurer) asserted that North River (the cedent) provided late notice of certain underlying claims. 949 F.2d 630, 631 (2d Cir. 1991). After a bench trial, the district court found that North River's notice was untimely but rejected Unigard's late-notice defense because Unigard had not shown prejudice arising from the late notice. *Id.*

On appeal, the Second Circuit noted that "no New York appellate court decision addresses the question of whether a reinsurer must prove that it was prejudiced by untimely notice of loss in order to successfully invoke a late-notice defense." *Id*. The court therefore certified this question to the New York Court of Appeals: "Must a reinsurer prove prejudice before it can successfully invoke the defense of late notice of loss by the reinsured?" *Id.* at 632.

   2. <u>The New York Court Of Appeals Responds Affirmatively, Requiring Reinsurers To Show Prejudice Resulting From Late Notice, And Makes No Exception</u>

The New York Court of Appeals "answer[ed] the [certified] question in the affirmative." *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 594 N.E.2d 571, 581 (N.Y. 1992). The Court of

Appeals recognized that New York law did not require direct insurers to show prejudice resulting from late notice. *Id.* at 578. Nevertheless, the court stated: "we hold that this 'no prejudice rule' does not apply to a failure to comply with the prompt notice requirement in a contract of reinsurance." *Id.* The New York Court of Appeals created no exception to its holding that "the reinsurer must demonstrate how [late notice] was prejudicial." *Id.* at 584.

> 3. The Second Circuit In *Christiania* Evaluates A Reinsurer's Claim That A Cedent Violated Its Good Faith Duty By Intentionally Not Providing Notice

After the Court of Appeals' decision on the certified question and while the Second Circuit was considering the merits of the *Unigard* case, the Second Circuit decided another case involving a reinsurance contract. *See Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268 (2d Cir. 1992). In a section titled "I. Notice", the *Christiania* court first reviewed the district court's decision on the reinsurer's late notice defense. The court reversed the district court's summary judgment decision that notice was not due until April 1987 and therefore remanded for a factual determination about when notice was due. *Id.* at 277-278. The court also acknowledged the recent New York Court of Appeals' *Unigard* decision that required reinsurers to show prejudice resulting from the cedent's late notice and stated that Christiania (the reinsurer) may be able to demonstrate prejudice on remand. *Id.* at 274.

Then, in an entirely different section titled "III. Other Claims", the court evaluated Christiania's claim that the cedent breached "its duty to deal in utmost good faith by virtue of its conscious decision not to provide notice sooner." *Id.* at 280. The court stated that "it is difficult to understand precisely what Christiania's challenge is" because "the significance of defendant's 'conscious,' or knowing decision not to provide notice sooner is not explained by Christiania." *Id.* at 281. The court explained that if the jury found the cedent "should have provided earlier than it did – whether its failure was conscious or otherwise – then the 'prompt notice'

5

requirement has not been satisfied." *Id.* Under that scenario, Christiania would have still had to establish prejudice. *Id.* at 274.

Significantly, the Second Circuit then rejected a notion similar to the one FFIC relies on here to attempt to avoid establishing prejudice: "It seems that what Christiania would have us do is supplant the New York rule that a reinsurer must prove prejudice as a result of late notice by holding that 'consciously' late notice, without more, is sufficient to entitle the reinsurer to relief. We reject this invitation." *Id.* at 280. That is, the Second Circuit held that the reinsurer could not avoid showing prejudice by establishing that the cedent consciously provided late notice. The court therefore affirmed the district court's dismissal of the reinsurer's breach of the duty to deal in utmost good faith claim. *Id.*

Nevertheless, in dicta, the court stated "[a]t most, a reinsured's failure to provide prompt notice *may* entitle the reinsurer to relief without showing prejudice if the reinsured acted in bad faith." *Id.* at 281 (emphasis added). Not only is the statement dicta, but it is qualified with the word "may" and appears in an entirely different section of the opinion than the section that dealt with the reinsurer's late notice defense, which the court had already acknowledged required the reinsurer to show prejudice, as held by the New York Court of Appeals. *Id.*; *Unigard*, 594 N.E.2d at 584 (holding that "the reinsurer must demonstrate how [late notice] was prejudicial").

