UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

UTICA MUTUAL INSURANCE COMPANY,                    No.: 6:09-CV-0853 (DNH/TWD)

                        Plaintiff,


                                                          REDACTED

          -against-


FIREMAN'S FUND INSURANCE COMPANY,

                        Defendant.

-----------------------------------------------------------------x

### DEFENDANT FIREMAN'S FUND INSURANCE COMPANY'S
### MEMORANDUM OF LAW IN OPPOSITION TO
### PLAINTIFF UTICA MUTUAL INSURANCE COMPANY'S MOTION FOR
### PARTIAL SUMMARY JUDGMENT ON FFIC'S BAD FAITH NOTICE CLAIM


### MOTION 2: BAD FAITH NOTICE CLAIM

## TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY ....................................................................... 1

II.   ARGUMENT ........................................................................................................... 2

      A.    This Court is Bound by the Second Circuit's Interpretation of
            New York Law............................................................................................... 2

      B.    The Second Circuit Correctly Interpreted New York Law............................ 6

      C.    Whether Utica's Late Notice was in Bad Faith is a Question for
            the Jury.......................................................................................................... 9

III.  CONCLUSION........................................................................................................15

## TABLE OF AUTHORITIES

**Cases:**                                                                   **Page**

*Adelphia Recovery Trust v. Bank of America,*
   624 F.Supp.2d 292 (S.D.N.Y. 2009)................................................................... 2

*Booking v. General Star Management Co.,*
   254 F.3d 414 (2d Cir. 2001)............................................................................... 2

*Christiania Gen. Ins. Corp. v. Great American Ins. Co.,*
   979 F.2d 268 (2d Cir. 1992).......................................................................... passim

*Factors Etc., Inc. v. Pro Arts, Inc.,*
   652 F.2d 278 (2d Cir. 1981)............................................................................... 2

*Granite State Ins. Co. v. Clearwater Ins. Co.,*
   No. 09 Civ. 10607 (RKE), 2014 WL 1285507 (S.D.N.Y. March 31, 2014)............. 3, 4, 5

*In re Liquidation of Union Indem. Ins. Co.,*
   89 N.Y.2d 94, 674 N.E.2d 313 (1996).................................................................. 7

*New Hampshire Ins. Co. v. Clearwater Ins. Co.,*
   Index No. 653547/2011, 2013 Slip Op. 32812(U)
   (N.Y. Sup. Ct. Oct. 31, 2013) .......................................................................... 5, 6

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers*
*& Lybrand, LLP,*
   322 F.3d 147 (2d Cir. 2003)............................................................................... 2

*Sumner v. Mortgage Elect. Registration Systems,*
   Civil Action No. 11-11910-DJC, 2014 WL 250355
   (D. Mass. Jan. 22, 2014) ................................................................................... 2

*Sun Mut. Ins. Co. v. Ocean Ins. Co.,*
   107 U.S. 485 (1883).......................................................................................... 7

*Unigard Security Ins. Co. v. North River Ins. Co.,*
   4 F.3d 1049 (2d Cir. 1993) ("*Unigard II*") .................................................... passim

*Unigard Security Ins. Co. v. North River Ins. Co.,*
   79 N.Y. 2d 576, 594 N.E.2d 571 (1992) ("*Unigard I*")...................................... 3, 7, 8

*Wankier v. Crown Equip. Corp.,*
   353 F.3d 862 (10th Cir. 2003) ........................................................................... 2, 6


**Rules:**

Fed. R. Civ. P. 30(b)(6) ........................................................................................ 10, 11

## I.    INTRODUCTION AND SUMMARY

The evidence in this case shows that Utica Mutual Insurance Company ("Utica"), in an effort to shift to Fireman's Fund Insurance Company ("FFIC") a significant portion of the financial impact of Utica's 2007 settlement with Goulds Pumps over asbestos claims, schemed to create a false record that certain policies had aggregate limits so that Utica artificially could access FFIC's reinsurance. The evidence further shows that, in violation of its duty of utmost good faith, Utica failed to notify FFIC of its $35 million claim until 12 years after it notified the reinsurer at one level below Fireman's Fund, 8 years after it notified other facultative reinsurers, and a year and a half after it settled with Goulds. FFIC maintains that, under applicable New York law as interpreted and applied by the Second Circuit, Utica's suit against it is barred by Utica's bad faith failure to provide prompt notice, among other reasons.

