UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UTICA MUTUAL INSURANCE COMPANY,

                                        Plaintiff,

        -v-                                          6:09-CV-853


FIREMAN'S FUND INSURANCE COMPANY,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

HUNTON & WILLIAMS LLP                      SYED S. AHMAD, ESQ.
Attorneys for Plaintiff                    WALTER J. ANDREWS, ESQ.
1751 Pinnacle Drive                        PATRICK M. MCDERMOTT, ESQ.
Suite 1700
McLean, VA 22102

WILLIAMS LOPATTO PLLC                      JOHN B. WILLIAMS, ESQ.
Attorneys for Defendant                    MARY A. LOPATTO, ESQ.
1776 K Street NW
Suite 800
Washington, DC 20006

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiff Utica Mutual Insurance Company ("Utica" or "plaintiff") filed this action on

July 29, 2009 against defendant Fireman's Fund Insurance Company ("FFIC" or

"defendant") to enforce the terms of a reinsurance contract.  In the reinsurance contract,

FFIC agreed to reinsure Utica for a portion of an umbrella insurance policy Utica had issued to Goulds Pumps Inc. ("Goulds").

Plaintiff alleges:  (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) seeks a declaration regarding FFIC's obligation to pay Utica.  Defendant answered and asserted twelve affirmative defenses and two counterclaims.  Plaintiff answered defendant's counterclaims.

Following limited discovery, Utica moved for partial summary judgment disposing of two of FFIC's affirmative defenses.[1]  FFIC opposed and Utica replied, respectively. Oral argument was heard on Friday, July 25, 2014, in Utica, New York.  Decision was reserved.

## II.  BACKGROUND

Utica is a New York corporation in the insurance business.  FFIC is a California corporation in the insurance and reinsurance business.[2]

Many years prior to the instant litigation, nonparty Goulds, a New York corporation, manufactured products containing asbestos.  From 1966 through 1972, Goulds purchased primary and umbrella insurance policy coverage from Utica.[3]

---

[1]  Utica made two separate motions.

[2]  This case involves reinsurance, a transaction in which one insurance company transfers or "cedes" to another insurer (the "reinsurer") all or a portion of the risk it has assumed under the policies it issued. Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 4 F.3d 1049, 1053 (2d Cir. 1993).  Reinsurance is simply the insurance of insurance.  The purpose "is to diversify the risk of loss."  Id.  The insurance company that issues a policy to a policyholder—here, Utica—is called the insurer, the ceding insurer, or the reinsured.  See generally id.  The insurance company that insures the ceding insurer for a share of its liability under a policy—here, FFIC—is called the reinsurer.  Id.

[3]  Goulds allegedly purchased all of its primary coverage from Utica from 1933 until 1986, and all umbrella coverage starting in 1964, but only the above time periods are at issue in this case.

## A. Primary Insurance Policies

Goulds acquired general liability insurance from Utica through primary insurance policies that commenced in 1966 and provided coverage through 1972.

Many of the primary policies have never been located.  It is undisputed that an issue arose early as to whether the primary policies had aggregate limits that would cap the overall amount of indemnity available under the policies to pay for bodily injury claims, and thus tap into coverage provided by the umbrella policies.[4]  Utica contended that all of the primary policies had aggregate limits (of $100,000/$300,000), while Goulds and FFIC insisted they had no aggregate limits.[5]

## B. Umbrella Insurance Policies

Goulds also acquired umbrella insurance coverage from Utica for the same policy period as the primary policies, from 1966 until 1972.  The umbrella policies provided coverage in the amount of $10 million.

## C. Reinsurance Policies

Utica obtained reinsurance of the $10 million umbrella policies it issued to Goulds. Utica retained 5% of the first $1 million of the umbrella coverage; $5 million was reinsured with defendant FFIC; and the remainder reinsured with General Reinsurance Corporation ("Gen Re").  Regarding the $5 million FFIC reinsured, it issued seven certificates of

---

[4] An aggregate limit represents the maximum dollar amount the insurer would have to pay under the policy, despite the number of occurrences of injury or the number of persons injured during the policy term.

[5] Policies for the years 1977–1983 were located and Goulds relied on these to demonstrate that Utica's assertions about aggregate limits were mistaken.

reinsurance to Utica, one for each year of reinsurance coverage from 1966 until 1972.[6] Under the facultative reinsurance certificate, FFIC's liability followed that of Utica's, and "[p]rompt notice shall by given to the Reinsurer . . . of any occurrence or accident which appears likely to involve this reinsurance."  LoPatto Decl., July 3, 2014, Ex. 14, ECF No. 261.

