UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UTICA MUTUAL INSURANCE COMPANY,

                                        Plaintiff,

        -v-                                                    6:09-CV-853

FIREMAN'S FUND INSURANCE COMPANY,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

SIDLEY AUSTIN LLP                               DANIEL R. THIES, ESQ.
Attorneys for Plaintiff                         THOMAS D. CUNNINGHAM, ESQ.
One South Dearborn Street                       WILLIAM M. SNEED, ESQ.
Chicago, IL 60603

WILLIAMS LOPATTO PLLC                           JOHN B. WILLIAMS, ESQ.
Attorneys for Defendant                         MARY A. LOPATTO, ESQ.
1707 L Street NW                                FARA N. KITTON, ESQ.
Suite 550
Washington, DC 20036

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Utica Mutual Insurance Company ("Utica" or "plaintiff") filed this action on July

29, 2009 against defendant Fireman's Fund Insurance Company ("Fireman's Fund" or

"defendant").  One breach of contract claim, and two counterclaims for knowing or reckless

misrepresentation or concealment and negligent misrepresentation or nondisclosure, remain.

Trial is scheduled for Monday, November 27, 2017, in Utica, New York. The parties have now moved in limine for various pre-trial rulings. Oral argument was held on Thursday, November 2, 2017, in Utica, New York. A pre-trial conference followed.

## II. **FACTS**

The parties' familiarity with the facts and history of this case is presumed, and only those facts necessary for the disposition of the pending matters will be recited.

Utica issued seven primary general liability policies to Goulds Pumps Inc. which were in effect for annual periods between July 1, 1966 and July 1, 1973 (the "primary policies").

Utica also issued seven umbrella liability policies to Goulds which were in effect for annual periods between July 1, 1966 through July 1, 1973 (the "umbrella policies").

Fireman's Fund issued seven facultative reinsurance policies to Utica which were in effect for annual periods between July 1, 1966 through July 1, 1973 (the "certificates").

Simply stated, Utica insured Goulds on the primary and umbrella levels, and Fireman's Fund reinsured Utica. Fireman's Fund also reinsured that reinsurance themselves.

Following claims in the late 1990s for bodily injury due to asbestos in Goulds pumps, litigation ensued in California and New York to determine the rights of Goulds and its insurers, including Utica (the "coverage litigation"). Goulds and Utica settled in February 2007 for $325 million (the "Settlement Agreement").[1]

In July 2008, Utica provided notice to Fireman's Fund of the Goulds loss and submitted a reinsurance claim under the seven certificates. As of July 2009, Fireman's Fund had not paid the claims and Utica initiated this suit.

---

[1] The agreement was specifically memorialized in four documents. For ease of reference, the settlement will be referred to merely as the Settlement Agreement.

## III. <u>PROCEDURAL HISTORY</u>

Following limited discovery, Utica moved (in two separate motions) for partial summary judgment disposing of two of Fireman's Fund's affirmative defenses:  (1) its late notice defense, and (2) its bad faith notice defense.  On February 9, 2015, a Memorandum-Decision and Order was issued denying both of Utica's motions for partial summary judgment.  It was held that if, at trial, Fireman's Fund can establish that it suffered actual prejudice from Utica's late notice (in the form of lost commutations), it would be entitled to complete relief from its duty to indemnify Utica.  It was further held that disputed issues of fact exist as to whether Utica acted in bad faith in failing to provide timely notice, but that if a jury found it did act in bad faith, Fireman's Fund would be relieved of its duty to indemnify Utica.

