**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------X
UTICA MUTUAL INSURANCE COMPANY,  :
                                 :
                     Plaintiff,  :       No. 6:09-cv-00853 (DNH/TWD)
        v.                       :
                                 :
FIREMAN'S FUND INSURANCE         :
COMPANY,                         :
                     Defendant.  :
------------------------------------------------------------X
```

**PLAINTIFF UTICA MUTUAL INSURANCE COMPANY'S
RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

GOVERNING STANDARD ....................................................................................................2

ARGUMENT ..........................................................................................................................3

    I.       FFIC Failed to Show that Utica Was "Objectively Unreasonable" in Settling with Goulds on the Basis that Its 1966-72 Primary Policies Contained Aggregate Limits for Products Bodily Injury Claims ...........................................................................3

    II.      FFIC Failed to Show That Its Indemnification Obligations Were Absolved By Late Notice........................................................................................................................9

        A.      FFIC failed to show that Utica's notice was late, and FFIC waived any late notice defense ...........................................................................................................9

        B.      FFIC failed to show that it was prejudiced by the allegedly late notice ................10

        C.      FFIC failed to show that it suffered "material and demonstrable" prejudice from the allegedly late notice. ...................................................................................12

        D.      FFIC Failed to show that Utica acted in bad faith by providing notice in July 2008..................................................................................................................13

CONCLUSION........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226 (S.D.N.Y. 2009),
    *aff'd*, 374 F. App'x 78 (2d Cir. 2010)..............................................................7

*Aetna Cas. & Sur. Co. v. Home Ins. Co.*,
    882 F. Supp. 1328 (S.D.N.Y. 1995)...................................................................6

*British Int'l Ins. Co. v. Seguros La Republica, S.A.*,
    342 F.3d 78 (2d Cir. 2003).................................................................................3

*Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*,
    979 F.2d 268 (2d Cir. 1992).......................................................................... *passim*

*Cobb v. Pozzi*,
    363 F.3d 89 (2d Cir. 2004).............................................................................2, 5

*Dep't of Econ. Dev. v. Arthur Anderson & Co.*,
    924 F. Supp. 449 (S.D.N.Y. 1996) ..................................................................12

*Estee Lauder, Inc. v. OneBeacon Ins. Co.*,
    28 N.Y.3d 960 (2016) ......................................................................................10

*Matter of Firemen's Fund Ins. Co. of Newark v. Hopkins*,
    88 N.Y.2d 836 (1996) ......................................................................................10

*Granite State Ins. Co. v. Clearwater Ins. Co.*,
    No. 653546/11, 2016 NY Slip Op 31160(U), 2016 N.Y. Misc. LEXIS 2314
    (Sup. Ct.)..........................................................................................................12

*Hernandez v. Keane*,
    341 F.3d 137 (2d Cir. 2003).............................................................................11

*Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127 (2d Cir. 1986).....................10

*N. River Ins. Co. v. Ace Am. Reinsurance Co.*,
    361 F.3d 134 (2d Cir. 2004)...............................................................................3

*Process Am., Inc. v. Cynergy Holdings, LLC*,
    839 F.3d 125 (2d Cir. 2016)..............................................................................12

*Rose v. Mitchell*,
    443 U.S. 545 (1979)..........................................................................................12

*Matter of Smolka (Mergenhagen—Skretny)*,
    4 N.Y.S.3d 790 (N.Y. App. Div. 2015) ...........................................................15

*State of New York v. AMRO Realty Corp.*,
    936 F.2d 1420 (2d Cir. 1991).................................................................................................10

*Travelers Cas. & Sur. Co. v. Gerling Glob. Reinsurance Corp. of Am.*,
    419 F.3d 181 (2d Cir. 2005)..................................................................................................8

*U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*,
    985 N.E.2d 876 (N.Y. 2013)..............................................................................................3, 8

*Unigard Sec. Ins. Co., v. N. River Ins. Co.*,
    4 F.3d 1049 (2d Cir. 1993)................................................................................................9, 13

*Unigard Sec. Ins. Co. v. N. River Ins. Co.*,
