UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UTICA MUTUAL INSURANCE COMPANY,

                              Plaintiff,

    -v-                                        6:09-CV-853

FIREMAN'S FUND INSURANCE COMPANY,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

SIDLEY AUSTIN LLP                      WILLIAM M. SNEED, ESQ.
Attorneys for Plaintiff                THOMAS D. CUNNINGHAM, ESQ.
One South Dearborn Street              DANIEL R. THIES, ESQ.
Chicago, IL 60603

WILLIAMS LOPATTO PLLC                  JOHN B. WILLIAMS, ESQ.
Attorneys for Defendant                MARY A. LOPATTO, ESQ.
1707 L Street NW
Suite 550
Washington, DC 20036

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

        A jury trial was held between November 27, 2017, and December 13, 2017, at the

conclusion of which the jury returned a verdict in favor of plaintiff Utica Mutual Insurance

Company ("Utica" or "plaintiff") on its sole claim for breach of contract.[1]  The jury awarded plaintiff $35 million in damages plus interest running from September 22, 2008.  Prejudgment interest was calculated at $29,092,191.78 and judgment entered in favor of Utica for $64,092,191.78.

Defendant Fireman's Fund Insurance Company ("FFIC" or "defendant") now renews its motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure ("Rule __") or, in the alternative, for a new trial pursuant to Rule 59.  FFIC also separately moves to correct the interest calculation in the judgment pursuant to Rule 60.  The motions were fully briefed and have been considered on the basis of the submissions.

## II.  RELEVANT BACKGROUND

The parties' familiarity with the underlying facts established at trial is assumed.[2]  This case has a lengthy history which all are familiar with, including years of discovery, multiple rounds of motion practice, and a jury trial spanning nearly three weeks.

## III.  LEGAL STANDARDS

### A.  Rules 50 and 59

Rule 50(a)(1) permits a court to render judgment as a matter of law and vacate a jury's verdict if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis" to reach its conclusion.  The standard is well settled:

> Judgment as a matter of law may not properly be granted under
> Rule 50 unless the evidence, viewed in the light most favorable to

---

[1]  The verdict was rendered on December 13, 2017 and the jury was dismissed.  Proceedings continued through December 14, 2017, when defendant's counterclaims seeking rescission were dismissed as a matter of law.

[2]  The official transcript is not yet ready, but the parties are both in possession of an unofficial transcript.

> the opposing party, is insufficient to permit a reasonable juror to find in [its] favor. In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence.

Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir.1998) (internal citations omitted).

The standard for post-verdict judgment as a matter of law is the same as that for summary judgment under Rule 56. Nadel v. Isaksson, 321 F.3d 266, 272 (2d Cir. 2003). Thus, "a district court must deny a motion for judgment as a matter of law unless . . . there can be but one conclusion as to the verdict that reasonable persons could have reached." Id. (internal quotations omitted). The proponent of a motion for judgment as a matter of law under Rule 50(b) faces a "high bar," Lavin-McEleney v. Marist College, 239 F.3d 476, 479 (2d Cir. 2001), and the Second Circuit has cautioned that motions for judgment as a matter of law "should be granted cautiously and sparingly," Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001).

The moving party must also fulfill the procedural prerequisite of moving for judgment as a matter of law before the case is submitted to the jury. See Fed. R. Civ. P. 50(a)(2). And a party may only make a post-judgment Rule 50(b) motion based on grounds specifically raised at the close of evidence. Lambert v. Genesee Hosp., 10 F.3d 46, 53-54 (2d Cir. 1993). If the movant does not meet the Rule 50 specificity requirement, the court may not grant judgment as a matter of law unless the result is required "to prevent manifest injustice." Lore v. City of Syracuse, 670 F.3d 127, 153 (2d Cir. 2012). A "manifest injustice" exists only when "a jury's verdict is wholly without legal support." Jacques v. DiMarzio, Inc., 386 F.3d 192, 199 (2d Cir. 2004) (superseded by statute on other grounds).