That is, the genesis for FFIC's assertion that it can avoid showing prejudice if it can show that Utica acted in bad faith with respect to notice is a qualified statement in dicta. *See New Shows, S.A. de C.V. v. Don King Prods., Inc.*, No. 95-cv-8851, 1999 WL 553780, at *11 n.12 (S.D.N.Y. July 29, 1999) (finding that jury need not decide party's contractual right to attorneys' fees notwithstanding Second Circuit's statement to the contrary because the "statement was dicta, and need not be followed") *aff'd*, 210 F.3d 355 (2d Cir. 2000); *New York v. U.S. Army*

6

*Corps of Eng'rs*, 896 F. Supp. 2d 180, 196 (E.D.N.Y. 2012) (because language in Supreme Court decision was dicta, the court "need not follow it"); *United States v. Gotti*, 413 F. Supp. 2d 287, 292 (S.D.N.Y. 2005) (fundamental problem with defendant's reliance on excerpt from Second Circuit decision was that the "passage is dicta and, as such, does not have binding precedential value") *aff'd*, 166 F. *App'x* 517 (2d Cir. 2006). Moreover, the Second Circuit made that qualified statement in a decision in which its actual holding was that the reinsurer could not avoid showing prejudice (even if the failure to notify was intentional). *Christiania*, 979 F.2d at 280. Thus, there is no basis to contend that the Second Circuit held that a reinsurer could avoid showing prejudice if the cedent acted in bad faith with respect to notice.

Indeed, the Second Circuit's statement that bad faith may excuse a reinsurer from showing prejudice is contrary to New York law. First, the New York Court of Appeals created no exception to its holding in *Unigard* that "the reinsurer must demonstrate how [late notice] was prejudicial." 594 N.E.2d at 584. Second, as a New York state court recognized, "to the extent that *Christiania* relied on New York law [with respect to the bad faith exception to prejudice], its citations were not in the reinsurance context or in the context of notice."[2]  *New Hampshire Ins.*, 2013 NY Slip Op 32812[U] at *4-5. Rather, the two New York cases the *Christiania* court cited in support of its statement involved "primary insurers placing their interests above those of excess insurers." *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. U.S. Fid. & Guar. Co.*, 375 N.E.2d 733 (N.Y. 1978) (finding that record adequately supported finding that primary insurer breached obligation owed to excess insurer "to manage its insureds' defense in good faith"); *Hartford Acc. & Indemn. Co. v. Michigan Mut. Ins. Co.*, 93 A.D.2d 337, 342 (N.Y. App. Div.

---

[2] The non-New York decision relied upon by the *Christiania* court applied North Carolina law. *See Fortress Re, Inc. v. Central Nat'l Ins. Co.*, 766 F.2d 163, 163, 165-66 (4th Cir. 1985). FFIC has not contended that North Carolina law applies in this case.

1983) (finding that primary insurer breached duty owed to excess insurer "to exercise good faith in handling the defense and to safeguard the rights and interest of the excess carrier" by not proceeding against particular third-party defendant). These two cases involving direct insurance are particularly immaterial in a reinsurance late notice dispute since the New York Court of Appeals, after citing the differences between direct insurance and reinsurance, found that the no-prejudice rule in direct insurance late notice cases was inapplicable in reinsurance cases. *Unigard*, 594 N.E.2d at 582-584.

Accordingly, the Second Circuit did not hold in *Christiania* that a reinsurer can avoid showing prejudice if it establishes that its cedent acted in bad faith with respect to notice. Rather, the *Christiania* court held that the reinsurer in that case could not avoid showing prejudice even if the cedent consciously withheld notice. And, the *Christiania* court's statement that reinsurers might be able to avoid showing prejudice if they establish that their cedent acted in bad faith with respect to notice is demonstrably contrary to New York law. *See Unigard*, 594 N.E.2d at 581 (holding that "the reinsurer must demonstrate how [late notice] was prejudicial").