Utica has moved for partial summary judgment on the pretentious ground that the Second Circuit is wrong in its interpretation of New York law and that this Court should disregard it. Utica contends that, under New York law, FFIC can succeed on its late notice defense only if FFIC proves it was prejudiced by the delay and that Utica's bad faith is irrelevant. Alternatively, Utica argues that the undisputed material facts demonstrate that Utica did not breach its duty of utmost good faith in failing to provide prompt notice to Fireman's Fund.

Utica's motion has no merit on any ground. First, under our hierarchical system of justice, this Court is bound by the Second Circuit's interpretation of New York law, right or wrong. Second, the Second Circuit's interpretation of New York law is correct and was properly applied by the Southern District of New York just three months ago in a decision that is squarely on point. Third, there is substantial evidence that Utica breached its duty of utmost good faith in

failing to provide prompt notice to FFIC, and it is a question of fact for the jury whether that evidence warrants judgment in FFIC's favor.

## II.   ARGUMENT

### A.   This Court is Bound by the Second Circuit's Interpretation of New York Law

The general rule in the federal courts is that "when a panel of th[e] [Circuit] Court has rendered a decision interpreting state law, that interpretation is binding on district courts in th[at] circuit, and on subsequent panels of th[at] Court, unless an intervening decision of the state's highest court has resolved the issue." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) (citations omitted); *Sumner v. Mortg. Elect. Registration Sys.*, Civil Action No. 11-11910-DJC, 2014 WL 250355, at *3 (D. Mass. Jan. 22, 2014). Thus, "[i]n the Second Circuit, a federal district court will 'conclusively defer to a federal court of appeals' interpretation of the law of a state that is within its circuit.'" *Adelphia Recovery Trust v. Bank of America,* 624 F. Supp. 2d 292, 309 (S.D.N.Y. 2009); s*ee Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 421 (2d Cir. 2001). Indeed, the Second Circuit has gone so far as to hold that a federal circuit court of appeals' interpretation of the law of a state within that circuit is binding not only on the federal district courts within that circuit but also on all other federal courts of appeals and federal district courts. *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir. 1981); *see Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 157 n.4 (2d Cir. 2003). Therefore, this Court is bound to follow decisions of the Second Circuit interpreting and applying New York law, whether those decisions are right or wrong, barring a contrary decision of New York's highest court, the New York Court of Appeals.

As Utica acknowledges,[1] the Second Circuit has interpreted New York law to bar the claim of an insurer for indemnification by a reinsurer if the insurer fails to give the reinsurer prompt notice of a claim in violation of the insurer's duty of utmost good faith. The Second Circuit adopted this interpretation in *Christiania Gen. Ins. Corp. v. Great American Ins. Co.*, 979 F.2d 268 (2d Cir. 1992) and repeated it in *Unigard Security Ins. Co. v. North River Ins. Co.*, 4 F.3d 1049, 1069-70 (2d Cir. 1993) ("*Unigard II*"). These decisions were followed and applied three months ago in *Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 Civ. 10607 (RKE), 2014 WL 1285507, at *21-22 (S.D.N.Y. March 31, 2014).

In *Christiania*, a reinsurer, Christiania, sought a declaratory judgment that it was not required to indemnify its reinsured, Great American, because Great American failed to give it prompt notice of claims, among other things. Christiania argued that Great American's late notice barred indemnification for two reasons: the late notice prejudiced Christiania and it violated Great American's duty of utmost good faith.

With regard to Christiania's argument about prejudice, the Second Circuit noted that, in *Unigard Security Ins. Co, v. North River Ins. Co.*, 79 N.Y. 2d 576, 582, 594 N.E.2d 571 (1992) ("*Unigard I*"), the New York Court of Appeals decided, in response to a question certified to it by the Second Circuit, that a reinsurer is relieved from its indemnification obligations if it shows it was prejudiced by the reinsured's failure to provide prompt notice. *Christiania*, 979 F.2d at 274. Accordingly, the Second Circuit reversed the district court's dismissal of Christiania's late notice claim because the district court had improperly determined the date notice should have been given and deprived Christiania of the opportunity to demonstrate it was prejudiced by the delay. *Id.* at 274-278.