### D. Goulds Asbestos Claims

Pursuant to the primary policies, Utica defended and indemnified Goulds with respect to claims made against Goulds alleging asbestos-related injuries from exposure to Goulds products.  The first asbestos suits naming Goulds as a defendant were in 1997, and declaratory judgment actions between Goulds and its insurers, including Utica, followed in 2003 to determine the rights of the insurers.

Goulds and Utica engaged in mediation relating to the asbestos coverage. According to FFIC, Utica made it non-negotiable that Goulds agree that all Utica primary policies had aggregate limits of coverage—even those policies which were not at issue in the coverage litigation.  According to FFIC, in exchange for a settlement of $325 million from Utica, Goulds agreed to stipulate that all of the Utica primary policies had aggregate limits of $300,000 and that all such limits had been exhausted.  The Settlement Agreement, signed in February 2007 between Utica and Goulds, also provided that the $325 million settlement would come from the umbrella policies (therefore triggering Utica's reinsurance policies).

---

[6]  There are two kinds of reinsurance:  facultative and treaty.  Facultative reinsurance is a policy whereby "a[n] . . . insurer purchases reinsurance for a part, or all, of a single insurance policy."  Unigard Sec. Ins. Co., Inc., 4 F.3d at 1054.  In contrast, treaty reinsurance covers a group of policies issued by an insurer, such as general liability policies.  FFIC's reinsurance was facultative, as it covered the Utica policies issued to Goulds exclusively.

### E.  1996 to 2008 FFIC Executes Commutation Agreements with Retrocessionaires

FFIC itself ceded some of the risk it had underwritten in the Utica and other policies, to its own reinsurers, known as retrocessionaires.  From 1996 until 2008,[7] FFIC entered into thirteen commutation agreements with retrocessionaires.[8]  FFIC negotiated the commutations based on its known and existing future liabilities, engaging in a detailed and careful process to determine whether and how to commute.  As FFIC did not have notice of Utica's claim until 2008, it entered into the thirteen commutations between 1996 and 2008 without knowing about Utica's $35 million claim.  In other words, the $35 million was not reflected as a future liability by FFIC and was not taken into account when FFIC negotiated with its retrocessionaires.

FFIC argues that the thirteen commutations which took place between 1996 and 2008 either would have taken into account the $35 million claim and therefore provided a greater commutation value or, if signification consideration for the claim was not paid, FFIC would not have commuted.  Specifically, FFIC contends that according to contracts with its retrocessionaires, the retrocessionaires would have been responsible for indemnifying FFIC for $19,923,614 of FFIC's $35 million indemnification of Utica.  Further, FFIC cannot go back to its retrocessionaires now for recoveries.  Finally, notice from Utica

---

[7]  FFIC contends it should have been notified of Utica's claim in 1996, when Utica notified Gen Re, but it was not notified until 2008.  Gen Re reinsured Utica's umbrella policies on the layer below FFIC's reinsurance for the same years (1966–1972).  Documents subpoenaed from Gen Re indicate that Gen Re was notified in 1996.  LoPatto Decl., July 3, 2014, Ex. 29, ECF No. 261.

[8]  A reinsurance "commutation" is an arrangement whereby the reinsurer (or retrocessionaire) is relieved of all its present and future obligations under its contract to provide reinsurance to its reinsured, in exchange for paying a lump sum to its reinsured.  Graydon S. Staring, Law of Reinsurance § 2:10, "Collected definitions" (April 2014).

would have triggered FFIC's right to associate with Utica in the defense and control of the Goulds claims, and FFIC would have had the right to be provided with all of Utica's records relating to the Goulds claims.

**F.  2008 Notice to FFIC**

In July 2008, Utica notified FFIC of the existence of a reinsurance certificate that it claimed reinsured one of the umbrella policies that Utica had issued to Goulds.  The certificate was not in Utica's files, but Utica informed FFIC that it had just come into possession of the reinsurance certificate for the July 1, 1971 to July 1, 1972 period.  Utica also noted that it would be receiving additional certificates covering the years 1966–1972. In August 2008, Utica was provided copies of the remaining certificates for that time period (other than the certificate for the July 1, 1972 to July 1, 1973 period), which Utica forwarded to FFIC.[9]  FFIC later discovered the seventh certificate for the missing year in question, and provided it to Utica.