Discovery continued and later, the parties filed a combined total of eight additional motions.  On February 24, 2017, a Memorandum-Decision and Order was issued: (1) granting in part and denying in part Fireman's Fund's motion for judgment on the pleadings on Counts <u>II</u> and <u>III</u>, and dismissing <u>Count III</u> as duplicative of <u>Count I</u>; (2) denying Fireman's Fund's motion for partial summary judgment on <u>Count I</u> (Utica's "Aggregate Limits" contention), finding that the contracts required to resolve that issue were incomplete and not fully provided; (3) granting Fireman's Fund's motion for partial summary judgment on <u>Count II</u>, and dismissing the bad faith claim (<u>Count II</u>) because on no set of facts could Utica show that Fireman's Fund acted in bad faith and/or had no arguable basis to challenge its claim, nor could Utica prove that no reasonable carrier would, under the given facts, challenge its claim; (4) denying Fireman's Fund's motion for summary judgment to dismiss <u>Count I</u> on the follow the settlement doctrine because factual disputes remain; (5) denying Fireman's Fund's

motion in limine to preclude testimony of Utica expert Dennis R. Connolly; (6) denying Utica's motion for partial summary judgment on the follow the fortunes doctrine because factual disputes remain; (7) denying Utica's motion for partial summary judgment that FFIC is not entitled to rescission on its counterclaims because factual disputes remain; and (8) denying Utica's motion for partial summary judgment that notice was not due before February 1999 because factual disputes remain.

The pending motions in limine are now ripe for consideration.

## IV.  DISCUSSION

First, plaintiff moved to preclude defendant's expert Garrett Redmond.  Defendant opposed and plaintiff replied.

Next, defendant moved to preclude five specific evidentiary matters.  Plaintiff opposed and defendant replied.

Finally, plaintiff filed a letter advising of fourteen distinct evidentiary matters expected to arise at trial and stated its position on same.  The letter was construed as an omnibus motion in limine and briefing was ordered.  Defendant opposed and plaintiff replied.

### A.  Plaintiff Utica's Motion to Preclude Fireman's Fund Expert Garrett Redmond

Utica moves to preclude certain testimony of Garrett Redmond ("Redmond").  Redmond was employed by Fireman's Fund from 1957 through 1975.[2]  It is undisputed that he did not work on the specific insurance policies at issue in this case.  His proposed testimony relates to the existence of aggregate limits on Utica's primary policies.  Specifically,

---

[2]  He was the chief underwriter for some or all of this time period.

Utica seeks to preclude Redmond from offering testimony at trial[3] on the following two propositions:  (1) that Utica misrepresented or omitted facts to Fireman's Fund in 1966 through 1972 respecting whether the primary policies it issued to Goulds for those policy years had aggregate limits, and (2) that the primary policies Utica issued to Goulds during that time period did not have aggregate limits.

First, it is noted that the ruling made in the February 24, 2017 Memorandum-Decision and Order as to Redmond was under the summary judgment standard and his testimony was not ruled admissible or inadmissible per se at trial.  It is undisputed that Redmond lacks personal knowledge as to the above specific propositions and therefore he cannot testify as to those matters as a fact witness under Federal Rule of Evidence ("FRE") 602.  See, e.g., John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co., 147 F.R.D. 40, 44-45 (S.D.N.Y. 2003) (rejecting reinsurer's attempt to have a person not involved in the underwriting testify as to what the actual underwriters knew, intended, or would have done). He may however testify as a fact witness as to what Fireman's Fund's standard practices and policies were at the time, and based on that, counsel is free to present the theory that those policies were followed during the time in question.  Opposing counsel is free to point out that standard procedures may not always be followed and may be modified, and that Redmond has no knowledge as to whether those procedures were in fact followed in this case.

Nor can Redmond testify as an expert witness, a hybrid fact/expert witness, or render a lay opinion on those specific issues.  He was not designated as an expert witness under Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B).  He was designated as a hybrid

---

[3]  Redmond's deposition testimony has been videotaped and is expected to be played at trial.

fact/expert witness pursuant to FRCP 26(a)(2)(C), but he still cannot offer an expert opinion based on facts beyond his personal knowledge. His expert opinion under FRCP 26(a)(2)(C) must be based on facts within his personal knowledge. The typical scenario of a hybrid fact/expert witness under that rule is a treating physician who has personal knowledge of the facts, testifies to same, and based on those facts, renders an expert opinion. That is not the situation in this matter. Redmond's testimony on those propositions likewise does not fit within FRE 701.