    594 N.E.2d 571 (N.Y. 1992) (*Unigard II*)................................................................10, 12, 13

*United States v. Oddo*,
    314 F.2d 115 (2d Cir. 1963)................................................................................................12

*United States v. Pepe*,
    747 F.2d 632 (11th Cir. 1984) .............................................................................................12

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*,
    748 F.2d 118 (2d Cir. 1984)..................................................................................................9

*Wiljeff, LLC v. United Realty Mgmt. Corp.*,
    920 N.Y.S.2d 495 (N.Y. App. Div. 2011) ...........................................................................12

*Williams v. County of Westchester*,
    171 F.3d 98 (2d Cir. 1999).....................................................................................................2

## Other Authorities

*David M. Raim & Joy L. Langford, New Appleman Law Practice Guide § 40.17
    (2007)*.....................................................................................................................................3

Restatement (Second) of Contracts § 241(c) (1981).....................................................................15

## PRELIMINARY STATEMENT

In this action, Plaintiff Utica Mutual Insurance Company ("Utica") seeks to recover $35 million owed by its reinsurer, Defendant Fireman's Fund Insurance Company ("FFIC"), under certain reinsurance contracts covering payments Utica made to or on behalf of policyholder, Goulds Pumps, Inc. ("Goulds"), respecting certain umbrella liability insurance policies following a settlement between Utica and Goulds.  FFIC has raised several defenses to payment for trial to jury[1].  After three weeks of trial on this reinsurance coverage dispute, FFIC has failed to present any evidence in support of its alleged indemnification defenses.  Thus, under Rule 50(a), Utica is entitled to judgment as a matter of law on each defense.

First, FFIC has not presented any evidence that Utica's underlying settlement and allocation decisions were objectively unreasonable.  Utica presented substantial evidence of the discussions, deliberations, and negotiations that Utica and its counsel undertook when settling the underlying coverage dispute with Goulds.  Under the follow the settlements doctrine, FFIC is bound to the terms of that settlement unless it can show that that the settlement was objectively unreasonable.  FFIC has failed to do so and Utica is entitled to judgment as a matter of law on this issue.

Second, FFIC asserts that it is fully absolved from any indemnification obligation under the reinsurance contracts because Utica's notice to FFIC was allegedly late.  However, FFIC has not presented any evidence that Utica was aware of the reinsurance contracts before the month that Utica provided notice, and FFIC waived this defense by failing to assert it at that time.

---

[1] As originally pled, FFIC's first counterclaim for intentional or reckless misrepresentation and its second counterclaim for negligent misrepresentation or nondisclosure each sought rescission or, in the alternative, damages. Dkt. 33 at ¶¶ 95, 105, 107.  On October 30, 2017, FFIC withdrew its claims for damages on those counts and elected to seek rescission only, thereby submitting those counts to the Court.  *See* Dkt. 403; and Dkt. 379 at 19, fn. 26 ("The Court will adjudicate Fireman's Fund's equitable claim[s]" of rescission).  As such, this motion will not address those counterclaims, which will instead are the subject of the accompanying Rule 52 motion.

Further, to be absolved from its indemnification obligations under the reinsurance contracts, FFIC must show that it was prejudiced by the late notice.  FFIC's evidence that it suffered prejudice is speculative at best, and does not rise to the level of "material and demonstrable prejudice" as required by New York law.  Finally, FFIC has failed to present any evidence to support its argument that it may sidestep the prejudice requirement by showing bad faith.

FFIC's evidentiary shortcomings preclude a reasonable jury from returning a verdict in its favor on either of these coverage defenses.  Therefore, Utica is entitled to judgment as a matter of law on each issue.

## GOVERNING STANDARD

Under Fed. R. Civ. P. 50(a), the court may "enter judgment as a matter of law against a party on an issue where 'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"  *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2004) (quoting *Nadel v. Isaksson*, 321 F.3d 266, 271–72 (2d Cir. 2003)).  "The standard for post-verdict judgment as a matter of law is the same as for summary judgment under Fed. R. Civ. P. 56."  *Id.*  Nonetheless, the denial of a motion for summary judgment does not preclude a court from granting a motion for judgment as a matter of law.  *See Williams v. County of Westchester*, 171 F.3d 98, 102 (2d Cir. 1999).  Thus, judgment as a matter of law under Rule 50(a) is appropriate where, "viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  *Cobb*, 363 F.3d at 101 (alterations in original).