The standard under Rule 59, which permits a court to "grant a new trial on all or some of the issues," see Fed. R. Civ. P. 59(a)(1), is less stringent, Manley v. AmBase Corp., 337 F.3d 237, 244 (2d Cir. 2003).  "[I]n deciding a motion for a new trial, the district court is permitted to examine the evidence through its own eyes . . . [and] can grant such a motion even if there is substantial evidence supporting the jury's verdict." Green v. City of New York, 359 F. App'x 197, 199 (2d Cir. 2009) (summary order) (internal quotations and citations omitted).

Nevertheless, "'[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 51 (2d Cir. 2012) (quoting Medforms, Inc. v. Healthcare Mgmt. Sols., Inc., 290 F.3d 98, 106 (2d Cir. 2002)).  Though a trial judge is free to weigh the evidence himself, the court should only grant a Rule 59 motion when the jury's verdict is "egregious" and "should rarely disturb a jury's evaluation of a witness's credibility." Ferreira v. City of Binghamton, No. 3:13-CV-107, 2017 WL 4286626, at *2 (N.D.N.Y. Sept. 27, 2017) (McAvoy, S.J.) (internal quotations omitted).

## B.  Rule 60

Rule 60(a) provides in relevant part:  "(a) Corrections Based on Clerical Mistakes; Oversights and Omissions.  The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  Prejudgment interest is frequently the subject of Rule 60(a) motions in this Circuit. See Roberts v. Bennaceur, 658 F. App'x 611, 621 n.9 (2d Cir. 2016) (summary order).  "[A] Rule 60(a) motion is appropriate where the judgment has failed accurately to reflect the

actual decision of the decision maker." Robert Lewis Rosen Assocs., Ltd. v. Webb, 473 F.3d 498, 504 (2d Cir. 2007) (internal quotations omitted).

## IV.  DISCUSSION

### A.  Motion under Rule 50

FFIC renews its motion for judgment as a matter of law pursuant to Rule 50(b).  It argues it is entitled to judgment as a matter of law under Rule 50 both because Utica failed to present legally sufficient proof that there was a breach of contract and because FFIC proved its late notice defense as a matter of law.

Defendant raises three bases on which it claims the evidence was lacking and consequently require the granting of its Rule 50 motion for judgment as a matter of law. First, FFIC argues that the reinsurance certificates do not cover the loss at issue.  Second, the follow the settlements doctrine does not apply.  Third, notice was late and FFIC was economically prejudiced *or* Utica's failure to implement routine procedures constituted gross negligence or recklessness.

Utica opposes and contends the presence or absence of aggregate limits in the primary policies and the therefore subsequent question of whether the reinsurance certificates cover the loss at issue is irrelevant to the instant inquiry and it was not required to prove such at trial.  Instead, the evidence was sufficient for a jury to conclude that its settlement decisions were objectively reasonable and that FFIC failed to meet its burden on its late notice defense.

Plaintiff is correct in that it was not required to prove by a preponderance of the evidence that the primary policies contained aggregate limits for bodily injury in order for the follow the settlements clause to apply and obligate FFIC to pay under the reinsurance

certificates.  Instead, the follow the settlements clause applied unless FFIC could show that Utica's settlement decisions were objectively unreasonable.  The jury was instructed to decide whether Utica's decision to settle with Goulds on the basis that its 1966 through 1972 primary policies contained aggregate limits was among the objectively reasonable options available to Utica.  Therefore, FFIC's continued claim that there was no coverage in the first place—that the primary policies either lacked aggregate limits and thus did not trigger the umbrella policies whatsoever, or in the alternative, that if the primary policies included such limits, the reinsurance certificates did not provide coverage based on the umbrella declarations—will not be entertained here.

### 1. Follow the Settlements

The jury was asked the following question regarding the first element of Utica's breach of contract claim:  "Did plaintiff Utica Mutual Insurance Company prove by a preponderance of the evidence that it did what it was obligated to do under the 1966 through 1972 reinsurance certificates?"  Although there was not a specific jury question asking such, by answering in the affirmative that Utica did what it was obligated to do under those policies, the jury made an implicit finding that Utica's settlement decisions regarding the Goulds settlement were objectively reasonable, or stated another way, that FFIC did not prove that Utica's settlement decisions were objectively unreasonable.  Accordingly, the follow the settlements provision would apply.