### 4. The Second Circuit Rules In *Unigard*

Following the *Christiania* decision, the Second Circuit ruled on the dispute between Unigard and North River. *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993). The court began by reviewing the New York Court of Appeals' answer on the certified question. It stated that "we certified to the New York Court of Appeals the question of whether a reinsurer must prove prejudice to prevail on a late loss notice defense. The Court of Appeals held that prejudice must be shown." *Id.* at 1053. Then, applying the New York Court of Appeals' ruling, the Second Circuit found that Unigard could not establish prejudice resulting from North River's late notice. *Id.* at 1067-69.

8

The court continued and cited the *Christiania* court's statement that "a [ceding insurer's] failure to provide prompt notice *may* entitle the reinsurer to relief without showing prejudice if [the ceding insurer] acted in bad faith."[3] *Id.* at 1069. Notably, the Second Circuit cited no authority other than *Christiania* to support that proposition and, as shown above, *Christiania*'s holding was actually to the contrary and the cited statement is inconsistent with New York law. *See Unigard*, 594 N.E.2d at 581 (holding that "the reinsurer must demonstrate how [late notice] was prejudicial"); *New Hampshire Ins.*, 2013 NY Slip Op 32812[U] at *4-5 (recognizing that *Christiania* did not rely on New York reinsurance law).

The Second Circuit apparently raised this bad faith issue because the district court had stated that "North River might have violated the duty of utmost good faith if it inadvertently failed to disclose material information to its reinsurer." *Unigard*, 4 F.3d at 1069 (citing district court opinion). However, the Second Circuit rejected this statement stating, without any supporting New York authority, that rather than inadvertence, "[w]e thus think the proper minimum standard for bad faith should be gross negligence or recklessness." *Id.* The court then continued in dicta and again without any citation to New York authority stated:

> If a ceding insurer deliberately deceives a reinsurer, that deception is of course bad faith. However, if a ceding insurer has implemented routine practices and controls to ensure notification to reinsurers but inadvertence causes a lapse, the insurer has not acted in bad faith. But if a cedent insurer does not implement such practices and controls, then it has willfully disregarded the risk to reinsurers and is guilty of gross negligence. A reinsurer, dependent on its ceding insurer for information, should be able to expect at least this level of protection, and, if a ceding insurer fails to provide it, the reinsurer's late loss defense should succeed.

---

[3] In its December 2012 Order ruling on FFIC's motion to compel, this Court acknowledged the qualified nature of the Second Circuit's statement. Doc. No. 156 ("In [*Unigard*], the Second Circuit stated that an insurer's failure to provide prompt notice *might* entitle a reinsurer to relief on a late notice defense without showing prejudice.").

*Id.* The Second Circuit was unable to cite New York law for this dicta because it is actually directly contrary to the New York Court of Appeals' ruling on the certified question in *Unigard* that reinsurers must show prejudice resulting from late notice, without exception. 594 N.E.2d at 584. And, as shown above, even *Christiania* does not support the Second Circuit's dicta in *Unigard*.

Ultimately, the Second Circuit did not even apply its "gross negligence or recklessness" bad faith standard, instead concluding that "[b]ecause we also find *no intent to deceive* Unigard, we conclude that North River did not act in bad faith in failing to give Unigard notice of signing of the Wellington Agreement." *Id.* at 1070 (emphasis added).