---

[1] Pl. Utica Mut. Ins. Co.'s Memo. of Law in Support of Mot. for Partial Summary Judgment on FFIC's Bad Faith Notice Claim (Dkt. 243) ("Utica Memo") at 5-10.

With regard to Christiania's argument about bad faith, the Second Circuit agreed that "a reinsured's failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the reinsured acted in bad faith." *Christiania*, 979 F.2d at 281. However, after examining the record, the Second Circuit held that, "[n]othing before us suggests defendant's failure to provide notice sooner or its change in procedure was undertaken in bad faith or was purposely intended to deprive Christiania of earlier notice." *Id.*

Similarly, in *Unigard II*, a reinsurer, Unigard, argued that it should be relieved of its obligation to indemnify its ceding insurer, North River, because, among other reasons, North River acted in bad faith in failing to provide Unigard with prompt notice of a settlement agreement. The Second Circuit reiterated that bad faith late notice was a valid defense to an insurer's claim for indemnification against a reinsurer. *Unigard II*, 4 F.3d at 1066. It pointed out that, "because information concerning the underlying risk lies virtually in the exclusive possession of the ceding insurer, a very high level of good faith – whether or not designated as 'utmost' – is required to ensure prompt and full disclosure of material information without causing reinsurers to engage in duplicative monitoring." *Id.* at 1069. However, the Second Circuit again concluded that "[n]othing in the record" supported a finding that North River acted in bad faith. *Id.* at 1069-1070.

Finally and most recently, in *Granite State*, the Southern District of New York barred the claim of an insurer, Granite State, for indemnification by its reinsurer, Clearwater, on the ground that Granite State breached its duty of utmost good faith by failing to give Clearwater prompt notice of its settlement of claims. The parties disputed whether Illinois or New York law governed, and the court concluded that, under Illinois law, Granite State's claim was barred by the mere fact that it gave untimely notice. *Granite State*, 2014 WL 1285507, at *19-20. Then,

relying upon the Second Circuit's decisions in *Christiania* and *Unigard II*, the Southern District noted that, "[u]nder New York law, on the other hand, Clearwater must either show prejudice resulting from the untimely notice or that Granite State's failure to provide timely notice constituted a breach of its duty of utmost good faith to Clearwater." *Id*. at \*19, 20-21.

The Southern District concluded that Granite State's "entering into those settlements without any notice to Clearwater was a knowing disregard of millions of dollars in risk to Clearwater," and that "no reasonable jury could conclude that Granite State met its duty of utmost good faith." *Granite State*, 2014 WL 1285507, at \*22. Accordingly, the court held that "plaintiff breached its duty of utmost good faith to Clearwater as a matter of law," and that this breach, coupled with the untimely notice, "bars Granite State's claim for coverage under New York Law." *Id*.

Utica contends that this Court should not rely on the Second Circuit's interpretation of New York law in *Christiania* and *Unigard II* in light of the unpublished decision of the New York Supreme Court in *New Hampshire Ins. Co. v. Clearwater Ins. Co.*, Index No. 653547/2011, 2013 Slip Op. 32812(U) (N.Y. Sup. Ct. Oct. 31, 2013). According to Utica, the New York Supreme Court in *New Hampshire* held that *Christiania* and *Unigard II* misinterpreted New York law.[2] However, Utica's contention is without foundation.

First, the *New Hampshire* decision is a decision by a trial court, not the Appellate Division of the Supreme Court, much less New York's highest court, the New York Court of Appeals. Therefore, it does not overcome the general rule that "when a panel of th[e] [Circuit] Court has rendered a decision interpreting state law, that interpretation is binding on district

---

[2] Utica Memo at 3, 4, 10.

courts in th[at] circuit, and on subsequent panels of th[at] Court, unless an intervening decision of the state's highest court has resolved the issue." *Wankier*, 353 F.3d at 866.