FFIC asserts that Utica provided no rationale for reporting its reinsurance claim more than a year after its February 2007 settlement with Goulds.  According to the certificates of reinsurance, "[p]rompt notice shall by given to the Reinsurer . . . of any occurrence or accident which appears likely to involve this reinsurance."  LoPatto Decl., July 3, 2014, Ex. 14, ECF No. 261.  Notice from Utica would have triggered FFIC's right to associate with Utica in the defense and control of the Goulds claim and its right to Utica's records relating to the Goulds claim.  FFIC contends it did not have the

---

[9]  Utica did not explain from whom it received these certificates.

opportunity to exercise either right before receiving its first bill from Utica in September 2008, requesting an initial payment of $5 million.

Utica submitted later bills in August, September, October, and November 2009, totaling $35 million, which represents the full limits of the seven FFIC reinsurance certificates.  Under the certificates, payment was not due to Utica until Utica provided FFIC with proof of loss.  This required Utica to furnish FFIC with all relevant material so FFIC could determine whether payment under the certificates was proper.  Following Utica's requests for payment, FFIC initiated a claim investigation.  FFIC sought numerous pieces of information from Utica, inspected its files, and a team made a trip to Utica's office.

FFIC had serious doubts as to whether Goulds primary policies with Utica had aggregate limits and thus whether those limits were ever reached and exhausted.  Utica insisted they were, thus triggering Goulds' umbrella policy with Utica, and eventually Utica's reinsurance claim with FFIC.  It was FFIC's position at the time that Utica had not yet provided FFIC proof of loss sufficient to provide payment under the certificates.  While the claim investigation was ongoing, Utica filed this suit contending that FFIC was taking too long to pay.

### G.  2009 The Instant Action

Utica alleges FFIC breached its contracts when it failed to pay under the certificates (Count I); breached the duty of good faith and fair dealing when it refused to honor its obligations, ignored information from Utica in the claim investigation, requested additional improper information, and ignored Utica's inquiries (Count II); and seeks a

declaration that FFIC is obligated to pay Utica for bills after August 31, 2009, regarding additional claims paid by Utica pursuant to the underlying policies (Count III).

## III.  DISCUSSION

This case involves a dispute over money which Utica claims FFIC owes it under its reinsurance contracts.  FFIC argues it does not owe Utica any money because Utica breached provisions in the reinsurance contracts.  Utica now moves for partial summary judgment on two of FFIC's affirmative defenses.

### A.  Motion for Summary Judgment–Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Id. at 250 n.4.  The failure to meet this burden warrants denial of the motion.  See id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "a review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. FFIC's Late Notice Defense

Utica moves for partial summary judgment disposing of FFIC's late notice defense. FFIC's late notice defense asserts that Utica's claims are barred by the late notice Utica provided because FFIC suffered harm when it entered into commutations of certain of its reinsurance without notice of the Goulds claims against Utica and Utica's claim for indemnification against FFIC.

In moving to dismiss FFIC's affirmative's defense, Utica first argues that FFIC's commutations with third parties are collateral matters that do not constitute prejudice.  It contends that FFIC's decision to purchase its own reinsurance to cover the certificates and its later decision to commute that reinsurance should not impact FFIC's obligations to Utica under the certificates.  In the alternative, Utica argues that if the commutations are sufficient to establish prejudice, they provide only a partial defense and allow FFIC to avoid merely the portion of damages caused by Utica's late notice.

FFIC responds in opposition that lost reinsurance recoveries are sufficient to establish prejudice and a late notice defense results in a reinsurer's complete relief from its duty to indemnify.  It contends that its procedures and practices with respect to its commutation

negotiations establish that it would have received value for Utica's claim had timely notice to FFIC been provided.  Therefore, because of Utica's late notice, FFIC owes nothing to Utica.

### 1. Commutations as Prejudice

A reinsurer advancing a late notice defense must demonstrate that the ceding insurer's late notice prejudiced the reinsurer.  Unigard Sec. Ins. Co. Inc. v. North River Ins. Co., 79 N.Y.2d 576, 581 (1992) (answering certified question of "Must a reinsurer prove prejudice before it can successfully invoke the defense of late notice of loss by the reinsured?" in the affirmative).[10]  Thus, FFIC must establish it was prejudiced by Utica's late notice.  Prejudice must be in the form of tangible economic injury resulting from the late notice, and the burden of proving such prejudice is on the reinsurer.  See Unigard II, 4 F.3d at 1069 (explaining that reinsurer bears the burden of showing that it suffered tangible economic injury because of late notice); Christiania Gen Ins. v. Great Am. Ins., 979 F.2d 268, 274 (2d Cir. 1992) ("[Reinsurer] must show prejudice resulted from the delay.").