Due to how much time has passed since these policies were issued, there are no witnesses who were personally involved with negotiating or writing the policies. As a result, both sides will attempt to offer circumstantial evidence and testimony regarding the usual practices at that time in order to support their positions on the existence of aggregate limits. They may also present traditional expert testimony on these issues pursuant to FRE 702 and 703

Accordingly, plaintiff's motion to preclude Redmond's testimony will be granted to the extent <u>he will be prohibited from testifying that Utica did in fact make misrepresentations to Fireman's Fund in obtaining the reinsurance policies and that the primary policies in question did in fact lack aggregate limits</u>. His testimony on other grounds will be admitted subject to the laying of a proper foundation and resolution of the pending objections to his deposition designations.

## B. <u>Defendant Fireman's Fund's Motion to Preclude</u>

Fireman's Fund moves to preclude the following five pieces of evidence: (1) plaintiff's constructive notice argument; (2) evidence of other Utica legal decisions and/or settlements regarding the Goulds loss; (3) evidence of its own settlements and litigation with third parties;

(4) reference to Brian Gagan's expert testimony; and (5) Andrew Maneval's late notice testimony.

### 1. Constructive notice

Fireman's Fund argues that Utica should be precluded from making the argument that because Fireman's Fund was a direct insurer of Goulds under other policies, it had constructive notice of Utica's reinsurance claims prior to 2008.

While the law in New York requires actual notice and not constructive notice, <u>any facts showing that Fireman's Fund had prior knowledge of the Goulds loss are relevant to Fireman's Fund's claimed prejudice</u> (caused by Utica's late notice).

Therefore, Fireman's Fund's motion to preclude this evidence will be denied, and the parties are reminded that the jury will be instructed on the proper legal standard for notice.

### 2. Other Utica disputes

Fireman's Fund argues that Utica should be precluded from introducing judicial decisions involving other insurer's challenges to Utica's aggregate limit position.

Matters such as <u>Goulds Pumps, Inc. v. Travelers Casualty and Surety Co.</u>, No. B255439, 2016 WL 3564244 (Cal. Ct. App. June 22, 2016) (unpublished decision) and <u>Utica Mutual Insurance Co. v. Clearwater Insurance Co.</u>, No. 613-CV-1178, 2016 WL 254770, (N.D.N.Y. Jan. 20, 2016) (Sharpe, S.J.) are irrelevant in this matter.  As explained in the February 2017 Memorandum-Decision and Order, those cases involve different years of coverage, with different policies, between different parties, and no extrinsic evidence was offered.  That another court agreed or disagreed with Utica's aggregate limit position in a factually distinct matter does not dictate whether Fireman's Fund is obligated to, pursuant to

the follow the fortunes doctrine, pay in this case.  Disputes between Utica and other reinsurers are irrelevant and inadmissible.

Accordingly, Fireman's Fund's motion to preclude evidence of other Utica disputes will be granted.

### 3. **Fireman's Fund's litigation with other parties**

Fireman's Fund moves to preclude evidence of its own settlements and litigation with third parties.  For example, Fireman's Fund has a dispute with one of its own reinsurers.

Fireman's Fund put Utica's proof of loss at issue by arguing that the proof of loss Utica tendered was insufficient to pay.  However, what Fireman's Fund deemed sufficient proof of loss in a wholly unrelated matter, under what can only be assumed to be different policies, coverage, and terms, is irrelevant to what constituted adequate proof of loss under the certificates in this case.

For these reasons, Fireman's Fund's motion to preclude this evidence will be granted

### 4. **Brian E. Gagan**

Fireman's Fund moves to preclude evidence of testimony in another matter by Brian E. Gagan ("Gagan").  Gagan is a former insurance executive who offered expert testimony in two California cases.  Gagan was retained by Fireman's Fund in those matters and at a certain time, rendered an opinion now unfavorable to Fireman's Fund.  Gagan is not a designated expert in this case, but Utica seeks to allow its own expert Dennis Connolly ("Connolly"), to refer to the Gagan excerpts to bolster its Connolly's present opinion.