## ARGUMENT

**I.      FFIC Failed to Show that Utica Was "Objectively Unreasonable" in Settling With Goulds on the Basis That Its 1966-72 Primary Policies Contained Aggregate Limits for Products Bodily Injury Claims**

Each of the FFIC Certificates of Reinsurance provides that "[a]ll claims involving this reinsurance, when settled by the Company [Utica], shall be binding on the Reinsurer [FFIC], which shall be bound to pay its proportion of such settlements." (Trial Exhibits P-1 through P-7, Trial Tr.[2] 962, Nov. 30, 2017; 1041–42, Dec. 1, 2017.)  This provision implicates the "follow the settlements" doctrine.  (Trial Tr. 962, Nov. 30, 2017; 1041–42, Dec. 1, 2017.)

Under the follow the settlements doctrine, FFIC cannot second-guess the decisions that Utica made when settling its coverage dispute with Goulds.  Instead, FFIC is bound "to accept the cedent's good faith decisions on all things concerning the underlying insurance terms and claims against the underlying insured: coverage, tactics, lawsuits, compromise, resistance or capitulation."  *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 85 (2d Cir. 2003); *see also N. River Ins. Co. v. Ace Am. Reinsurance Co.*, 361 F.3d 134, 140–41 (2d Cir. 2004).  So long as Utica's settlement decisions were "objectively reasonable," FFIC is bound by them.  *U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*, 985 N.E.2d 876, 882 (N.Y. 2013); *see also David M. Raim & Joy L. Langford, New Appleman Law Practice Guide § 40.17 (2007).* ("Absent exceptional circumstances, the ceding insurer's interpretation and application of its policy to the underlying claim cannot be revisited by reinsurers or the courts.").

Utica presented substantial evidence showing that its settlement with Goulds was objectively reasonable.  Although neither Goulds nor Utica was able to locate copies of the 1966 to 1972 primary policies issued by Utica to Goulds, Utica General Counsel Bernard Turi, who

---

[2] The official transcript is not yet available.  Accordingly, citations to "Trial Tr." refer to the unofficial transcripts jointly provided to both parties.  Copies of the cited pages are attached hereto as Exhibit A.

was intimately involved in the search efforts and underlying coverage matters, explained that

Utica had engaged in a "full blown effort" to try to find the applicable coverage documents.

(Trial Tr., 207, Nov. 27, 2017).  Utica engaged in an extensive search of its own records,

gathered records from Goulds, spoke with the brokers that placed the coverage, compared

comparable polices and insurance certificates, and engaged outside counsel to determine the

terms and scope of the missing policies. (Trial Tr., 200–202, 207, 235–36, Nov. 27, 2017; Trial

Tr., 280, 506 –508, Nov. 28, 2017; Trial Tr., 1194, Dec. 4, 2017).  As part of this comprehensive

investigation, Ron Robinson (California coverage counsel for Utica) undertook the "virtual

policy project"—an exhaustive effort to reconstruct the missing policies based upon state filings,

underwriting drafts, certificates of insurance, and other secondary evidence of the existence and

terms of the missing policies. (Trial Tr., 234, Nov. 27, 2017; Trial Tr., 606–619, 630 –31, Nov.

29, 2017; Trial Tr. 1197–1200,  Dec. 4, 2017).

        The information that Utica assembled gave it ample reason to conclude that the Goulds

primary polices contained aggregate limits, and to thus include a stipulation to that effect in the

settlement with Goulds.  The results of Utica's investigation, Robinson's virtual policy project,

and the final advice from Utica's outside counsel were all the same: the 1966–1972 primary

polices that Utica issued to Goulds contained aggregate limits for products liability claims.

(Trial Tr., 235, Nov. 27, 2017; Trial Tr., 280, Nov. 28, 2017; Trial Tr. 619–20, 653–54, Nov. 29,

2017; Trial Tr. 1120–21, 1310–11  Dec. 4, 2017.)  As explained by Kristen Martin, the Utica

attorney in charge of the underlying Goulds litigation, the evidence "clearly established" that the

missing primary polices contained aggregate limits.  (Trial Tr. 1206–07, 1313–15, Dec. 4, 2017.)

Utica never wavered from that position.  (Trial Tr., 235, Nov. 27, 2017.)