The jury then went on to address and answer in the affirmative that defendant failed to do what it was required to do under the policies and thus breached the contracts and caused damage to plaintiff.  Accordingly, the inquiry under Rule 50(b) now is whether there was sufficient evidence for a reasonable jury to conclude that Utica's settlement decisions were

objectively reasonable, the finding which resulted in FFIC's obligation to follow the settlements.

Utica presented extensive evidence that its settlement decisions were reasonable, and while FFIC also presented extensive evidence refuting that position, it cannot be said that a reasonable jury did not have a legally sufficient evidentiary basis on which to render a verdict for plaintiff.  Defendant cannot meet the high standard required to set aside the jury verdict under Rule 50.

It is noted at the outset that *neither* party had a witness with personal knowledge of the primary policies.  Plaintiff presented the following evidence in support of its position that its settlement with Goulds was objectively reasonable.  First, Utica General Counsel Bernard Turi testified that Utica engaged in a "full blown effort" to try to find copies of the missing 1966 to 1972 primary policies:  Utica extensively searched its own records, gathered records from Goulds, spoke with the brokers that placed the coverage, examined comparable polices and insurance certificates, and retained outside counsel to determine the terms and scope of the missing policies.

California coverage counsel for Utica, Ron Robinson, testified about the "virtual policy project" he completed in order to reconstruct the missing policies.  The "virtual policy project" was based upon state filings, underwriting drafts, certificates of insurance, and other secondary evidence respecting the missing policies.  Plaintiff presented evidence that Goulds' summaries of its own insurance program from the 1966 to 1972 period showed aggregate limits for products liability.  Two of the primary policies from that time period showed an aggregate limit.  Utica argued that in the absence of evidence that Goulds

intended to change its insurance program, this "book end" proof provided evidence to Utica that the intervening policies had the same limits.

Further, Kristen Martin, the Utica attorney with day-to-day responsibility for the underlying Goulds litigation testified that the gathered evidence clearly established that the missing primary polices contained aggregate limits and that Utica never wavered from that position.  In sum, the results of Utica's investigation, Mr. Robinson's virtual policy project, and the final advice from Utica's outside counsel all confirmed to Utica that the 1966 to 1972 primary polices contained aggregate limits.  Dennis Connolly, one of plaintiff's experts, opined that aggregate limits were standard in the 1960s and 70s and confirmed the reasonableness of Utica's position on same.  Plaintiff also introduced evidence that Brian Gagan, one of FFIC's prior experts in the underlying litigation, agreed with that position.

Considering this and other evidence together, a reasonable jury could have concluded that Utica had a sufficient basis on which to reach the conclusion that the Goulds primary polices contained aggregate limits and thus make the settlement decisions that it did. Further in support of the jury's verdict was testimony and documentary evidence from Utica witnesses that the settlement itself was the result of arms-length negotiations:  the settlement negotiations began in 2004, two years before the final settlement agreement; Utica and Goulds held lengthy mediation discussions; in a stipulated order, the overseeing judges found that the settlement was "fair, just and reasonable" and had been "entered at arms length and in good faith by the parties."

In sum, the jury had ample evidence from which it could conclude that Utica acted objectively reasonable in its decision to settle with Goulds for $325 million on the basis that the primary policies contained aggregate limits for bodily injury.  Therefore, there was

sufficient evidence to conclude that the follow the settlements doctrine applied and FFIC was obligated to pay under the reinsurance certificates.