5.     Decisions Stating That The Second Circuit's *Unigard* Decision Represents New York Law Are Wrong

Because the dicta in the Second Circuit's *Unigard* decision does not represent New York law (as shown above), court decisions after that decision that assume, without analysis, the bad faith exception in that decision is New York law are erroneous. Indeed, the only court to actually analyze whether *Unigard* and *Christiania* represent New York law issue found correctly that the decisions were inconsistent with New York law. *See New Hampshire Ins.*, 2013 NY Slip Op 32812[U] at *4-5 (recognizing that bad faith exception created by federal courts "has not been implemented by the courts of [New York]" and reviewing why *Christiania* does not correctly represent New York law). The Court should therefore not rely on decisions assuming, without analysis, that the Second Circuit's statements in *Unigard* represent New York law. It should instead hold FFIC to the unequivocal standard in the New York Court of Appeals' *Unigard* decision that "the reinsurer must demonstrate how [late notice] was prejudicial." 594 N.E.2d at 588.

10

Accordingly, because the New York Court of Appeals has held, without exception that "the reinsurer must demonstrate how [late notice] was prejudicial," the Court should grant partial summary judgment to Utica on FFIC's contention that it can avoid showing prejudice if it shows that Utica acted in bad faith in providing notice to FFIC. *Id.*

### B.     FFIC's Contention Fails Because It Cannot Show Utica Acted In Bad Faith In Providing Notice To FFIC

Even if the Court applies a bad faith exception to New York's prejudice requirement, FFIC's contention still fails because there is no evidence that Utica acted in bad faith with respect to providing notice to FFIC. To establish that Utica acted in bad faith under *Unigard*, the Court should require FFIC to show that Utica acted with "intent to deceive" FFIC. *See Unigard*, 4 F.3d at 1970 (concluding that the cedent did not act in bad faith in failing to provide notice because there was "no intent to deceive" the reinsurer). The Court should apply this standard because it is the same standard that the *Unigard* court in fact applied and is also consistent with the *Christiania* court's conclusion that a reinsurer had to show prejudice even if its cedent intentionally withheld notice. *Id.*; *Christiania*, 979 F.2d at 281 (rejecting invitation to "supplant the New York rule that a reinsurer must prove prejudice as a result of late notice by holding that 'consciously' late notice, without more, is sufficient to entitle the reinsurer to relief").

The Court should reject any argument by FFIC that the Court should apply the dicta in *Unigard* that a cedent that does not implement "routine practices and controls to ensure notification to reinsurers . . . has willfully disregarded the risk to reinsurers and is guilty of gross negligence." In addition to being dicta, this statement is contrary to the "intent to deceive" standard that the *Unigard* court actually applied. In any event, as shown below and as a matter of law, FFIC is unable to establish that Utica acted in bad faith under either standard.

1.       FFIC Cannot Show That Utica Acted With "Intent To Deceive"

There is no evidence that Utica acted with intent to deceive FFIC with respect to

providing notice to FFIC. To the contrary, shortly after learning about FFIC's reinsurance, Utica

wrote to FFIC about the FFIC reinsurance in July 2008 certificates. (Statement of Material Facts

¶ 2.) Based on that undisputed fact, no reasonable juror could find that Utica acted with intent to

deceive FFIC. Accordingly, as a matter of law, FFIC cannot fulfill its burden to establish that

Utica intended to deceive FFIC with respect to notice. FFIC is therefore unable to establish that

Utica acted in bad faith with respect to notice. *See Unigard*, 4 F.3d at 1070 (concluding that the

cedent did not act in bad faith in failing to provide notice because there was "no intent to

deceive" the reinsurer).

2.       FFIC Cannot Show That Utica Lacked "Routine Practices And Controls
         To Ensure Notification To Reinsurers" Or That The Alleged Lack Of Such
         Procedures Caused Utica To Provide Late Notice To FFIC

Even if the Court applies the dicta in *Unigard*, FFIC is still unable to establish that Utica

acted in bad faith with respect to providing notice to FFIC. First, FFIC cannot establish that

Utica lacked routine practices to ensure notification to reinsurers during the relevant time period

because Utica in fact had such practices. Second, even if Utica did not have those routine

practices, FFIC cannot show that the lack of such practices caused Utica to provide late notice to

FFIC.  Thus, FFIC cannot show that Utica acted in bad faith with respect to providing notice to

FFIC.

i.       *FFIC Cannot Show That Utica Lacked Routine Practices To
         Ensure Notification To Reinsurers*

As shown below, FFIC cannot show that Utica lacked routine practices to ensure

notification to reinsurers because Utica in fact had routine practices to ensure notification to

12

Utica's reinsurers. There is simply no evidence that Utica lacked routine practices to ensure notification to reinsurers.