Second, the trial court in *New Hampshire*, which rejected a reinsurer's claim that it should be relieved of the obligation to indemnify an insurer because the insurer failed to give prompt notice, did not hold that *Christiania* and *Unigard II* misinterpreted New York law. Instead, the trial court in *New Hampshire* observed that the Second Circuit had ruled that an insurer's claim for indemnification against a reinsurer is barred if the insurer acted in bad faith in failing to give prompt notice, but that no state court had been called upon to "implement( )" those rulings. *New Hampshire,* slip opinion at 8. Far from holding that the Second Circuit misinterpreted New York law, the trial court in *New Hampshire* proceeded to examine the record in light of the Second Circuit's rulings and held that, "[w]ere this Court to apply" those rulings, the reinsurer would not prevail because the reinsurer "failed to produce any evidence of New Hampshire's bad faith." *Id.* at 9.

In sum, this Court, like the Southern District in *Granite State*, is bound by the Second Circuit's interpretation and application of New York law in *Christiania* and *Unigard II*. Consequently, Utica's claim against FFIC for indemnification is barred if FFIC can show either that it was prejudiced by Utica's failure to provide it with prompt notice of Goulds' claims or its settlement with Goulds, or that Utica acted in bad faith in failing to provide prompt notice.

## B.    The Second Circuit Correctly Interpreted New York Law

Although this Court is required to follow the interpretation of New York law adopted by the Second Circuit in *Christiania* and *Unigard II*, right or wrong, Utica is mistaken in arguing that those decisions misinterpret New York law.[3] Utica's argument is based on the premise that,

---

[3] Utica Memo at 10-11.

in *Unigard I*, the New York Court of Appeals held that an insurer's claim for indemnification by a reinsurer is barred by late notice only if the reinsurer shows it was prejudiced by the late notice, and that the Court of Appeals "created no exception" for a showing that the insurer acted in bad faith in failing to give prompt notice.[4]   However, Utica has the applicable principles of reinsurance law exactly backwards.

Over a century ago, the Supreme Court recognized that, "in respect to the duty of disclosing all material facts, the case of reinsurance does not differ from that of an original insurance." *Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510 (1883). "The obligation in both cases is one *uberrimae fidei*." Indeed, "[t]he exaction of information in some instances may be greater in a case of reinsurance than as between the parties to an original insurance.  In the former, the party seeking to shift the risk he has taken is bound to communicate his knowledge of the character of the original insured, where such information would be likely to influence the judgment of an underwriter; while in the latter, the party ... is 'not bound, nor could it be expected that he should speak evil of himself.'" *Id.* (citation omitted.)

For this reason, the New York Court of Appeals has remarked that, "[t]he phrase *uberrimae fidei* and its translation, 'of the utmost good faith,' has long been used to characterize the core duty accompanying reinsurance contracts." *In re Liquidation of Union Indem. Ins. Co.*, 89 N.Y.2d 94, 106, 674 N.E.2d 313, 319 (1996). "Encompassed within this duty is a basic obligation of a reinsured to disclose to potential reinsurers all 'material facts' regarding the original risk of loss, and failure to do so renders a reinsurance agreement voidable or rescindable." *Id.*

---

[4] *Id.* at 5.

In other words, the duty of utmost good faith that an insurer owes to a reinsurer is an overarching duty that permeates the entire reinsurance relationship, unless a state by legislative enactment or decision of its highest court overrides this duty in a particular context. Thus, the duty of utmost good faith applies automatically to an insurer's contractual obligation to provide prompt notice of claims and settlements to a reinsurer. The New York Court of Appeals in *Unigard I* did not have to "create( )" an "exception" to its holding to convey that an insurer's claim for indemnification may be barred if the insurer acted in bad faith in failing to give prompt notice of a claim or settlement to a reinsurer, as Utica argues. That is a given. To the contrary, the New York Court of Appeals would have had to "create" an "exception" to hold that the insurer's bad faith was irrelevant.