The inability to commute an unreported claim may establish prejudice if there is evidence to support the claimed prejudice.  See, e.g., Ins. Co. of Pa. v. Argonaut Ins. Co., No. 12 Civ. 6494, 2013 WL 4005109, at *11–12 (S.D.N.Y. Aug. 6, 2013) (finding prejudice could not be determined as a matter of law based on the record because there were genuine issues of material fact as to whether if reinsurer had received timely notice from insured, it

---

[10]  The New York Court of Appeals decided Unigard Security Insurance Co., Inc. v. North River Insurance Co., 79 N.Y.2d 576 (1992) ("Unigard I"), in response to a question certified by the Second Circuit. See Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 949 F.2d 630 (2d Cir. 1991), certifying question; 79 N.Y.2d 838 (1992), accepting certified question; 79 N.Y.2d 576 (1992), answering certified question; 4 F.3d 1049 (2d Cir. 1993) ("Unigard II"), conforming to answer to certified question.

would have charged higher prices from its retrocessionaires for commutation agreements)[11];
Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., No. Civ. 3:00CV1247, 2002 WL 32500922, at
*7 (D. Conn. Sept. 4, 2002) (finding genuine issues of material fact as to whether the ceding
insurer's inability to provide timely reporting prejudiced its reinsurer by rendering the reinsurer
unable to manage its loss reserves and "the more than $3 million claimed as uncollectible
because of the inability to provide loss documentation to [the reinsurer's]
retrocessionaires")[12]; see also Munich Reins. Am., Inc. v. Am. Nat'l Ins. Co., No. 09-6435,
936 F. Supp. 2d 475, 488–89 (D.N.J. 2013) (finding no prejudice because the reinsurer failed
to demonstrate tangible economic loss; reinsurer did not present credible evidence that its
decision to commute would have been affected by knowledge of its ceding insurer's untimely
claims), aff'd, --- F. App'x ----, 2015 WL 428727 (3d Cir. Feb. 3, 2015).

Utica relies on Insurance Co. of Pennsylvania v. Associated International Insurance
Co., 922 F.2d 516 (9th Cir. 1990) to establish that lost reinsurance recoveries are collateral
matters which cannot constitute prejudice.  In Associated International, the Court found that
the ceding insurer should have provided notice to its reinsurer around 1979 but did not
provide it until 1987.  922 F.2d at 519–20.  In the meantime, the reinsurer's own reinsurer
went bankrupt in 1985.  Id. at 525.  The reinsurer contended it suffered prejudice because,
among other reasons, it was unable to assert a claim for its own reinsurance due to the
ceding insurer's late notice.  Id. at 524–25.  The Ninth Circuit Court of Appeals found that

---

[11]  The Argonaut Court applied California law following a choice of law analysis, but noted that the application of New York law would not alter the outcome.

[12]  The Trustmark Court applied Connecticut law which puts the burden "on the reinsured failing to provide timely notice to establish that the reinsurer was not prejudiced by the late notice."  By contrast, New York law places the burden on the reinsurer to show it was prejudiced by the late notice.  However, this distinction is immaterial to the holding for which the case is cited here.

"the district court improperly presumed prejudice," and concluded that the reinsurer "has cited no case, and we have found none, to support the proposition that such collateral matters may constitute prejudice so as to relieve an insurer from its liability under an insurance contract." Id. at 525.

Associated International however, did not establish a per se rule that prejudice cannot exist where a ceding insurer's late notice caused a reinsurer to enter into disadvantageous commutation agreements with retrocessionaires. Instead, as the Southern District of New York recently pointed out, Associated International "did no more than find a failure to show prejudice in the circumstances of that case." Argonaut Ins. Co., 2013 WL 4005109, at *12 n.13 (emphasis added). Caselaw demonstrates that a reinsurer may be prejudiced by its ceding insurer's late notice which caused it to make disadvantageous commutations. However, the reinsurer must demonstrate on the record that it suffered tangible economic loss.