While it may be somewhat prejudicial to introduce this evidence, Gagan's opinion will be admissible as an admission of a party opponent if Utica can satisfy the requirements of

FRE 801(d)(2).  Gagan is not testifying himself, he was retained by Fireman's Fund and his opinion will be admitted for the limited purpose of Connolly's opinion.

Therefore, Fireman's Fund's motion to preclude Connolly's reliance on or reference to Gagan's testimony is denied.

### 5.  Andrew Maneval

Fireman's Fund moves to preclude Utica's expert Andrew Maneval ("Maneval") on the basis that he is not permitted to render an opinion on a legal standard and further, that the standard he articulates is wrong.  Maneval is designated as an insurance expert to provide his opinion regarding when Utica was obligated to provide notice to Fireman's Fund of the Goulds loss.  Maneval will opine that pursuant to the applicable notice provision in the certificates, a ceding insurer (Utica) must make a subjective determination when it appears likely that there will be a loss involving the reinsurance.

Interpreting the notice provision in a contract is a task reserved for the court.  Further, as laid out in  Christiania General Insurance Corp. of N.Y. v. Great American Insurance Co., 979 F.2d 268, 274 (2d Cir. 1992), the determination of when notice is due requires an *objective* assessment of when there is a reasonable possibility that the reinsurance will be involved.  However, information known to Utica *is* relevant to when a reasonably diligent insurance company *in Utica's position* would have thought itself required to provide notice to Fireman's Fund under the certificates.

Accordingly, Fireman's Fund's motion to preclude Maneval's testimony will be denied.

### C.  Plaintiff Utica's Motion to Preclude

Utica moves in limine to preclude the following fourteen pieces of evidence/testimony: (1) any of Utica's disputes with other reinsurers; (2) notice to other reinsurers; (3) settlement

negotiations between Goulds and Utica after 2005; (4) speculation on Utica's relationship with its California counsel, Berkes Crane Robinson & Seal LLP; (5) Utica's fee dispute with that counsel; (6) Utica's post-settlement disputes with Goulds; (7) underwriting files produced by the broker from this case; (8) a 1960s unsigned letter to Fireman's Fund; (9) the content of commutation agreements which Fireman's Fund has not produced in this case; (10) Rahul Mehta's testimony that is not based on personal knowledge; (11) Robert Hall's testimony on ultimate issues, legal matters, and speculation; (12) John Griffin's irrelevant testimony; (13) characterization of Utica's position during mediation as a lie; and (14) mention of Utica's (deep pocket) affiliates.

### 1. Other Utica disputes

Utica moves to preclude evidence regarding its own disputes with other reinsurers. Utica contends this includes reliance by Fireman's Fund's expert Robert Hall ("Hall") on such disputes. Fireman's Fund does not opposite this request, as this is essentially the same argument that it made in its motion in limine. For the reasons previously explained, Utica's disputes with other reinsurers under different facts are irrelevant and inadmissible.

Therefore, Utica's motion to preclude evidence of other disputes will be granted.

### 2. Notice given to other reinsurers

Utica moves to preclude evidence of when other reinsurers received notice.

It is generally true that when other reinsurers received notice has no bearing on when notice was due to Fireman's Fund because different reinsurers have different contracts with different notice provisions and participate on different years and/or different levels of coverage. However, Fireman's Fund contends that Utica did not give notice to other reinsurers at different times based on different coverage and instead provided notice to all

reinsurers in 2001 (except for General Reinsurance Corporation which received notice years earlier).  Further, <u>information known to Utica and relayed to other reinsurers regarding the Goulds loss *is* relevant as to when a reasonably diligent insurance company would have thought itself required to provide notice to Fireman's Fund</u> under the certificates.

Accordingly, Utica's motion to preclude evidence of notice to other reinsurers will be denied subject to Fireman's Fund establishing that Utica did in fact provide blanket notice of the Goulds loss to all reinsurers other than Fireman's Fund and General Reinsurance Corporation.