Third, the settlement itself was the result of contested, arms-length negotiations.  Utica's

settlement negotiations with Goulds began in 2004, over two years before the final settlement

agreement.  (Trial Tr. 1208, Dec. 4, 2017).  As Mr. Turi and Ms. Martin explained, Utica and

Goulds engaged in protracted mediation discussion overseen by Justice Julian, the judge

presiding over the New York action, and Judge Lichtman, the judge presiding over the California

litigation over nearly two years.  (Trial Tr., 280–86, 292, 306 Nov. 28, 2017; Trial Tr. 1208–09,

Dec. 4, 2017.)  At the end of this contested process the parties finally reached a conclusive

settlement.  In a stipulated order entered in the California coverage action, Justice Julian and

Judge Lichtman stated that the settlement was "fair, just and reasonable" and had been "entered

at arms length and in good faith by the parties."  (Exhibit P-205; *see also* Trial Tr., 316–17, Nov.

28, 2017.)

In response, FFIC has not introduced any evidence from which the jury could conclude

that the underlying settlement was objectively unreasonable.  FFIC attempted to make this

showing by asserting that the underlying 1966-72 primary polices did not, in fact, contain

aggregate limits for products bodily injury claims.  But FFIC has not presented any testimony or

evidence from which the jury could reach this conclusion.  FFIC has presented no evidence

whatsoever from underwriters involved with the reinsurance contracts who could testify as to

what terms were contained in the primary policies or what representations were made about their

terms at the time the reinsurance contracts were placed in 1966-73.  In contrast, Utica's expert

Dennis Connolly testified that based on the bookend theory (comparing the policy terms of

earlier and later policies) and his extensive experience in the industry, the 1966–1973 primary

policies issued to Gould's would have contained aggregate limits for products liability.  (Trial

Tr., 764–65, Nov. 30, 2017.)  Indeed, even Brian Gagan—FFIC's *own* underwriting expert in the

5

underlying litigation—believed that the primary policies would have contained aggregate limits for bodily injury.  (Trial Tr., 813–14, Nov. 30, 2017.)

The *only* evidence that FFIC has attempted to present in this regard is that the underlying policies could not have contained aggregate limits because no such limits for bodily injury were included in the Umbrella Declarations pages.  However, FFIC does not present any testimony supporting its speculative contention that the declarations pages reproduced the full scope aggregate limits in the underlying policies.  Instead, as explained by Ms. Martin and Michael Schulz (a claims attorney for Utica was responsible for managing the claims brought by people with asbestos injuries), one would not rely on the schedule of underlying insurance in an umbrella policy as a definitive source of the primary policy's terms, because the information is not always complete or reliable.  (Trial Tr., 531, Nov. 29, 2017; Trial Tr., 1235 Dec. 4, 2017.) Indeed, given the pervasive nature of aggregate limits in products liability policies during the years in question, one would expect the declarations to affirmatively *disavow* an aggregate products liability limit if there was no such limit in the underlying policy.  (Trial Tr. 819–821, Nov. 30, 2017.)

And more importantly, such evidence is meaningless under the follow the settlements doctrine.  As explained above, "[a] reinsurer cannot second guess the good faith liability determinations made by its reinsured, or the reinsured's good faith decision to waive defenses to which it may be entitled." *Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir. 1992); *see also Aetna Cas. & Sur. Co. v. Home Ins. Co.*, 882 F. Supp. 1328, 1347 (S.D.N.Y. 1995) ("[T]he ceding company may bind the reinsurer to follow its settlement fortunes when it concedes that a particular claim falls within the scope of coverage provided by the ceding company's policy.").  Yet that is exactly what FFIC has done here.  *See*

testimony of J. Svestka, Trial Tr. at 1476, Dec. 5, 2017 ("Q: I think it was your testimony that Fireman's Fund is entitled to second guess Utica Mutual's evaluation of its own claims, is that right?  A: Yes.").

As Mr. Thomson explained, FFIC cannot second-guess Utica's conclusion that the primary policies contained aggregate limits, simply because FFIC might disagree with that conclusion.  (Trial Tr. 1136, Dec. 1, 2017).  The parties are not here to re-try, *de novo*, whether the primary policies contained aggregate limits, as if we were in the coverage actions anew with Goulds.  Instead, the sole issue for the jury is whether it was objectively reasonable for Utica to settle with Goulds on the basis that its primary policies contained aggregate limits for products bodily injury claims.  The evidence overwhelmingly supports Utica's position and FFIC fails to introduce sufficient evidence for a reasonable jury to find otherwise.