While FFIC also put forth ample evidence refuting Utica's contention that it acted reasonably, the evidence was not such that there could have been only a verdict in defendant's favor.  Regarding the umbrella declarations which FFIC relied heavily on to support the position that the primary policies lacked aggregate limits and thus Utica was not reasonable in settling on the basis that there were such limits, the pages themselves nor the testimony supporting this position *required* the jury to find that Utica's determination of the primary policy terms was unreasonable.  Even if the jury interpreted the umbrella policies as evidence that the primary policies lacked aggregate limits, that evidence did not automatically render Utica's evidence insufficient to permit a reasonable juror to find in Utica's favor, particularly when now considering the evidence in the light most favorable to Utica, the opposing party on the instant motion.

For example, the jury was free to credit Utica witnesses Ms. Martin and Michael Schultz's position that they would not rely on the schedule of underlying insurance in an umbrella policy as a definitive source of the primary policy's terms.  Further, there was nothing in the umbrella policies themselves which required that the primary policy aggregate limits be set forth on the declarations page of the umbrella policies.  Mr. Turi testified that the declarations pages listed only the limits for basic general liability coverage, not the limits applicable to the separate products coverage.

Finally, with respect to the reinsurance considerations, as explained in the prior summary judgment ruling, the fact that a particular settlement decision may have reinsurance implications does not alone render the decision improper.  In fact, caselaw supports the

position that the cedent is permitted to choose the allocation most favorable to it when faced with multiple reasonable allocations.  See U.S. Fidelity & Guar. Co. v. Am. Re-Ins. Co., 20 N.Y.3d 407, 421 (2013).  In any event, Ms. Martin testified that she would not have done anything differently even if there were no reinsurance coverage, and Utica's position has remained that it was unaware of the FFIC reinsurance at the time it settled with Goulds.  There was sufficient evidence from which a jury could conclude that Utica's knowledge of reinsurance did not render its settlement unreasonable.

For the foregoing reasons, a reasonable jury could have concluded that Utica's settlement decisions were objectively reasonable and thus the follow the settlements doctrine applied.  It cannot be said that a reasonable jury would not have a legally sufficient evidentiary basis to reach a verdict for plaintiff.  FFIC's Rule 50 motion for judgment as a matter of law on this basis will be denied.

### 2. Late Notice Defense

The jury was asked the following question regarding FFIC's late notice defense:  "Did Fireman's Fund Insurance Company prove by a preponderance of the evidence that it received late notice from Utica Mutual Insurance Company and that such late notice either materially breached the reinsurance certificates or caused it demonstrable prejudice?"  To have prevailed on this defense, FFIC must have proven both late notice *and* either material breach *or* demonstrable prejudice.  A reasonable jury could have found that FFIC failed to carry its burden; a jury could have found that FFIC failed to show demonstrable prejudice *and* that it failed to show material breach.  Because there was sufficient evidence for a jury to conclude FFIC failed to prove either, there is no need to consider the late notice prong.

Without a finding of demonstrable prejudice *or* material breach, FFIC could not sustain its burden on its late notice defense.

The jury was instructed that FFIC must demonstrate actual prejudice, not merely speculative or hypothetical prejudice. Prejudice is tangible economic injury and demonstrable prejudice means that specific, tangible economic injury is shown to have resulted from the late notice, as opposed to a claim of speculative or hypothetical injury. FFIC argued it suffered tangible economic injury from the late notice in the form of lost commutations.

A reasonable jury could have concluded that FFIC failed to carry its burden to prove tangible economic injury. FFIC presented no witness involved in any of FFIC's actual negotiations with its commuting reinsurers. FFIC employee Jeffrey Svestka testified regarding FFIC's commutation prejudice chart, which was a summary of FFIC's alleged prejudice.

A reasonable jury could have afforded Mr. Svestka's testimony little or no weight. From his testimony, Utica attorneys submitted that he did not take into account the following: any affirmative defenses that FFIC was asserting to the billing; the amount of losses that Utica had paid as of 1996 or any other time; any objections to payment by FFIC's reinsurers; the fact that 5 of the 13 reinsurers were insolvent at the time of their commutations; and whether notice was in fact due in 1996. By contrast, plaintiff put forth evidence that as of 1996 it had paid only about $100,000 over the past 10 years and, at the same rate, it would have taken over 10,000 years to reach FFIC's reinsurance layer. Considering this testimony, a jury could have found Mr. Svestka's assumption that FFIC was faced with a full limits loss in 1996 not credible.