Utica's policy for notifying reinsurers was to follow the notice provisions in the relevant reinsurance policies.[4] (Statement of Material Facts ¶3 (Bernard Turi's, Utica's general counsel, testimony that, among other things, Utica's policy for facultative reinsurance was "you got to go by whatever the contract says and the FAC certs [i.e., facultative certificates] vary in language"); *id.* ¶ 4 (Kristen Martin's, Utica employee, testimony that "we had guidelines around when we gave initial notice. One of the things you'd want to do is if it's – you know, if it's a treaty, you'd have to understand what the treaty requirements are for notice. If it's a facultative reinsurance certificate, you'd want to read what the notice provisions were on those."); *see also id.* ¶ 4( Ms. Martin's testimony that "we have procedures about reporting reinsurance").) In particular, to ensure that reinsurers received proper notice, Utica employees researched reinsurance and looked to the reinsurance policy's provisions about notice. (Statement of Material Facts ¶ 5 (Ms. Martin's testimony); *see also id.* ¶ 5 (Ms. Martin's testimony that Utica followed the notice provision in the relevant facultative certificate).) The failure to do so could affect employment at Utica. (Statement of Material Facts ¶ 5 (Ms. Martin's testimony).)

In general, Utica "would put people on notice as soon as we could, and as soon as we were aware of who they were, and send it out." (Statement of Material Facts ¶ 6 (Ms. Martin's testimony); *see also id.* ¶ 6 (Ms. Martin testifying that she would send the notice when she found the reinsurer's policy); Statement of Material Facts ¶ 9 (Mr. Schultz, a Utica employee involved

---

[4] The provisions that Utica followed in facultative reinsurance certificates often require notice when an occurrence appears likely to involve the particular certificate. For example, the FFIC certificates provide that "[p]rompt notice shall be given to the Reinsurer by the Company of any occurrence or accident which appears likely to involve his reinsurance . . . ." (Statement of Material Facts ¶ 1.)

in giving notice to reinsurers, testified that he would give notice as a precaution).) At the very

latest, notice was sent "when it reached a certain threshold, which I am going to say was 50

percent, generally." (Statement of Material Facts ¶ 7 (testimony of Dan O'Connell, former Utica

employee involved in determining when notices should be sent to reinsurers).) In fact, Utica had

a program that provided a report when a certain threshold was met so that Utica could properly

notify its reinsurers. (Statement of Material Facts ¶ 8 (Mr. O'Connell testimony).) Not a single

witness has testified that Utica lacked routine practices to ensure notification to Utica's

reinsurers.

        In addition, Utica had further memorialized its practices regarding notifying reinsurers

and the importance of timely notice to reinsurers in memoranda and emails. For example, █

████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ Many other memoranda

memorialize Utica's practices for notifying reinsurers.[5] (Statement of Material Facts ¶ 13.)

Accordingly, in light of the undisputed facts outlined above, FFIC is unable to show that Utica lacked routine practices for providing notice to reinsurers. Utica consistently informed and reminded its key personnel of the importance of timely notice and all of those personnel who were deposed have testified that they were well aware of Utica's requirements for providing timely notice and complied with those requirements. (Statement of Material Facts ¶¶ 3-13.)