The Second Circuit understood this very well. In *Unigard II*, it linked the duty of utmost good faith in providing prompt notice to the duty of good faith implied in all contracts. It said: "The good faith and fair dealing implied in all contracts also require[s] notice. In reinsurance, we have characterized this duty in dicta as one of 'utmost good faith.'" *Unigard II*, 4 F.3d at 1066. "[T]he reinsurance market depends upon a high level of good faith to ensure prompt and full disclosure. Absent such disclosure, reinsurers would have to duplicate actuarial and claims-handling efforts of ceding insurers, and reinsurance would become unavailable." *Id.* Consequently, "Courts should thus adopt information-forcing default rules based on the good faith the reinsurance market demands." *Id.*

Therefore, this Court should follow *Christiania* and *Unigard II* not only because it is required to do so but also because those decisions correctly interpret New York law. Under those decisions, Utica's claim for indemnification against FFIC is barred if FFIC can show either

that it was prejudiced by Utica's late notice or that Utica failed to give it prompt notice in violation of Utica's duty of utmost good faith.

### C.    Whether Utica's Late Notice was in Bad Faith is a Question for the Jury

The Second Circuit held in *Unigard II* that "the proper minimum standard for bad faith should be gross negligence or recklessness." *Unigard II*, 4 F.3d at 1069. Thus, "[i]f a ceding insurer deliberately deceives a reinsurer, that deception is of course bad faith." *Id.* Similarly, "if a ceding insurer does not implement such [routine practices and controls to ensure notification to reinsurers], then it has willfully disregarded the risk to reinsurers and is guilty of gross negligence." *Id.* Whether this legal standard has been met in a particular case necessarily is a factual issue to be determined by the finder of fact. In the present case, there are genuine issues of material fact as to whether Utica was grossly negligent and reckless in failing to give FFIC prompt notice of the Goulds' $35 million claim and Utica's 2007 settlement with Goulds, and those issues can be resolved only by a jury.

Utica maintains that, as a matter of law, FFIC cannot show that Utica acted in bad faith in failing to provide prompt notice.[5] Utica says "FFIC cannot establish that Utica lacked routine practices to ensure notification to reinsurers during the relevant time period because Utica in fact had such practices."[6] Alternatively, Utica says that, "even if Utica did not have those routine practices, FFIC cannot show that the lack of such practices caused Utica to provide late notice to FFIC."[7] However, FFIC disputes both these factual assertions. Utica did not even have a procedure to <u>find</u> its facultative reinsurance, never mind to <u>notify</u> these reinsurers of their

---

[5] Utica Memo at 12.

[6] *Id.*

[7] *Id.*

potential liability. It was exactly this reckless disregard for Utica's notice obligations that led to the severely late notice to FFIC.

First, the record supports a finding that Utica was grossly negligent, and therefore acted in bad faith, because Utica did not indeed implement "routine practices and controls to ensure notification to reinsurers" (*Unigard II*, 4 F.3d at 1069) such as FFIC. Bernard Turi, Utica's general counsel, did testify, as Utica contends, that there was an unwritten understanding at Utica that it would notify reinsurers in accordance with the notification procedure specified in the relevant certificate of reinsurance.[8] But Turi, who was designated by Utica to testify on its behalf under Fed. R. Civ. P. 30(b)(6), conceded that Utica had no written guidelines that applied to the notification of facultative reinsurers such as FFIC, and other Utica employees gave the same testimony.[9] Furthermore, Utica's unwritten understanding of following the notification procedure in the relevant certificate of reinsurance was palpably insufficient because Utica had no written policies, procedures, or guidelines to ensure that its personnel could identify all of Utica's facultative insurers or locate all of its facultative reinsurance certificates.[10] A general practice of following the notice requirements in each certificate of reinsurance is meaningless if nobody knows where those certificates can be found.[11]

Similarly, although Kristen Martin, a Utica employee, did testify, as Utica says, that Utica would provide notice to reinsurers "as soon as we could,"[12] the record refutes her

---

[8] *Id.* at 13.

[9] Defendant FFIC's Response to Utica's Statement of Material Facts in Support of Motion for Partial Summary Judgment on FFIC's Bad Faith Notice Claim ("FFIC Statement"), Response No. 3 at p. 3; Response No. 4, p. 4

[10] FFIC Statement, Response No. 3, p. 3, and Response No. 4, pp. 4-5.

[11] *Id.*, Response No. 4, pp. 4-5.