Here, FFIC entered into thirteen commutation agreements between 1996 and 2008 after carefully identifying reinsurer candidates and estimating the types of losses to be included in the total paid by FFIC's reinsurer, or retrocessionaire.[13] FFIC has submitted sufficient evidence to defeat summary judgment by putting forth evidence to show that it suffered prejudice when it entered into commutation agreements without knowledge of Utica's $35 million claim, and Utica has not disputed this evidence. FFIC has presented

---

[13] FFIC submitted voluminous exhibits establishing its procedures for determining whether and how to commute. Among those exhibits are FFIC's Commutation Policy Draft, FFIC's Commutation Procedures, and testimony from FFIC employees involved in the commutation process such as actuaries and claims directors. As these exhibits and the accompanying arguments in FFIC's memorandum of law were filed under seal pursuant to the July 25, 2011, Stipulated Protective Order Regarding Confidential Items and Information, that information will not be repeated in this Memorandum-Decision and Order. The parties are both privy to the evidence relied upon here.

evidence that if it had received timely notice from Utica, it would have charged higher prices from its retrocessionaires for commutation agreements, or would have not entered into certain agreements.  An FFIC employee specifically testified that if FFIC had notice of the Utica claim and had the opportunity to inquire as to the status of the asbestos claims against Goulds that were being paid by Utica, the number of claims, and the average settlement amounts, among other things, FFIC would have acted accordingly, including adding those claims to any commutation discussions.  This employee also testified that he believed that had there been notice of the claim, FFIC's retrocessionaires would have paid the additional amounts that would have been included in the commutation totals.  Utica has not disputed this testimony.

       In Argonaut, following limited discovery on the reinsurer's (Argonaut's) affirmative defense of late notice, the parties cross-moved for summary judgment on the defense. Argonaut Ins. Co., 2013 WL 4005109, at *1.  The Court found that disputed facts existed with respect to whether the reinsurer was prejudiced because the ceding insurer disputed the reinsurer's contention that it would have charged a higher price for its commutations had it received timely notice from the ceding insurer.  Id. at *12.  The Court held that the dispute created an issue of fact to be decided at trial, noting that a component of the formula used to set an appropriate price for the commutation agreements was an estimate, and thus "it is not clear from the record that the commutation formula would be unaffected by Argonaut's receipt of notice that its reinsured had actually become involved in the [litigation]."  Id.  The Court denied summary judgment to both parties on the issue of prejudice and scheduled a trial "to determine whether Argonaut can demonstrate that it suffered actual and substantial prejudice from the breach," id. at *1, noting that "[u]nder the circumstances, a reasonable

trier of fact could conclude that Argonaut was substantially prejudiced by [its ceding insurer's] provision of late notice." Id. at *12.

At trial, Utica can dispute FFIC's calculations, evidence of commutation procedures, and other testimony regarding what commutations it would have entered into had it known of Utica's claim.  Utica may prove that in fact, FFIC did not suffer prejudice due to its late notice.  However, lost commutations can constitute prejudice and FFIC has put forth enough evidence to defeat summary judgment on this issue.

### 2. Bar to Duty to Indemnify

It is well settled under New York law that reinsurance contracts are interpreted in accord with general contract principles. See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A., 342 F.3d 78, 81–82 (2d Cir. 2003).  Accordingly, breach of a reinsurance agreement is governed by the general law of contracts.  "[D]amages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong." New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 315 (1995).  However, failure to comply with a condition precedent, such as the notice provision for a primary insurer, negates the contract.  See Argo Corp. v Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 339 (2005) (citing Sec. Mut. Ins. Co. of N.Y. v. Acker–Fitzsimons Corp., 31 N.Y.2d 436, 440–443 (1972) (failure to notify in a timely manner allowed insurer to disclaim coverage));

In Argo Corp., in explaining the relief from the duty to indemnify by means of failure to satisfy a condition precedent, the New York Court of Appeals distinguished the no prejudice rule in primary insurance, supplementary underinsured motorist insurance, and excess insurance, from reinsurance.  4 N.Y.3d at 339.  The Court explained that the "failure to comply with a condition precedent which, as a matter of law, vitiates the contract" rule in

Security Mutual, 31 N.Y.2d at 440–443, "does not apply to reinsurance and a reinsurer must show prejudice before it can be relieved of its obligations to perform under a contract." Argo Corp., 4 N.Y.3d at 339 (citing Unigard I, 79 N.Y.2d at 582–584); see also Unigard I, 79 N.Y.2d at 581 ("[The] 'no prejudice' rule for primary insurers . . . is a limited exception to two established rules of contract law:  (1) that ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice; and (2) that a contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.") (internal citations omitted).