### 3. <u>Utica-Goulds settlement negotiations post-2005</u>

Utica seeks to preclude the introduction of settlement drafts and exchanges between Utica and Goulds from January 2006 forward on the basis that it reached an agreement with Goulds on the aggregate products limits in the primary policies at issue by December 14, 2005.  Pursuant to the follow the settlement doctrine, Utica argues that anything after that date is inadmissible because the only issue is whether Utica acted reasonably on that date when it settled on the basis that the primary policies had aggregate limits.

Fireman's Fund has offered evidence to dispute Utica's assertion that the issue was actually settled in 2005 and instead contends that the terms continued to be negotiated through the date the Settlement Agreement was finalized in February 2007.  Because the issue of whether Utica acted reasonably in its settlement with Goulds is key to Fireman's Fund's obligation under the follow the settlement doctrine, <u>the full spectrum of negotiations will be admissible</u>.

For this reason, Utica's motion to preclude negotiations after December 14, 2005 will be denied.

**4. Berkes Crane Robinson & Seal LLP**

Utica plans to call Ronald Robinson, Esq. ("Attorney Robinson") of Berkes Crane Robinson & Seal LLP.  That law firm was Utica's California counsel in the coverage litigation. Utica however moves to preclude evidence of any dispute it had with that law firm.  The parties disagree as to the reason Utica parted ways with the law firm and Fireman's Fund contends the reason is relevant to the aggregate limits dispute.

Fireman's Fund is free to cross-examine Attorney Robinson as to his opinion on Utica's aggregate limits position but evidence <u>regarding the reasons Utica parted ways with the law firm will not be permitted</u>.

Accordingly, Utica's motion to preclude evidence of this nature will be granted.

**5. Fee dispute**

Utica moves to preclude Fireman's Fund from introducing evidence of a fee dispute between Utica and Berkes Crane Robinson & Seal LLP.

The dispute in this case primarily relates to the reasonableness of Utica's actions in negotiating the Settlement Agreement, and <u>any fee dispute with its lawyer in the underlying coverage action has no bearing on the instant issues</u>.  It is irrelevant and could be highly prejudicial to Utica.

Therefore, Utica's motion to preclude evidence of a fee dispute will be granted.

**6. Utica-Goulds post-Settlement Agreement disputes**

Utica moves to preclude Fireman's Fund from offering evidence of disputes between Utica and Goulds after the February 2007 Settlement Agreement was memorialized. Fireman's Fund argues evidence of errors in the Settlement Agreement and post-settlement disputes are relevant to the prejudice it suffered as a result of Utica's late notice.

Fireman's Fund's issue to date with the Settlement Agreement has focused on Utica's assertion that the primary policies contained aggregate limits and its alleged insistence that Goulds stipulate to the same. Discovery did not include the claim that had Fireman's Fund received earlier notice and participated in the Utica-Goulds settlement negotiations, they could have prevented errors in the Settlement Agreement and avoided subsequent disputes. Therefore, <u>evidence of those disputes is irrelevant</u>.

For this reason, Utica's motion to preclude post-Settlement Agreement disputes will be granted.

### 7. Broker's underwriting files

Utica moves to preclude admission of the Herbert Clough, Inc. ("Clough") underwriting files. It argues they cannot be properly authenticated and are hearsay. During the time at issue, Clough served as Utica's agent in placing its reinsurance with Fireman's Fund.

The <u>files will be admissible at trial subject to the laying of a proper foundation and Fireman's Fund establishing that they fit within a hearsay exception</u>, such as the exception for ancient documents under FRE 803(16).

Accordingly, Utica's motion to preclude the broker's underwriting files will be denied.

### 8. Unsigned letter

Utica moves to preclude Fireman's Fund from introducing a letter from Clough to Fireman's Fund, dated April 8, 1968. Fireman's Fund intends to introduce the letter to support its counterclaims (for rescission) that Utica misrepresented whether the primary policies had aggregate limits. Utica contends the letter is part of the allegedly inadmissible Clough broker files just discussed and further that it is unsigned and there is no evidence it was ever sent.

Utica's arguments go to the letter's weight and credibility, not its admissibility.  <u>The letter will be admissible subject to the laying of a proper foundation and Fireman's Fund establishing that the letter fits within a hearsay exception</u>.