Indeed, FFIC's own litigation strategy demonstrates why the follow the settlements is necessary for the reinsurance to function efficiently.  A reinsurer can always find some aspect of complicated coverage determinations and settlement allocations to challenge.  Here, for example, FFIC has alleged both (1) that the primary policies *lacked* aggregate limits, and (2) that the primary policies *had* aggregate limits, but that Utica misrepresented this fact to FFIC by stating that they lacked aggregate limits.  The two positions are in clear tension—both cannot be true at the same time.  In order to assert such inconsistent factual theories in compliance with Rule 11, FFIC must itself be "legitimately in doubt about the facts in question."  *2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 78 (2d Cir. 2010).  If even FFIC is legitimately in doubt as to whether the underlying primary policies did or did not contain aggregate limits, then there must have been a reasonable basis for Utica's

conclusion that the policies lacked aggregate limits.  In turn, FFIC is bound to follow this reasonable settlement conclusion.

FFIC also contends that the settlements must have been unreasonable because the settlement or allocation decisions were motivated by a desire to increase Utica's reinsurance coverage.  (Trial Tr. 1119–20, Dec. 1, 2017.) But as the Second Circuit has instructed, "[a]n allocation that increases reinsurance recovery—when made in the aftermath of a legitimate settlement and when chosen from multiple possible allocations—would rarely demonstrate bad faith in and of itself." *Travelers Cas. & Sur. Co. v. Gerling Glob. Reinsurance Corp. of Am.*, 419 F.3d 181, 193 (2d Cir. 2005).  The New York Court of Appeals has held likewise. *See U.S. Fid. & Guar. Co.*, 985 N.E.2d at 883 ("When several reasonable allocations are possible, the law, as several courts have recognized, permits a cedent to choose the one most favorable to itself.").

 Indeed, as Mr. Thomson explained, when Utica was allocating the settlement expenses, it was unaware of its reinsurance from FFIC, and was therefore treating this portion of the settlement "as if they were spending their own money."  (Trial Tr. 1072, 1120–22 Dec. 1, 2017.) *See U.S. Fid. & Guar. Co.*, 985 N.E.2d at 883 (an allocation is reasonable when it is "one that the parties to the settlement of the underlying insurance claims might reasonably have arrived at in arm's length negotiations if the reinsurance did not exist").

In sum, FFIC has not presented legally sufficient evidence from which a reasonable jury could conclude that the underlying settlements were objectively unreasonable.  Therefore, the follow the settlements doctrine applies, and Utica is entitled to judgment as a matter of law.

**II.    FFIC Failed to Show That Its Indemnification Obligations Were Absolved By Late Notice**

      **A.    FFIC failed to show that Utica's notice was late, and FFIC waived any late notice defense**

FFIC has not presented any evidence from which a reasonable jury could conclude that Utica's July 2008 notice to FFIC breached the prompt notice provisions of the reinsurance contracts.  Each of the Certificates of Reinsurance requires "prompt notice" of any occurrence or accident which appears likely to involve this reinsurance.  (Exhibits P1–P7.)  "Clauses in insurance contracts requiring 'prompt notice,' . . . are generally construed to require notice within a reasonable time after the duty to give notice has arisen." *Christiania*, 979 F.2d at 275 (citation omitted).  Under New York law, the duty to provide notice arises when there is a "reasonable possibility" that the reinsurance would be involved "based on an objective assessment of the information available." *See Unigard Sec. Ins. Co., v. N. River Ins. Co.*, 4 F.3d 1049, 1065 (2d Cir. 1993) ("*Unigard I*") (citing *Christiania*, 979 F.2d 268 at 276). "[M]ere speculation, rumor or remote contingencies" are not sufficient to trigger the notice obligation. *Christiania*, 979 F.2d at 275. Instead, the duty to provide notice commences based on an "objective" evaluation of the "facts known to the insured." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 122 (2d Cir. 1984).

Here, the undisputed facts show that Utica did not know of the reinsurance contracts with FFIC before July 2008.  As Utica General Counsel Bernard Turi testified, it was not until June 2008 that Utica learned of its reinsurance contracts with FFIC. (Trial Tr., 321, Nov. 28, 2017.) Utica then immediately sent notice to FFIC.  (Trial Tr., 321–23, Nov. 28, 2017; *see also* Exhibit P215.)  FFIC has not presented any evidence to rebut this testimony.  Indeed, FFIC has failed to present *any* testimony from which the jury could conclude that Utica knew of its FFIC reinsurance coverage before July 2008.  Since the prompt notice requirement turns on the "facts

9

known to the insured," *Utica Mut. Ins. Co.*, 748 F.2d at 122, and since Utica did not know of its

reinsurance coverage until June 2008 and gave notice thereof just weeks later, there is no

evidentiary basis for the jury to conclude that Utica's notice was late.