A reasonable jury could have also rejected FFIC's position that it would have factored the Goulds claims into its commutation negotiations if it had received earlier notice. Mr. Svestka testified that in 8 of the 13 commutations, FFIC attributed zero dollars in liability for commutation of the $90 million in limits that FFIC had written as a direct insurer of Goulds. While FFIC disputes the applicability of that evidence, a jury could have found that there was no reason to believe FFIC would have treated the Utica reinsurance claim any differently than a direct insurance claim. Further, Utica evidence showed that even after FFIC received formal notice of the Utica (Goulds) reinsurance claim in July 2008, FFIC failed to take it into account in two subsequent commutations. Considering this evidence, a reasonable jury could have concluded that FFIC failed to show that it suffered tangible economic injury from any late notice.

Moreover, a jury could have also found that defendant failed to show that plaintiff acted with gross negligence or recklessness in providing notice. The jury was instructed that to find that Utica's failure to implement routine practices and controls to ensure notification to its reinsurers such as FFIC constitutes gross negligence or recklessness, the jury must find that Utica willfully disregarded the risk to its reinsurers by doing so. FFIC had to show more than an inadvertent lapse in routine notification procedures or even mere negligence. Instead, it had to show a failure to implement such procedures such that Utica willfully disregarded the risk to reinsurers and is guilty of gross negligence.

Utica employees testified that in the 1980s, Utica used a daily report and a monthly report to inform a search for applicable reinsurance and to report such claims to reinsurers. Mr. Turi testified that Utica's policy was to follow the notice provisions in the relevant reinsurance contracts and that he would circulate memos and meet with the attorneys who

were handling claims to ensure that timely notice to reinsurers was a priority.  Utica witness

Paul Thomson testified that such a procedure is what one would expect to see within a

company.  Former Utica Director of Financial Reporting Daniel O'Connell testified regarding

Utica's reinsurer reporting processes, explaining the processes were manual but effective.

By contrast, the bulk of FFIC's evidence centered around Utica's specific document

retention policies and the fact that the primary policies were never located.  Utica's document

retention policy was 11 years, which met the industry standard.  Testimony established that

missing or incomplete contract files from the 1960s and 1970s was not out of the ordinary for

insurers dealing with these types of liability claims in the 1990s and 2000s.  Utica put forth

evidence that with respect to Goulds itself, three of its five direct insurers lacked complete

contract files when coverage was being litigated.

Plaintiff also put forth evidence that it provided early notice to over a dozen facultative

reinsurers that Utica was aware of before notice was due.  This evidence considered

together formed a sufficient basis for a jury to conclude that Utica had implemented routine

practices and controls to ensure notification to reinsurers which worked in the majority of

cases, and to the extent those practices did not work in the FFIC matter, such failure did not

constitute bad faith, gross negligence, or recklessness.

For all of the foregoing reasons, a reasonable jury could have concluded that FFIC

failed to sustain its burden to prove its late notice defense.  Accordingly, FFIC's Rule 50

motion for judgment as a matter of law on this basis will be denied.

### 3. **Proof of Loss**

With respect to FFIC's final contention that Utica failed, as a matter of law, to establish

that its claim accrued on September 22, 2008, any such argument is waived because FFIC

did not raise the proof of loss issue in its Rule 50(a) trial motion.  However, the proof of loss issue will be considered under the Rule 59 standard for a new trial.