*ii.    FFIC Cannot Show That Any Alleged Lack Of Practices Caused Utica To Provide Late Notice To FFIC*

Even if FFIC can somehow show a factual dispute relevant to its burden to establish that Utica lacked practices for notifying reinsurers, it still cannot show that the lack of practices caused Utica to provide late notice to FFIC. Indeed, any delay in providing notice to FFIC was not the result of any alleged lack of practices for providing notice to reinsurers. Rather, any delay in notifying FFIC was the result of Utica's diligent searches for reinsurance not uncovering the FFIC reinsurance certificates given that the certificates were issued many years before. (Statement of Material Facts ¶ 2.) Accordingly, FFIC cannot show that any alleged lack of guidelines for providing notice to reinsurers caused Utica to provide late notice to FFIC. Thus, to the extent that lacking practices establishes bad faith, that alleged bad faith did not cause the delay in providing notice to FFIC. And FFIC therefore cannot show that Utica acted in bad faith with respect to providing notice to FFIC.

In sum, no reasonable juror could find on these undisputed facts that (a) Utica lacked routine practices for notifying reinsurers or (b) that any alleged lack of such practices caused the

---

[5] Mr. Turi testified that the principles in the procedures would apply equally to facultative reinsurers such as FFIC. (Statement of Material Facts ¶ 13.)

late notice to FFIC. Accordingly, as a matter of law, FFIC cannot fulfill its burden to establish that Utica acted in bad faith in providing notice to FFIC. *See Arrowood Indem. Co. v. Assurecare Corp.*, No. 11-cv-5206, 2012 WL 4340699, at *7 (N.D. Ill. Sept. 19, 2012) (granting summary judgment to cedent where undisputed facts established that cedent had routine practices for notifying reinsurers). Thus, the Court should grant partial summary judgment to Utica.

## V.    CONCLUSION

As demonstrated above, New York law requires reinsurers to establish prejudice resulting from late notice. *See Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 594 N.E.2d 571, 584 (N.Y. 1992) (holding that "the reinsurer must demonstrate how [late notice] was prejudicial"). New York law makes no exception to the prejudice requirement, including an exception based on the reason notice was late. *Id.* (not setting forth any exception to prejudice requirement). That the New York Court of Appeals did not create a bad faith exception makes sense because the reason notice was late has no effect on the harm FFIC allegedly suffered because of the late notice. And, the New York Court of Appeals has held, without exception, that reinsurers must establish prejudice resulting from late notice. *Id.* Accordingly, as a matter of law, FFIC is incorrect that it need not demonstrate how late notice was prejudicial if it can show that Utica acted in bad faith with respect to notice. On this basis alone, the Court should therefore grant partial summary judgment to Utica on FFIC's assertion that Utica acted in bad faith with respect to notice.

Even if the Court applies a bad faith exception to the prejudice requirement, the Court should still grant partial summary judgment to Utica because the undisputed facts establish that FFIC cannot fulfill its burden to show that Utica acted in bad faith with respect to providing notice to FFIC. To the contrary, Utica provided notice to FFIC as soon as Utica learned about the FFIC reinsurance certificates. On those undisputed facts, no reasonable juror could find that Utica acted in bad faith in providing notice to FFIC. Thus, the Court should grant partial

summary judgment to Utica on FFIC's assertion that Utica acted in bad faith with respect to providing notice to FFIC.

Dated: June 13, 2014                    Hunton & Williams LLP

                                        s/ Walter J. Andrews
                                        Walter J. Andrews (NDNY Bar No. 106051,
                                        admitted *pro hac vice*)
                                        Syed S. Ahmad (NDNY Bar No. 602911)
                                        Hunton & Williams LLP
                                        1751 Pinnacle Drive, Suite 1700
                                        McLean, Virginia 22102
                                        Tel: (703) 714-7400
                                        wandrews@hunton.com
                                        sahmad@hunton.com

                                        *Attorneys for Plaintiff*
                                        *Utica Mutual Insurance Company*

**DECLARATION OF SERVICE**

I certify that on June 13, 2014, a true copy of the foregoing was served on counsel of

record via ECF Filing Notification and U.S. Mail.


/s/ Patrick M. McDermott
Patrick M. McDermott


Mary A. Lopatto
Williams Lopatto PLLC
1776 K Street, NW
Suite 800
Washington, DC 20006

*Attorneys for Defendant*
*Fireman's Fund Insurance Company*

18