[12] Utica Memo at 13.

testimony.   The record shows that Utica could have put in place a procedure, policy, or guidelines that would have helped its personnel to identify reinsurers and find their reinsurance certificates containing the notice procedures, but that Utica failed to do so.[13]  The result of that failure, in FFIC's case, was that Utica provided notice of Goulds' claims between 8 and 12 years late. Utica's gross negligence in providing such late notice to FFIC is not cured by Ms. Martin's testimony that a Utica employee's failure to follow the notice procedure in a relevant certificate of reinsurance "could" affect his or her employment at Utica.[14]

Even if this were true, it is all lip service in this case.  The fact of the matter is that Utica had no procedures by which to supervise its employees' reporting duties. Nor did Utica seem to care much about when notice was first given to its reinsurers.  Utica's General Counsel, Bernard Turi, was the Rule 30(b)(6) corporate representative charged with the responsibility of providing a simple answer to a simple question: when did Utica first give notice to its reinsurers?  He did not know.[15]  All he could say was that the first notice was "probably" sent "in the '90s".[16]

Second, the record establishes that the absence at Utica of written practices, policies, and guidelines to identify reinsurers, locate their reinsurance certificates, and provide them with prompt notice, was exacerbated by the absence at Utica of any system to keep track of when or whether Utica provided notice to reinsurers. This is evident from the utter disarray of Utica's files.[17]   In addition, the only document retention "policy" followed by Utica dictated the

[13] FFIC Statement, Response No. 6, pp. 6-7.

[14] Utica Memo at 5.

[15] FFIC Statement, Additional Material Fact in Dispute No. 6, pp. 13-14.

[16] *Id.*

[17] FFIC Statement, Response No. 4, p. 5 and Additional Material Fact in Dispute No. 7, p. 14.  In response to FFIC's document requests, Utica failed to produce the initial notices it sent to its facultative reinsurers. FFIC moved to compel these notices. Dkt. 141. Magistrate Judge Dancks

destruction (rather than the retention or tracking) of reinsurance documents after the passage of only 11 years.[18]  Indeed, Utica itself recognized the recklessness of this "policy" and eventually amended it.[19]

      Third, although Utica cites the testimony of several Utica employees to the effect that Utica had programs to provide notice to some reinsurers when certain thresholds were met,[20] the record shows that these programs applied to treaty reinsurers, not facultative reinsurers such as FFIC.[21]  Utica's contention that it "memorialized" its "practices" regarding the importance of notice to reinsurers in memoranda and an e-mail to Utica employees is specious.  Utica's Turi testified that none of the documentation Utica furnished to FFIC to support this contention, including the e-mail to which Utica refers, applied to the notification of Utica's facultative reinsurers, such as FFIC.[22]

      Similarly, an e-mail sent by Turi in May 2003, ████████████████████████████

████████████████████████████████████████████████████████████████████

---

ordered their production.  Dkt. 156.  The notices Utica produced as ordered, however, did not appear to be the initial notices, as they referred to prior reports from Utica on the Goulds claims. Utica insisted they were the initial notices, explaining that the references to the earlier notice were mistakes.  Utica disclosed then that it had discovered letters from several of these reinsurers which, after receiving these notices, wrote back to Utica maintaining that they had not received any earlier notice.  *See* FFIC Ex. 41 (FFIC's exhibits are attached to the Declaration of Mary A. Lopatto dated July 3, 2014 submitted in support of FFIC's opposition to Utica's motion for partial summary judgment on FFIC's bad faith notice claim).  Such confusion demonstrates Utica's reckless management of its notice obligations.

[18] FFIC Statement, Response No. 4, p. 5.

[19] *Id.*

[20] Utica Memo at 14.

[21] FFIC Statement, Response No. 7, p. 7; Response No. 8, p. 8.

[22] *Id.,* Response No. 10, p. 10.

███████████████████████████████████,"[23] does not constitute a practice, guideline, or procedure that ensured that Utica's facultative reinsurers, such as FFIC, received prompt notice of other, larger claims. There is also no evidence that this e-mail governed notices to reinsurers of Utica's asbestos claims, such as FFIC. In any event, Turi testified that none of the documentation produced by Utica in this action, including his May 2003 e-mail, applied to Utica's notification of facultative reinsurers, including FFIC.[24]

Utica also cites a chart listing "Reinsurance Reporting Requirements" which was circulated internally.[25]  However, FFIC disputes that this chart included the requirements for reporting the Goulds asbestos claim to Utica's facultative reinsurers for its umbrella policies, including FFIC.[26] ████████████████████████████████████

████████████████████████████████████ which, as a Utica witness explained, refers only to claims reported after 1996 under the General Cologne Reinsurance Treaty.[27] Utica's reference to other memoranda that "memorialize" its "practices" for notifying reinsurers is similarly inconsequential.[28]  These memoranda all appear to apply to treaty reinsurers, not facultative reinsurers such as FFIC.[29]

---

[23] Utica Memo at 14.