Consistent with established rules of contract law, one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice.  Therefore, a reinsurer who establishes resulting prejudice from a ceding insurer's late notice would be entitled to complete relief from its duty to indemnify.  See Unigard I, 79 N.Y.2d at 584 ("This is not to suggest that a reinsurer may never assert late notice as a ground for avoiding its obligations under a reinsurance contract.  All we hold here is that the reinsurer must demonstrate how it was prejudicial and may not rely on the presumption of prejudice that applies in the late notice disputes between primary insurers and their insures.") (emphasis added); see also Argonaut Ins. Co., 2013 WL 4005109, at *10 (quoting Unigard I, 79 N.Y.2d at 584) ("[T]he reinsured's breach of a reinsurance agreement's notice provision 'will excuse performance only if it is material or demonstrably prejudicial.'").  These cases do not foreclose a reinsurer's ability to escape its obligation to perform under its contract with a ceding insurer.  A reinsurer is not merely entitled to the damages caused by the ceding

insurer's late notice, as Utica contends.  If prejudice is shown, a reinsurer may be completely relieved from its duty to indemnify.

Accordingly, if FFIC can establish at trial that it was prejudiced in the form of lost commutations, it would be entitled to complete relief from its duty to indemnify Utica. Summary judgment in Utica's favor on FFIC's late notice defense will therefore be denied.

### C. FFIC's Bad Faith Defense

Utica moves for partial summary judgment disposing of FFIC's bad faith defense. FFIC's bad faith defense alleges that Utica's claims are barred by its breach of the duty of utmost good faith owed to FFIC by failing to act in a reasonable and businesslike manner in settling the Goulds asbestos claims and by materially altering the terms of coverage under Utica's policies.  FFIC contends that in an effort to shift to it a significant portion of the $325 million settlement between Utica and Goulds in February 2007, Utica created a false record that primary policies had aggregate limits when they did not so that Utica could access FFIC's reinsurance.  Further, and as it relates to this motion, FFIC contends Utica violated its duty of good faith when it waited twelve years to notify FFIC of its $35 million claim after notifying Gen Re in 1996.

In moving to dismiss FFIC's affirmative defense, Utica argues FFIC's assertion that Utica acted in bad faith with respect to providing notice to FFIC is based on an incorrect view of New York law.  Instead, Utica contends that New York law requires, without exception, reinsurers to show prejudice resulting from the alleged late notice—regardless of whether the notice was negligently late, intentionally late, or even late because of bad faith.  Utica relies on Unigard I, 79 N.Y.2d 576 (holding that the reinsurer must demonstrate how the late notice was prejudicial) and New Hampshire Insurance Co. v. Clearwater Insurance Co., No.

653547/2011, 2013 NY Slip Op 32812[U], at *4–5 (N.Y. Sup. Ct. Nov. 1, 2013) (rejecting alleged bad faith exception to prejudice requirement in Second Circuit decisions and noting that exception had not been applied by any New York State court).  Alternatively, Utica argues that even if a bad faith exception to the prejudice requirement were applied, FFIC's bad faith defense fails because it cannot show Utica acted in bad faith in providing notice. According to Utica, the undisputed facts demonstrate that it did not act with an intent to deceive, nor did it lack routine practices and controls to ensure notification to reinsurers.

FFIC responds in opposition that under controlling New York law as interpreted and applied by the Second Circuit, Utica's claim for indemnification is barred if FFIC can show either that it was prejudiced by Utica's late notice or that Utica failed to provide prompt notice in violation of its duty of utmost good faith.  FFIC relies on Christiania General Insurance Corp. of New York v. Great American Insurance Co., 979 F.2d 268, 281 (2d Cir. 1992) (noting that a ceding insurer's failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the ceding insurer acted in bad faith, but finding no evidence of bad faith on the record); Unigard II, 4 F.3d at 1069 (reiterating the Christiania Court's statement that a ceding insurer's failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the ceding insurer acted in bad faith, and elaborating on bad faith standard, but concluding that nothing in the record supported a finding that the ceding insurer, North River, acted in bad faith); and Granite State Insurance Co. v. Clearwater Insurance Co., No. 09 Civ. 10607, 2014 WL 1285507, at *21–22 (S.D.N.Y. Mar. 31, 2014) (explaining that under New York law, the reinsurer must either show prejudice resulting from the untimely notice or that the ceding insurer's failure to provide timely notice constituted a breach of its duty of utmost good faith to the reinsurer, and finding that the

ceding insurer Granite State breached its duty of utmost good faith to reinsurer Clearwater as a matter of law, which when coupled with the untimely notice, barred the ceding insurer's claim for coverage).[14]  Finally, FFIC contends there is substantial evidence that Utica failed to provide prompt notice to FFIC of its settlement with Goulds and of its request for payment from FFIC and thus Utica's breach of the duty of utmost good faith is a question of fact for the jury and summary judgment should be denied.