Therefore, Utica's motion to preclude introduction of the letter will be denied.

### 9.  <u>Unproduced commutation agreements</u>

Utica seeks to preclude Fireman's Fund from introducing four commutation agreements which it did not produce in discovery.  Fireman's Fund contends it did not receive consent from those four retrocessionaires and was thus unable to produce the agreements.

The best evidence rule, FRE 1002, provides that an original writing is required in order to prove its content.  None of the exceptions delineated in FRE 1004 apply.  While Fireman's Fund argues that the only relevant fact in the four unproduced agreements is the actual commutation price of each (which can allegedly be established by ample, reliable secondary evidence), <u>it would violate the best evidence rule to permit something other than the original documents to establish that information</u>, and further, it would be unfair to Utica to permit the introduction of the prices without an opportunity to review the underlying documents which gave rise to those prices.

For this reason, Utica's motion to preclude these four commutation agreements will be granted.

### 10.  <u>Rahul Mehta</u>

Utica moves to preclude testimony by Fireman's Fund former employee Rahul Mehta ("Mehta").  Mehta is designated as a hybrid fact/expert witness pursuant to FRCP 26(a)(2)(C).  He is expected to testify regarding the prejudice Fireman's Fund suffered

through its lost commutations as a result of Utica's late notice.  Mehta became involved with Fireman's Fund's commutations in 2000.

Like Redmond, Mehta cannot offer an expert opinion based on facts beyond his personal knowledge.  His expert opinion under FRCP 26(a)(2)(C) must be based on facts within his personal knowledge.  He may testify as a hybrid fact/expert witness as to the commutations he was personally involved in from 2000 on, and may opine on Fireman's Fund's lost commutations and resulting prejudice for those years in which he has personal knowledge.  He may testify based on his employment and experience as to Fireman's Fund's standard practices and policies regarding commutations.  However, he cannot testify as an expert as to commutations he was not personally involved in because he is designated as a hybrid witness.  Based on all of his testimony, counsel is free to present the theory that those standard practices were followed during the time in question and as to the commutation agreements in question.  Opposing counsel is free to argue that it is unknown whether those practices were followed because Mehta lacks personal knowledge about commutation agreements with which he was not involved.

Accordingly, Utica's motion will be granted to the extent that Mehta will be precluded from rendering an expert opinion as to commutations occurring before 2000.

**11.  Robert Hall**

Utica moves to preclude Fireman's Fund expert Hall from opining that Utica violated its obligation of utmost good faith when it allocated the Goulds loss (in the Settlement Agreement).  Utica also seeks to prevent Hall from testifying that Utica provided late notice to Fireman's Fund under the certificates' terms and violated its duty of utmost good faith in doing so.  Utica argues these are ultimate issues properly reserved for the jury.

Under FRE 704, an opinion is not objectionable just because it embraces an ultimate issue. The basic approach to opinions, lay and expert, is to admit them when helpful to the trier of fact. To the extent that a proper foundation is laid and Hall is qualified as an expert, his expert opinions on these issues will be admissible, subject to the usual guidelines of expert testimony; he will not be permitted to testify as to legal matters or based on speculation.

Therefore, Utica's motion to preclude Hall's testimony on ultimate issues will be denied.

### 12. <u>John Griffin</u>

Utica moves to preclude testimony by Fireman's Fund witness John Griffin ("Griffin"). Griffin was previously Utica's Head of Underwriting. Fireman's Fund intends to introduce evidence demonstrating that Utica's standard policies and practices—that is, that aggregate limits were always written in—were not followed during the time period in question.

Just as Utica will be permitted to introduce evidence that it was standard policy and practice both at Utica and industry wide to include aggregate limits for bodily injury claims, Fireman's Fund will be permitted to attempt to discredit that assertion by questioning Griffin on what he testified were errors made by Utica.

For this reason, Utica's motion to preclude Griffin's testimony will be denied.