Utica's precautionary notice to its other umbrella reinsurers by 2003 does not change that

result.  As Mr. Turi explained, Utica decided in April 2003 to tell all of its umbrella reinsurers

about the underlying Goulds asbestos claims even though Utica did not yet have a legal

obligation to do so.  (Trial Tr., 215–17, Nov. 27, 2017.)

Moreover, FFIC has waived any late notice defense.  Failure to respond to an allegedly

late notice with a late notice defense waives that defense.  *See State of New York v. AMRO Realty

Corp.*, 936 F.2d 1420, 1430-1432 (2d Cir. 1991); *Estee Lauder, Inc. v. OneBeacon Ins. Co.*, 28

N.Y.3d 960 (2016); *Matter of Firemen's Fund Ins. Co. of Newark v. Hopkins*, 88 N.Y.2d 836,

837 (1996).  FFIC has not presented any evidence that it responded to Utica's September, 2008

claim with a timely assertion of a late notice defense.  Thus, the jury would be bound to conclude

that FFIC waived any late notice defense at that time.

**B.      FFIC failed to show that it was prejudiced by the allegedly late notice**

Under New York law, untimely notice does not absolve a reinsurer of its contractual

responsibilities.  Instead, the reinsurer must show that it was "prejudiced" by any late notice.

*Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 594 N.E.2d 571, 575 (N.Y. 1992) (*Unigard II)*;

*Christiania*, 979 F.2d at 274.  But prejudice must be more than mere speculation.  Where a jury's

verdict could only be "the result of sheer surmise and conjecture," the court should grant

judgment as a matter of law.  *Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 132 (2d

Cir.1986).

FFIC's prejudice claim is based on purely speculative evidence.  Jeffrey Svestka is the

FFIC employee who supplied the information behind FFIC's commutation prejudice chart, D-

199.   On cross-examination, Mr. Svestka admitted that he simply "took the $35 million in total [billings]…and pretended like we did owe that" as of 1996.  (Trial Tr. at 1424, 1449, Dec. 5, 2017).  Mr. Svestka never took into account (a) Utica's any affirmative defenses that FFIC was asserting to the billing, (b) the amount of losses that Utica had paid as of 1996 or any other time, (c) any objections to payment by FFIC's reinsurers, (d) the fact that 5 of the 13 reinsurers were in the equivalent of bankruptcy proceedings at the time of their commutations; and (e) whether notice was in fact due in 1996.  (Trial Tr. 1448-54, Dec. 5, 2017).  Given that as of 1996 Utica had paid only about $100,000 over the past 10 years and, at the same rate, it would have taken over 10,000 years to reach FFIC's reinsurance layer, Mr. Svestka's assumptions that FFIC was faced with a full limits loss in 1996 is simply not credible.  (*See* testimony of K. Martin, Trial Tr. at 1191-92, Dec. 4, 2017.)   Mr. Svestka also admitted that in 8 of the 13 commutations, FFIC attributed zero dollars in liability for commutation of the $90 million in limits that FFIC had written as a direct insurer of Goulds.  (Trial Tr. 1457-61, Dec. 5, 2017.)  Likewise, FFIC actuary Madelyn Faggella conceded that as part of its commutation negotiations, FFIC has attributed monies for Incurred But Not Reported claims, and that Utica/Goulds was a not reported claim.  (*See* Testmony of M. Faggella, Trial Tr. at 1353, 1414, Dec. 4, 2017.)

"The jury's role as the finder of fact does not entitle it to return a verdict based only on confusion, speculation, or prejudice; its verdict must be reasonably based on evidence presented at trial."  *Hernandez v. Keane*, 341 F.3d 137, 143 (2d Cir. 2003).  But FFIC's commutation prejudice analysis offers nothing more.  There is no evidentiary basis for the jury to conclude that FFIC actually suffered a tangible economic injury because it received notice in 2008 rather than 1999.  Therefore, Utica is entitled to judgment as a matter of law on this issue.