### B. <u>Alternative Motion under Rule 59</u>

FFIC moves in the alternative for a new trial under Rule 59 on the same grounds as its Rule 50 motion.  Even considering the evidence under the less stringent standard of Rule 59, FFIC has failed to meet its burden to be granted a new trial for the same reasons considered under Rule 50.  The jury's decision here, as it does in most cases, turned on a question of whose story and whose witnesses to believe and whose evidence was more compelling, Utica's or FFIC's.  The jury apparently assigned more weight to Utica's witnesses or evidence and it cannot be said that the jury's conclusions on the follow the settlements or the late notice defense were either seriously erroneous or a miscarriage of justice.  Considering the admissible evidence, the jury's verdict was not egregious or against the weight of the evidence.  The jury's evaluations in resolving the credibility of witnesses and other fact finding duties will not be disturbed in this case.

As for the additional argument that the evidence was insufficient regarding the proof of loss issue, FFIC has not shown that, based on the evidence adduced at trial, the verdict is against the weight of the evidence, seriously erroneous, or a miscarriage of justice.  The jury was instructed that under the reinsurance certificates, FFIC was obligated to pay "promptly following receipt of proof of loss."  A proof of loss is any document or documents which provide sufficient information for the reinsurer to intelligently form some estimate of its rights and liabilities, and it need not contain detailed information.  <u>See</u> <u>SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC</u>, 381 F. Supp. 2d 250, 259-60 (S.D.N.Y. 2005).

The record contained sufficient evidence to allow the jury to determine that Utica provided a sufficient proof of loss as of September 22, 2008, when it delivered a claims narrative and billings to FFIC.  FFIC employee Gary Ibello testified that the materials Utica sent on September 22, 2008 were a standard format in the industry for a proof of loss. Plaintiff also put forth evidence that FFIC had direct knowledge of the details of the Goulds asbestos claims because it insured Goulds directly and was involved in the same Goulds coverage lawsuit as plaintiff.  Based on Mr. Ibello's and Christy Bresson's (the FFIC employee who handled the Utica reinsurance claim) testimony, the jury could have concluded that FFIC had sufficient information as of September 22, 2008, intelligently to form some estimate of its rights and liabilities.  The verdict was thus not against the weight of the evidence.

Therefore, FFIC's alternative Rule 59 motion for a new trial will be denied.

### C. Motion under Rule 60

FFIC also moves to correct the judgment under Rule 60(a) and requests correction of a manifest clerical error in the calculation of interest reflected in the judgment.  Specifically, it contends the interest should be reduced from the current $29,092,191.78 to $27,637,815 based on New York Civil Practice Law and Rule section 5001.

Defendant asserts that the error resulted from the incorrect assumption that the entire amount owed under the reinsurance certificates ($35 million) became payable on September 22, 2008, the date of Utica's initial billing.  Instead, plaintiff's initial bill was only for $16,794,738.15, and it sent six additional billings to FFIC over the following 21 months for the remaining balance of the $35 million.  Therefore, because Utica issued its billings over time and did not bill the entire amount on September 22, 2008, defendant contends interest

began to accrue only from the date of each subsequent billing.  FFIC argues that under New York law, prejudgment interest runs from the date of breach, and it could not have breached until performance was due, i.e., the date each demand for payment was made.  It contends that such a recalculation is merely a mathematical and clerical one.

The motion is procedurally improper because such a revision would be substantive rather than clerical and is thus not the sort of recalculation appropriate under Rule 60(a).  A revision to the interest calculation here would require a finding of fact regarding the (additional) dates from which the interest would run.  Those facts are properly ones for a jury to decide, and they did so when they chose September 22, 2008 as the date Utica provided sufficient proof of loss.

Accordingly, FFIC's motion to correct the interest calculation in the judgment pursuant to Rule 60 will be denied.

**V.  CONCLUSION**

For all of the foregoing reasons, defendant's renewed motion for judgment as a matter of law or for a new trial will in all respects be denied.  Defendant's motion to correct the interest reflected in the judgment will also be denied.

Therefore, it is

ORDERED that

1.  Defendant Fireman's Fund Insurance Company's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59 is DENIED; and

2.  Defendant Fireman's Fund Insurance Company's motion to correct the interest calculation in the judgment pursuant to Fed. R. Civ. P. 60 is DENIED.

IT IS SO ORDERED.

United States District Judge

Dated: February 28, 2018
      Utica, New York.