[24] FFIC Statement, Response No. 11, p. 10.

[25] Utica Memo at 14-15.

[26] FFIC Statement, Response No. 12, p. 11.

[27] *Id.*, p.11.

[28] Utica Memo at 15.

[29] FFIC Statement, Response No. 13, pp. 11-12.

- 13 -

Fourth, Utica's argument that FFIC cannot establish bad faith, because it cannot show that Utica's lack of practices caused it to provide late notice to FFIC, is groundless.[30]  Contrary to Utica's assertion, its delay in notifying FFIC was not the result of "Utica's diligent searches for reinsurance not uncovering the FFIC reinsurance certificates given that the certificates were issued many years before."[31]  Rather, it was the result of Utica's utter lack of policies, practices, and guidelines to identify its reinsurers and locate their certificates of reinsurance.  Indeed, Utica was never able to find any of FFIC's certificates of reinsurance in its own files, but instead received them from another reinsurer.[32]

Utica's bad faith is also evidenced by the contemptuous attitude of its key personnel toward its failure to provide prompt notice to FFIC.  When Dan O'Connell, the Utica employee involved in determining when notices should be sent to reinsurers, was asked at his deposition: "Did you at any time have any discussions with anybody about the fact that Fireman's Fund – the late notice of the claim [to] Fireman's Fund might put them in a bad position with Fireman's Fund's own reinsurers," his response was: "No."[33]  When he was then asked: "Did that thought cross your mind at any point?" his response was: "I didn't give a damn."[34]  It is precisely this "didn't give a damn" attitude by Utica that FFIC submits will persuade a jury that Utica acted in bad faith in failing to give prompt notice to FFIC of Goulds' $35 million claim and Utica's 2007 settlement with Goulds.

---

[30] Utica Memo at 15.

[31] *Id.*

[32] FFIC Statement, Response No. 2, p. 2.

[33] FFIC Ex. 38 (Deposition Transcript of Daniel O'Connell dated Sept. 12, 2013, at 125).

[34] *Id.*

III.    CONCLUSION

For the foregoing reasons, the Court should deny Utica's motion for partial summary

judgment on FFIC's bad faith late notice claim.

Dated: Washington, DC
       July 7, 2014

Respectfully submitted,

By:    Mary A. Lopatto

Mary A. Lopatto, Esq. (602909)
John B. Williams, Esq. (106118)
Nancy E. Monarch, Esq. (602910)
Fara N. Kitton, Esq. (518803)
WILLIAMS LOPATTO PLLC
1776 K Street, NW, Suite 800
Washington, DC  20006
Tel.: (202) 296-1665
malopatto@williamslopatto.com
jbwilliams@williamslopatto.com
nmonarch@williamslopatto.com
fnkitton@williamslopatto.com

Attorneys for Defendant Fireman's Fund
Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2014, a true and correct copy of Defendant Fireman's Fund Insurance Company's Memorandum of Law in Opposition to Utica Mutual Insurance Company's Motion for Partial Summary Judgment on FFIC's Bad Faith Notice Claim, and Declaration of Mary A. Lopatto in Support of FFIC's Opposition to Utica's Motion for Partial Summary Judgment on FFIC's Bad Faith Notice Claim was filed electronically with the Clerk of Court for the United States District Court for the Northern District of New York using the CM/ECF system, which sent notification of such filing to Plaintiff's counsel of record:

> Syed S. Ahmad, Esq. (sahmad@hunton.com)
> Walter J. Andrews, Esq. (wandrews@hunton.com)
> Patrick McDermott, Esq. (pmcdermott@hunton.com)
> Hunton & Williams LLP
> 1751 Pinnacle Drive, Suite 1700
> McLean, Virginia 22102

Mary A. Lopatto

- 16 -