### 1.  Prejudice Requirement

First, Utica disputes FFIC's interpretation of Christiania, 979 F.2d 268.  Utica aptly points out that the Christiania Court concluded that the reinsurer could not avoid showing prejudice merely by establishing that the ceding insurer consciously provided late notice. 979 F.2d at 281 ("It seems what [reinsurer] Christiania would have us do is supplant the New York rule that a reinsurer must prove prejudice as a result of late notice by holding that 'consciously' late notice, without more, is sufficient to entitle the reinsurer to relief.  We reject this invitation.") (emphasis added).  The Court then went on to explain that "[a]t most, a reinsured's failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the reinsured acted in bad faith."  Id.  Utica argues that the explanation allowing for a bad faith exception is dicta and need not be followed.  Moreover, Utica takes issue that in articulating the bad faith exception, the Second Circuit cited to a North Carolina case, Fortress Re, Inc. v. Central National Insurance Co., 766 F.2d 163, 165-66 (4th Cir. 1985),

---

[14]  The parties disputed whether Illinois or New York law governed.  Granite State, 2014 WL 1285507, at *19.  The Court conducted an analysis under both Illinois and New York law and concluded that the ceding insurer's claim was barred under either state's law.  Id. at *19–21.  Because the result would be the same under either  law, it was unnecessary to reach the second step of a choice of law analysis.  Id. at *22.  Despite this,  the Court proceeded to step two, noting that it would be worthwhile to explain the result. Id.  It concluded that Illinois law would govern if the second step were reached.  Id. at *23.

and the two New York cases it did cite to involved primary insurers, not reinsurance.  See New Hampshire Ins. Co., 2013 NY Slip Op 32812[U], at *4–5 (distinguishing two New York cases relied on in Christiania for bad faith exception).

Utica also attacks the Second Circuit's reliance on—in fact, the Court's quoting of—Christiana in Unigard II, 4 F.3d at 1069, when it cited the then-recently issued Christiana decision stating that a ceding insurer's failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the ceding insurer acted in bad faith.  Utica takes issue with the fact that the Unigard II Court cited to no authority other than Christiana for this proposition.

Moreover, Utica actually argues that the Second Circuit's conclusion in Christiana and the Second Circuit's reliance on that sentiment in Unigard II is contrary to New York law because the prejudice rule articulated by the New York Court of Appeals in Unigard I left no room for an exception based on bad faith in the absence of prejudice.  Naturally, because the Christiana Court's statement allowing for a bad faith exception was not only dicta but contrary to New York law (established by Unigard I), it follows that decisions reciting this proposition, such as Unigard II, 4 F.3d at 1069, and Granite State, 2014 WL 1285507, are erroneous according to Utica.  According to Utica, the only court that got it right is a New York State trial court.  See New Hampshire Ins. Co., 2013 NY Slip Op 32812[U], at *4–5.

Utica would rather the court rely on an unpublished New York State trial court decision than binding Second Circuit caselaw, or even a persuasive New York district court decision.  Utica's arguments are unpersuasive.  It is clear that under Christiana, consciously late notice alone is not enough to bypass the prejudice requirement, but a showing of bad faith on the ceding insurer's behalf may excuse the reinsurer from needing to demonstrate prejudice.

979 F.2d at 281.  The Second Circuit repeated this conclusion in Unigard II—citing to Christiana—a reassurance that the Court did not overlook existing caselaw or its own recent decision.  In fact, in Unigard II, the Second Circuit could have clarified or rejected its recent statement if it were inaccurate.  Instead, it took the opportunity to set a standard for bad faith. Unigard II, 4 F.3d at 1069.  Finally, in the only discovered district court case within our Circuit to consider the issue since Christiana and Unigard II, the Granite State Court applied the bad faith exception and concluded that no reasonable jury could find that the ceding insurer met its duty of utmost good faith, which coupled with its untimely notice, barred its reinsurance coverage.

In sum, Utica's claim against FFIC for indemnification will be barred if FFIC can show either that it was prejudiced by Utica's failure to provide timely notice, or that Utica acted in bad faith in failing to provide timely notice.