### 13. <u>Characterization of Utica's position to the mediators as a lie</u>

Utica seeks to prevent Fireman's Fund from introducing evidence which would characterize Utica's aggregate limit position to mediators as a lie. Utica contends its counsel repeatedly advised that there was no viable dispute as to the existence of aggregate limits in

the primary policies and thus there can be no argument that its position was a lie or misrepresentation.

Part of Fireman's Fund's argument that Utica violated its duty of utmost good faith pursuant to the certificates is its allegation that Utica made misrepresentations, regarding the aggregate limits, to mediators and judges during the Utica-Goulds settlement negotiations. Simply because Utica's California coverage counsel echoed Utica's position on aggregate limits does not mean Fireman's Fund cannot challenge that position as knowingly unfounded or baseless, or in other words, a misrepresentation.  However, the characterization of that position as a "lie" would have an inflammatory effect and would be more prejudicial than probative.

Accordingly, evidence of this nature will be permitted and thus the motion partially granted, only as to the characterization of that conduct as a lie.

### 14.  "David and Goliath"

Utica seeks to preclude Fireman's Fund from casting this suit as a "David and Goliath" dispute against a large and wealthy corporation based on Utica's affiliation with Berkshire Hathaway and Warren Buffet.  Fireman's Fund has advised it has no intention to do so.

Therefore, Utica's motion to preclude evidence as to its relationship with Berkshire Hathaway and Warren Buffet will be granted, and all reference to same will be prohibited including during jury selection.

## V.  CONCLUSION

Therefore, it is

ORDERED that

**1**. Plaintiff Utica Mutual Insurance Company's motion in limine to preclude certain expert testimony by Garrett Redmond (ECF No. 364) is GRANTED;

**2**. Defendant Fireman's Fund Insurance Company's omnibus motion in limine to preclude five specific matters (ECF No. 383) is GRANTED in part and DENIED in part as follows:

1. Motion to preclude Utica Mutual Insurance Company's constructive notice argument is DENIED;

2. Motion to preclude other Utica Mutual Insurance Company legal decisions and/or settlements regarding the Goulds Pumps Inc. loss is GRANTED;

3. Motion to preclude Fireman's Fund Insurance Company's own settlements and litigation with third parties is GRANTED;

4. Motion to preclude reference to Brian Gagan's expert testimony is DENIED;

5. Motion to preclude Andrew Maneval's late notice testimony is DENIED; and

**3**. Plaintiff Utica Mutual Insurance Company's omnibus motion in limine to preclude fourteen specific matters (ECF No. 384) is GRANTED in part and DENIED in part as follows:

1. Motion to preclude Utica Mutual Insurance Company's disputes with other reinsurers is GRANTED;

2. Motion to preclude notice to other reinsurers is DENIED;

3. Motion to preclude evidence of settlement negotiations between Goulds Pumps Inc. and Utica Mutual Insurance Company after 2005 is DENIED;

4. Motion to preclude speculation on Utica Mutual Insurance Company's relationship with Berkes Crane Robinson & Seal LLP is GRANTED;

5.      Motion to preclude evidence of Utica Mutual Insurance Company's fee dispute with Berkes Crane Robinson & Seal LLP is GRANTED;

6.      Motion to preclude Utica Mutual Insurance Company's post-settlement disputes with Goulds Pumps Inc. is GRANTED;

7.      Motion to preclude the underwriting files produced by the broker in this case is DENIED;

8.      Motion to preclude a 1960s unsigned letter to Fireman's Fund Insurance Company is DENIED;

9.      Motion to preclude the content of four commutation agreements which Fireman's Fund Insurance Company has not produced in this case is GRANTED;

10.     Motion to preclude Rahul Mehta's testimony that is not based on personal knowledge is GRANTED;

11.     Motion to preclude Robert Hall's testimony on ultimate issues is DENIED;

12.     Motion to preclude John Griffin's allegedly irrelevant testimony is DENIED;

13.     Motion to preclude the characterization of Utica Mutual Insurance Company's position during mediation as a lie is partially GRANTED; and

14.     Motion to preclude mention of Utica Mutual Insurance Company's affiliates is GRANTED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 16, 2017
         Utica, New York.

- 19 -