11

**C.      FFIC failed to show that it suffered "material and demonstrable" prejudice from the allegedly late notice.**

FFIC's prejudice argument fails for a second reason, namely that it has failed to show that any breach of the late notice provision "is material or demonstrably prejudicial." [3]  *Unigard*, 594 N.E.2d at 575; *accord Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 653546/11, 2016 NY Slip Op 31160(U), 2016 N.Y. Misc. LEXIS 2314, at *17 (Sup. Ct.) ("New York law also requires a showing of 'material and demonstrab[le]' prejudice where a reinsurer (as opposed to a primary insurer) makes a claim of late notice.").  FFIC can only point to the same commutation-price evidence described above to make this showing.  However, a reasonable jury could not conclude that such speculative evidence established "material and demonstrable" prejudice.

Under such general contract law principles, a breach is "material" only if it is "so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) (quoting *Callanan v. Powers*, 92 N.E. 747, 752 (1910)); *see also Dep't of Econ. Dev. v. Arthur Anderson & Co.*, 924 F. Supp. 449, 483 (S.D.N.Y. 1996).  Such a breach is not "slight, casual[ ] or technical," but instead is "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Wiljeff, LLC v. United Realty Mgmt. Corp.*, 920 N.Y.S.2d 495, 497 (N.Y. App. Div. 2011).

---

[3] Even disregarding *Unigard II*'s direct instruction that the material and demonstrable prejudice standard is simply an iteration of "general contract law principles," courts have held in other realms of the law that "demonstrable prejudice" requires more than the "speculative" harm that FFIC has asserted here.  *See, e.g., Rose v. Mitchell*, 443 U.S. 545, 577 (1979) (distinguishing between "demonstrable prejudice" and "speculative" prejudice faced by criminal defendants in different situations); *United States v. Oddo*, 314 F.2d 115, 119 (2d Cir. 1963) (noting that the defense of laches requires "actual and demonstrable prejudice" rather than mere "speculation"); *United States v. Pepe*, 747 F.2d 632, 654–55 (11th Cir. 1984) (requiring "specific demonstrable prejudice" in order to set forth a constitutional claim rather than "[h]ypothetical or generalized prejudice.").

FFIC has presented no evidence that Utica's July 2008 notice was a "substantial and fundamental breach" that "defeated the object of the parties in making the contract."  Nor does their speculative evidence even approach the realm of demonstrable prejudice.

Thus, FFIC's commutation-price evidence does not provide a legally sufficient evidentiary basis from which the jury could conclude that FFIC has suffered a "material or demonstrably prejudicial" breach of the reinsurance contract.

### D.    FFIC Failed to show that Utica acted in bad faith by providing notice in July 2008

Finally, FFIC contends that it may sidestep the required showing of prejudice by proving that Utica acted in bad faith.  Utica continues to dispute the legal basis of that argument,[4] but for purposes of Rule 50(a), FFIC has also failed to provide any evidence from which a reasonable jury could conclude that Utica acted in bad faith in notifying FFIC.

To establish that Utica acted in bad faith, FFIC must show that Utica acted with "intent to deceive" FFIC. *See Unigard I*, 4 F.3d at 1070 (concluding that the cedent did not act in bad faith in failing to provide notice because there was "no intent to deceive" the reinsurer); *see also Christiania*, 979 F.2d at 281 (rejecting invitation to "supplant the New York rule that a reinsurer must prove prejudice as a result of late notice by holding that 'consciously' late notice, without more, is sufficient to entitle the reinsurer to relief").  However, FFIC cannot point to any testimony showing that Utica intended to deceive FFIC by providing notice in July 2008.  To the

---

[4]  As a legal matter, Utica disputes that FFIC may avoid the prejudice requirement by showing that Utica acted in bad faith by failing to have routine practices and controls in place to ensure notice to reinsurers.  The New York Court of Appeals has held, without exception, that "the reinsurer must demonstrate how [late notice] was prejudicial." *See Unigard II*, 594 N.E.2d at 584.  New York law does not allow FFIC to sidestep that showing by asserting that Utica acted in bad faith with respect to providing notice to FFIC.  This argument was explained in detail in Utica's motion for partial summary judgment.  (Dkt. 243-1.).

contrary, Utica promptly notified FFIC about the reinsurance contracts as soon as Utica learned

of their existence.  (Trial Tr., 321–23, Nov. 28, 2017.)