### 2. **Evidence of Bad Faith**

The minimum standard for bad faith is gross negligence or recklessness; simple negligence alone does not constitute bad faith.[15]  Unigard II, 4 F.3d at 1069.  Thus, "[i]f a ceding insurer deliberately deceives a reinsurer, that deception is of course bad faith.  Id. Likewise, if a ceding insurer does not implement "routine practices and controls to ensure notification to reinsurers," "then it has willfully disregarded the risk to reinsurers and is guilty of gross negligence."  Id.  Whether the bad faith standard has been met is usually a factual issue to be determined by a jury.

---

[15]  Utica argues that an "intent to deceive" is the requisite standard.  This is not required by caselaw.

Here, Utica contends FFIC is unable to establish that it acted in bad faith under any standard, and has put forth voluminous evidence to support its position.  Specifically, Utica contends that it wrote to FFIC regarding the reinsurance shortly after it learned of its existence.  Utica asserts that its policy for notifying reinsurers was to follow the notice provisions in the relevant reinsurance policies.  A Utica employee testified that they had guidelines around when they gave notice and that they were expected to be familiar with the notice requirements in the treaty and facultative certificates.  This employee also testified that Utica had procedures about reporting reinsurance, and the failure to be familiar with and follow the notice provisions could affect employment.  A different Utica employee testified that notice was sent to a reinsurer when a claim reached a certain threshold, for example fifty percent, and that Utica had a program which provided a report when such thresholds were met.  Further, Utica memorialized some practices regarding notice and the importance of timely notice to reinsurers in memoranda and emails.[16]

In opposition, FFIC contends that Utica did not have a procedure in place to find its facultative reinsurance, let alone notify these reinsurers of their potential liability.  It argues that Utica's lack of routine practices and controls to ensure notification to reinsurers is exactly the kind of gross negligence which constitutes bad faith.  FFIC contends Utica had no written guidelines that applied to the notification of facultative reinsurers, and that the unwritten understanding Utica had of following the notification procedure in the relevant certificate of reinsurance was insufficient because Utica did not have any written policies, procedures, or guidelines to ensure that its personnel could even identify all of its facultative insurers or

---

[16]  The details of those written correspondences will not be reiterated at this time as the documents were filed under seal, and the content and sufficiency of the memoranda and emails are properly reserved for a jury.

locate all of its facultative reinsurance certificates.  According to FFIC, Utica could have put in place a procedure or policy which would have helped its employees identify reinsurers and find the corresponding certificates containing the notice provisions.  FFIC asserts that Utica provided notice of the Goulds claims between eight and twelve years late—a prime example of the procedures Utica lacked.  Further, FFIC contends that Utica did not have a system to keep track of when or whether Utica provided notice to reinsurers.  FFIC also criticizes Utica's document retention policy and the lack of supervision of Utica employees executing their reporting duties.  Finally, FFIC contends that any programs and policies which Utica did have in place regarding notice—such as triggering notice when a threshold was met—applied only to treaty reinsurers and not facultative reinsurers.  Utica disputes these allegations.

FFIC has created genuine issues of material fact as to whether Utica was grossly negligent or reckless in failing to provide prompt notice to FFIC and in having sufficient reinsurance notification procedures.  Such factual disputes and witness credibility determinations are properly reserved for the fact finder.  Summary judgment on FFIC's bad faith defense will be denied.

## IV.  CONCLUSION

Commutations are not collateral matters and may be used to establish prejudice under a late notice defense if a reinsurer can demonstrate it suffered tangible economic injury resulting from the ceding insurer's late notice.  A reinsurer who establishes such prejudice would be entitled to complete relief from its duty to indemnify, not merely the measure of damages for which it was harmed.  Therefore, Utica's motion for partial summary judgment on FFIC's late notice defense will be denied.

Finally, Utica's claim for indemnification from FFIC will be barred if FFIC can show either that it was prejudiced by Utica's failure to provide timely notice, or that Utica acted in bad faith in failing to provide timely notice.  There remain genuine issues of material fact as to whether Utica was grossly negligent or reckless in failing to provide prompt notice to FFIC, and summary judgment is inappropriate.  Accordingly, Utica's motion for partial summary judgment on FFIC's bad faith defense will be denied.

Therefore, it is

ORDERED that

1.  Utica Mutual Insurance Company's motion for partial summary judgment on Fireman's Fund Insurance Company's late notice defense is DENIED; and

2.  Utica Mutual Insurance Company's motion for partial summary judgment on Fireman's Fund Insurance Company's bad faith defense is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: February 9, 2015
   Utica, New York.