FFIC also contends that it may show bad faith by proving that Utica lacked "routine

practices and controls to ensure notification to reinsurers."  Utica disputes that this can

demonstrate bad faith[5]; but even assuming that it could, FFIC has not presented any evidence

that Utica actually lacked such practices and controls to ensure notification to reinsurers.  The

evidence shows that even back in the 1980's Utica used a daily report (Report 3312) that would

inform a search for applicable reinsurance, including facultative reinsurance.  (*See* testimony of

D. O'Connell, Trial Tr. at 940-47, Nov. 30, 2017.)

Utica's established policy was to follow the notice provisions in the relevant insurance

policies, and as Mr. Turi explained, he would circulate memos and meet with the attorneys who

were handling claims to ensure that reinsurers were provided the necessary notice.  (Trial Tr.,

213, Nov. 27, 2017; Trial Tr. 457, Nov. 28, 2017.)  As explained by Mr. Thomson, this

procedure is "exactly what one would expect to see within a company."  (Trial Tr. 1109–11, Dec.

1, 2017.)  With respect to the Goulds claim itself, Utica provided precautionary notice to each

potential facultative reinsurer that Utica was aware of long before notice was due.  (Trial Tr.,

213–17, Nov. 27, 2017.)  And, as explained by former Utica Director of Financial Reporting

Daniel O'Connell, Utica had a standard eleven-year document retention policy.  (Trial Tr. 948,

Nov. 30, 2017.)  Utica was acting in accordance with these established practices and controls

when it did not maintain reinsurance certificates from the 1960s and 1970s into the 2000s. (Trial

Tr.  948, Nov. 30, 2017.)

---

[5] As explained more fully in Utica's motion for partial summary judgment, (Dkt. 243-1), this argument rests on dicta from *Unigard I* that is contrary to is contrary to the "intent to deceive" standard that the *Unigard I* court actually applied.

In response to this evidence, FFIC again offers nothing but speculation and wild

accusations.  As such, there is no evidentiary basis for a jury to conclude that Utica lacked

routine practices and controls to ensure notification to reinsurers, or otherwise acted in bad faith.

### CONCLUSION

FFIC has failed to present any legally sufficient evidence from which the jury could

conclude: (1) that Utica's settlements with Goulds were objectively unreasonable, or (2) that

Utica's July 2008 notice to FFIC was late and absolved FFIC from performing its obligations

under the contract.  Utica is entitled to judgment as a matter of law on these issues.


Dated: December 12, 2017                                    Respectfully submitted,



                                                           By: */s/* William M. Sneed
                                                           William M. Sneed

| | |
|---|---|
| Walter J. Andrews (NDNY Bar No. 106051, Admitted *pro hac vice*) | William M. Sneed (NDNY Bar No. 518424, Admitted *pro hac vice*) |
| Syed S. Ahmad (NDNY Bar No. 602911) | Thomas D. Cunningham (NDNY Bar No. 519071, Admitted *pro hac vice*) |
| HUNTON & WILLIAMS LLP | Daniel R. Thies (NDNY Bar No., 519070, |
| 2200 Pennsylvania Avenue, NW | Admitted *pro hac vice*) |
| Washington, DC  20037 | SIDLEY AUSTIN LLP |
| (202) 955-1500 | One South Dearborn |
| wandrews@hunton.com | Chicago, IL  60603 |
| sahmad@hunton.com | P 312-853-7899 |
| | wsneed@sidley.com |
| | tcunningham@sidley.com |
| | dthies@sidley.com |

*Attorneys for Plaintiff Utica Mutual Insurance Company*

15

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2017, a true and correct copy of Plaintiff Utica

Mutual Insurance Company's Rule 50(a) Motion was filed electronically with the Clerk of the

Court for the United States District Court for the Northern District of New York using the

CM/ECF system, which sent notification of such filing to Defendant's counsel of record:

Mary A. Lopatto, Esq.
John B. Williams, Esq.
Fara N. Kitton, Esq.
WILLIAMS LOPATTO PLLC
1707 L Street, NW, Suite 550
Washington, DC 20036
Tel.: (202) 296-1665
malopatto@williamslopatto.com
jbwilliams@williamslopatto.com
nmonarch@williamslopatto.com
fnkitton@williamslopatto.com


/s/ *William M. Sneed*
William M. Sneed

227195926.01

16